**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

COXCOM, INC.

        Plaintiff,

    v.

REMBRANDT TECHNOLOGIES, LP

        Defendant.

C.A. No.  06-721-GMS

**REMBRANDT TECHNOLOGIES, L.P.'S OPENING BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(b)(1)**

**WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC**

George Pazuniak (# 478)
Kevin M. Baird (# 4219)
James M. Lennon (# 4570)
AnnaMartina Tyreus (# 4771)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Tel:  (302) 252-4324
Fax:  (302) 661-7725
kbaird@wcsr.com

*Counsel for Rembrandt Technologies, LP*

Dated:  January 26, 2007

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................................................1

FACTUAL BACKGROUND....................................................................................................2

ARGUMENT ..........................................................................................................................4

I.  THE COURT LACKS DECLARATORY JUDGMENT JURISDICTION
    OVER COXCOM'S CLAIMS ...............................................................................4

    A.  Legal Standards for Declaratory Judgment Jurisdiction.............................4
        1.  CoxCom Has the Burden of Proof on This Legal Issue..................4
        2.  CoxCom Had No Reasonable Apprehension of Suit on the
            '903. ...........................................................................................5
        3.  Jurisdiction has to exist at the time of the filing of the
            complaint.....................................................................................7

    B.  Rembrandt Never Threatened CoxCom on the '903 Patent ........................7

    C.  The Totality of the Circumstances Shows No Reasonable
        Apprehension of an Imminent Suit..............................................................8
        1.  Rembrandt's Business.....................................................................8
        2.  Rembrandt's Prior Suit Against CoxCom........................................9
        3.  Rembrandt's Suits Against Others on the '903 Patent...................11

II. EVEN  IF  THE  COURT  HAS  JURISDICTION,  IT  SHOULD
    NEVERTHELESS DISMISS THIS CASE IN THE EXERCISE OF ITS
    DISCRETION UNDER THE DECLARATORY JUDGMENT ACT.................13

CONCLUSION.....................................................................................................................15

# **TABLE OF AUTHORITIES**

## Cases

*Angiodynamics, Inc. v. Diomed Holdings, Inc.*, 2006 WL 2583107 at *3 (D. Del. Sept. 7, 2006) ...................................................................................................................... 9

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988) ............... 6

*Black & Decker Inc. v. Robert Bosch Tool Corp.*, 371 F. Supp. 2d 965 (N.D. Ill. 2005) ............ 10

*Breitigan v. New Castle County*, 350 F. Supp. 2d 571, 582 (D. Del. 2004) ................................. 14

*Citizen Electronics Co., Ltd. v. Osram GMBH*, 377 F. Supp. 2d 149 (D.D.C. 2005) ................. 13

*Comcast Cable Comm. Corp. v. Finisar Corp.*, 2006 WL 3259000, *3 (N.D.Cal. Nov. 9, 2006) ...................................................................................................................... 11

*EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996) ........................................... 5, 14

*Fairplay Electric Cars, LLC v. Textron Innovations, Inc.*, 431 F. Supp. 2d 491, 493 (D. Del. 2006) ...................................................................................................................... 9

*Gen-Prove, Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1379 (Fed. Cir. 2004), *cert. dismissed*, 543 U.S. 941 (2004) ...................................................................................................................... 5

*Glaxo Group, Ltd. v. Dr. Reddy s Labs., Ltd.*, 325 F. Supp. 2d 502, 507 (D.N.J. 2004) ............. 10

*Holley Performance Products, Inc. v. Barry Grant, Inc.*, 74 U.S.P.Q. 2d 1357 (N.D. Ill. 2004) ...................................................................................................................... 13

*Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) ........................... 12

*Indium Corp. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) ....................................... 6

*Jervis B. Webb Co. v. S. Sys., Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984) ............................... 4, 7

*Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990) ................................. 7

*Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. – , fn.11, 81 U.S.P.Q. 2d 1225, fn.11 (Jan. 9, 2007) ...................................................................................................................... 6

*Microchip Technology, Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 941 (Fed. Cir. 2006) ...................................................................................................................... 5, 11

*Millipore Corp. v. University Patents, Inc.*, 682 F. Supp. 227, 231 (D. Del. 1987) ....................... 7

*Moore U.S.A. Inc. v. The Standard Register Co*, 2001 WL 34076423 (N.D.N.Y. Aug. 28, 2001) ...................................................................................................................... 10

*Mutual Pharm. Co. v. Pfizer Inc.*, 307 F. Supp. 2d 88, 93-94 (D.D.C. 2004) .............................. 12

*Mylan Pharmaceuticals, Inc. v. Merck & Co., Inc.*, 2005 WL 2850137 at *6 (M.D. Pa. Oct. 28, 2005) ........................................................................................................................ 12

*Peregrine Surgical, Ltd. v. Synergentics, USA, Inc.*, 2006 WL 3857492 at *4 (E.D. Pa. Dec. 29, 2006) ...................................................................................................................... 10

*Positec USA Inc. v. Milwaukee Electric Tool Corp.*, 2006 WL 2726728 (D. Del. 2006) ............. 7

*Progressive Technology in Lighting Inc. v. Lumatech Corp.*, 45 U.S.P.Q. 2d 1928, 1933 (W.D. Mich. 1998) ............................................................................................................... 10

*Ryko Mnfct. Co. v. Delta Services and Equipment Corp.*, 28 U.S.P.Q. 2d 1558 (E.D. La. 1993) ................................................................................................................................. 10

*Shell Oil Co. v. Amoco Corp.* 970 F.2d 885, 887 (Fed. Cir. 1992) ................................................. 5

*Sirius Satellite Research, Inc. v. Acacia Research Corp.*, 2006 WL 238999 at *6 (S.D.N.Y. Jan. 30, 2006) .................................................................................................... 9

*Telectronics Pacing Sys., Inc. v. Ventritrex, Inc.*, 982 F.2d 1520, 1526 (Fed. Cir. 1992) ............. 7

*Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1333 (Fed. Cir. 2005), *cert. denied*, 126 S. Ct. 473 (2005) ................................................................................ 5, 9, 11

*Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002) ......................... 11

*West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d 1295, 1298 (Fed. Cir. 1992) ................................................................................................................................. 9, 12

*Wilton v. Seven Falls*, 515 U.S. 277, 287 (1995) ........................................................................ 14

## Statutes

28 U.S.C. § 2201 ........................................................................................................................ 1, 5

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

On November 30, 2006, plaintiff CoxCom, Inc. ("CoxCom") filed the above-captioned Declaratory Judgment action against defendant Rembrandt Technologies, L.P. ("Rembrandt") seeking a judgment that U.S. Patent No. 5,008,903 ("the '903 patent") owned by Rembrandt is not infringed, invalid and/or unenforceable.  However, CoxCom's action was filed without justification and should be dismissed.

Rembrandt never mentioned the '903 patent to CoxCom, much less threatened it with the '903 patent, before CoxCom filed this lawsuit.  Even if the facts alleged by CoxCom were true, they do not meet the stringent legal standards required for finding declaratory judgment jurisdiction.

CoxCom does not (and cannot) allege sufficient facts supporting an objectively reasonable apprehension that Rembrandt would sue it on the '903 patent, as required for jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201.  It is true that Rembrandt owns a large portfolio of patents and has brought enforcement actions with respect to some of those patents against selected infringers.  Not even CoxCom, however, would argue that those facts alone can establish its right to sue Rembrandt based on declaratory judgment jurisdiction.  Thus, CoxCom's argument essentially is that if Rembrandt owns the '903, and it has previously sued CoxCom on a different patent, and also sued others with respect to the '903, CoxCom is entitled to assume that Rembrandt intends to sue it on the '903, notwithstanding the lack of any evidence that it intends to do so.  As a matter of law, this is insufficient to establish declaratory judgment jurisdiction.

Even assuming that CoxCom could somehow justify its apprehension of an imminent suit on the '903 patent, this Court should exercise its discretion in dismissing this case.  CoxCom has the opportunity to assert its claims against the '903 patent in a case between Rembrandt and

CoxCom pending in the Eastern District of Texas involving four other patents, with the '903 having been added after CoxCom filed this action. It undoubtedly would be more efficient for the parties and the judicial system if the '903 patent is litigated in the Texas action, allowing the disputes between Rembrandt and CoxCom to be decided in a single case. For this independent reason, Rembrandt asks the Court to exercise its discretion in dismissing this case.

For these and the reasons that follow, Rembrandt respectfully requests that this Court dismiss this improper lawsuit pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and, alternatively, the Court's discretionary authority under the Declaratory Judgment Act.

## **FACTUAL BACKGROUND**

**The Parties.** Rembrandt owns approximately 175 patents, a portion of which originated from the patent portfolio of AT&T Paradyne, which for decades was a leading innovator in the field of high speed digital communications systems. Engineers at AT&T Paradyne have been awarded hundreds of patents, many of which reflect seminal developments in the telecommunications field, including the '903 patent.

CoxCom is a cable service producer which offers various cable services to its subscribers including television, telephone and Internet services. (D.I. 1 at ¶ 6). The '903 patent generally relates to improved techniques for transmitting data over cable systems such as CoxCom's, and covers CoxCom's cable Internet services.

**The Texas Litigation Against CoxCom.** Prior to the filing of this action, on June 1, 2006, Rembrandt filed a complaint in the United States District Court for the Eastern District of Texas against three cable companies: Charter Communications, Inc. and its affiliate ("Charter"), CoxCom, Inc, and its affiliates ("CoxCom"), and Cablevision Systems Corporation and its affiliate ("Cablevision") (the "first action"). This was Rembrandt's first, and only, lawsuit

against CoxCom prior to this litigation. Rembrandt sued to enforce four of its AT&T Paradyne patents, but did not include the '903 patent. Discovery in that action has not yet begun.

On November 30, 2006, CoxCom filed this declaratory judgment action on one patent, the '903 patent. On the same day CoxCom filed this lawsuit, Rembrandt filed a second action against Charter and CoxCom in the Eastern District of Texas on four additional cable system patents; but again, that action ("the second action") did not include the '903 patent. Upon learning that CoxCom filed this declaratory judgment action on the '903 patent in Delaware, Rembrandt was forced, as a prophylactic measure, to amend its Complaint in the second action to include the '903 patent, which it did the next day, December 1, 2006. Thus, the second action against Charter and CoxCom in Texas, filed only hours after CoxCom's Delaware case, now includes the '903 patent in addition to the other four patents initially asserted in the case. Discovery in the second action has not yet begun either.

In summary, Rembrandt has two separate pending actions against CoxCom in Texas on two different sets of patents. The '903 patent was subsequently added to the second Texas action as a result of CoxCom's declaratory judgment action here. Of the nine patents presently at issue between the parties in these three cases, CoxCom's declaratory judgment action in Delaware includes only the '903 patent. All three cases are still in the preliminary stages and discovery has not yet begun in any of the cases between Rembrandt and CoxCom.

**Rembrandt's Cable Patent Litigation Against Others.** CoxCom's declaratory judgment action purports to rest, in part, on other lawsuits by Rembrandt against other companies. In addition to enforcing its patent rights against CoxCom, Rembrandt has sought similar redress against other cable companies. On September 13, 2006, Rembrandt sued Time Warner in Texas on five patents, including the '903 patent. Nevertheless, as noted above, no

action on the '903 was asserted against CoxCom.  The litigation against Time Warner on the '903 patent was filed two and half months before CoxCom's declaratory judgment action.

Subsequently, on October 13, 2006, Rembrandt brought an action in Delaware against Cablevision on the same four patents brought against CoxCom in the first action plus the '903 patent.  Again, no action on the '903 was asserted against CoxCom.  This case was filed six weeks before CoxCom's declaratory judgment action.

Based on solely these facts, CoxCom alleges that it had an objectively reasonable apprehension that a lawsuit by Rembrandt on the '903 patent was imminent.  (D.I. 1 at ¶ 19).  Rembrandt never threatened to sue CoxCom on the '903 patent prior to this litigation and did not sue CoxCom on the '903 patent when it sued other companies on that patent.  Despite the fact that CoxCom delayed two and a half months after Rembrandt sued Time Warner on the '903 and other patents,[1] and, that when CoxCom did bring this action, brought it only with respect to the '903, CoxCom now expects this Court to entertain this improper, and now duplicative, declaratory judgment action.

## ARGUMENT

## I.    THE COURT LACKS DECLARATORY JUDGMENT JURISDICTION OVER COXCOM'S CLAIMS

### A.    Legal Standards for Declaratory Judgment Jurisdiction

#### 1.    CoxCom Has the Burden of Proof on This Legal Issue.

The declaratory judgment plaintiff bears the burden of proving the existence of facts underlying its allegations of the existence of an actual controversy.  *Jervis B. Webb Co. v. S. Sys., Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984).  "To constitute an actual controversy, the plaintiff

---

[1]  CoxCom also knew that, notwithstanding Rembrandt's October 13, 2006 action against Cablevision, in the more than six weeks which preceded the filing of this action, Rembrandt had not sued it on the '903.

has the burden of establishing by a preponderance of the evidence, *inter alia*, that it has a reasonable apprehension that it will be sued." *Shell Oil Co. v. Amoco Corp*. 970 F.2d 885, 887 (Fed. Cir. 1992). Determination of the legal effect of the parties' conduct under this test is a matter of law for the Court to decide. *Id.* at 889.

### 2.    CoxCom Had No Reasonable Apprehension of Suit on the '903.

Consistent with Article III of the Constitution, the Declaratory Judgment Act (the "Act") confers jurisdiction to federal courts only in cases of "actual controversy." 28 U.S.C. § 2201; *Gen-Prove, Inc. v. Vysis, Inc*., 359 F.3d 1376, 1379 (Fed. Cir. 2004), *cert. dismissed*, 543 U.S. 941 (2004). The Act seeks to strike a delicate balance between enabling accused infringers to resolve uncertainty created by real threats from patentees, while at the same time protecting "quiescent patent owners against unwarranted litigation." *Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc*., 395 F.3d 1324, 1333 (Fed. Cir. 2005), *cert. denied*, 126 S. Ct. 473 (2005). Thus, the court must draw a "line between cases in which the parties have adverse interests and cases in which those adverse interests have ripened into a dispute that may properly be deemed a controversy." *EMC Corp. v. Norand Corp*., 89 F.3d 807, 811 (Fed. Cir. 1996).

Accordingly, before a court may exercise jurisdiction over a declaratory judgment action, the Act requires an "actual controversy between the parties." *Id.* at 810. However, "more is required for an actual controversy than the existence of an adversely held patent. . . ." *Teva*, 395 at 1333. Federal Circuit law governs a court's review as to whether an actual controversy exists under the Declaratory Judgment Act when the underlying merits of an action involve patent infringement and/or validity. *Microchip Technology, Inc. v. Chamberlain Group, Inc*., 441 F.3d 936, 941 (Fed. Cir. 2006). In making the determination of whether an actual controversy exists, the court must decide whether the defendant had a reasonable apprehension of suit and whether such apprehension was *objectively* reasonable. A "subjective apprehension of an infringement

suit is insufficient to satisfy the actual controversy requirement." *Indium Corp. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985).  A two part test has been formulated by the Federal Circuit to determine whether an objectively reasonable apprehension of suit exists.  There must be both:

> (1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and

> (2) present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken with the intent to conduct such activity."

*Teva*, 395 at 1332.

For purposes of this Motion, only the first prong of this test is at issue; Rembrandt does not dispute that the second prong is met.  It is also, however, beyond dispute that Rembrandt has never made an explicit threat to CoxCom regarding the '903 patent.  Therefore, the only issue is whether CoxCom objectively had a reasonable apprehension of a lawsuit on the '903 patent that is legally cognizable under the Declaratory Judgment Act.  In circumstances like this, the Federal Circuit has stated that when "the defendant's conduct, including its statements, falls short of an express charge, one must consider the 'totality of the circumstances' in determining whether that conduct meets the first prong of the test." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988).  Furthermore, it has been clarified that a declaratory judgment plaintiff must not only have a reasonable apprehension that the patentee will sue it for infringement, but also that the lawsuit is "*imminent*." *Teva*, 395 at 1333 (emphasis original).[2]

---

[2] Although the Supreme Court has recently commented on the Federal Circuit's "reasonable apprehension of an imminent suit test" as set forth in *Teva*, such commentary was dicta and neither *Teva* nor the reasonable apprehension test were overruled.  *See Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. – , fn.11, 81 U.S.P.Q. 2d 1225, fn.11 (Jan. 9, 2007).  Furthermore, no new test was proposed and, therefore, the test set forth in *Teva* remains controlling law as to this issue.

### 3. Jurisdiction has to exist at the time of the filing of the complaint.

When analyzing the totality of the circumstances, "the court must test the existence of jurisdiction as of the time the complaint was filed." *Positec USA Inc. v. Milwaukee Electric Tool Corp.*, 2006 WL 2726728 (D. Del. 2006)[3] (citing *Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990)). "Activities that occurred subsequent to the filing of the complaint may not be considered since jurisdiction, if it exists, must be established as of the date of the filing of the declaratory judgment action." *Millipore Corp. v. University Patents, Inc.*, 682 F. Supp. 227, 231 (D. Del. 1987) (citing *Jervis B. Webb Co. v. S. Sys., Inc.*, 742 F.2d 1388, 1398 (Fed. Cir. 1984)). Moreover, "even assuming [the existence of] an actual controversy, the exercise of a court's jurisdiction over a declaratory judgment action is discretionary." *Telectronics Pacing Sys., Inc. v. Ventritrex, Inc.*, 982 F.2d 1520, 1526 (Fed. Cir. 1992) (citations omitted).

In summary, to demonstrate that this Court has declaratory judgment jurisdiction, CoxCom must identify specific acts by Rembrandt prior to the initiation of this lawsuit that would have led an objective observer to the reasonable conclusion that a lawsuit by Rembrandt on the '903 patent was imminent. The facts of this case do not meet this legal threshold and, therefore, CoxCom's case must be dismissed.

### B. Rembrandt Never Threatened CoxCom on the '903 Patent

CoxCom does not allege, and it cannot be argued, that Rembrandt ever explicitly threatened CoxCom or any of its affiliates with litigation on the '903 patent prior to the filing of this action. There had been no communications between the parties regarding the '903 patent prior to this lawsuit, and CoxCom does not allege that any other actions by Rembrandt could be

---

[3] Unpublished decisions cited to are attached hereto as Exhibit A.

construed as an express threat.  Thus, where there is no express charge of infringement, as in this case, the Court must consider the totality of the circumstances to determine whether reasonable apprehension of an imminent suit existed.  *Arrowhead*, 846 F.2d at 736.

**C.    The Totality of the Circumstances Shows No Reasonable Apprehension of an Imminent Suit**

In the absence of an express threat of litigation, CoxCom cites three alleged factors in support of its contention that it feared an imminent infringement suit by Rembrandt on the '903 patent when it filed this case:  (1) Rembrandt's business is to initiate lawsuits to enforce its patent rights; (2) Rembrandt previously sued CoxCom on other patents; and (3) Rembrandt previously sued CoxCom's competitors, but not CoxCom, on the '903 patent.

Under the totality of the circumstances, even if true, these factors fall far short of objectively giving rise to a reasonable apprehension of an imminent lawsuit on the '903 patent against CoxCom.  Indeed, the evidence pointed in the opposite direction. Therefore, this action should be dismissed.

**1.    Rembrandt's Business.**

In its complaint, CoxCom alleges that "Rembrandt's business is to initiate lawsuits to enforce patent rights."  (*See, e.g.,* D.I. 1 at ¶¶ 7-14).  In fact, Rembrandt is very selective regarding which patents it enforces and against which defendants it brings suit.  In any event, even if relevant, CoxCom's characterization of Rembrandt's business is legally insufficient to support its position that it had a reasonable apprehension of imminent suit based on the '903.  As noted earlier, declaratory judgment jurisdiction cannot be based on the mere fact that Rembrandt owns the '903, and that part of its business is to enforce certain of its patents against selected defendants.

Federal courts faced with CoxCom's type of argument have consistently held that the mere fact that a company vigorously protects its intellectual property is legally insufficient to create a reasonable apprehension of imminent litigation.  *See, e.g., Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1333 (Fed. Cir. 2005).[4]  This policy is sound because to allow a company which lawfully enforces its patent rights to be subject to unfettered declaratory judgment jurisdiction by parties it has not threatened on the patent at issue, would do violence to the purpose and spirit of the Declaratory Judgment Act.

The mere fact that Rembrandt has previously asserted its patent rights against infringers is insufficient as a matter of law to justify a reasonable apprehension of imminent suit by CoxCom.  In light of the totality of the circumstances of this case, this Court should give this factor little, if any, weight.

### 2.    Rembrandt's Prior Suit Against CoxCom.

Next, CoxCom contends that Rembrandt's June 1, 2006 lawsuit in Texas supports its allegation that it feared an imminent threat of suit on the '903 patent.[5]  In fact, that lawsuit should have led CoxCom to the opposite conclusion.  The June 1, 2006 case against CoxCom, filed nearly 6 months before this case, was directed to four completely different patents.  As the

---

[4] *West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d 1295, 1298 (Fed. Cir. 1992); *Angiodynamics, Inc. v. Diomed Holdings, Inc.*, 2006 WL 2583107 at *3 (D. Del. Sept. 7, 2006); *Fairplay Electric Cars, LLC v. Textron Innovations, Inc.*, 431 F. Supp. 2d 491, 493 (D. Del. 2006); *Sirius Satellite Research, Inc. v. Acacia Research Corp.*, 2006 WL 238999 at *6 (S.D.N.Y. Jan. 30, 2006) ("the fact that a patentee has aggressively asserted its patent rights against other alleged infringers is not sufficient to create a reasonable apprehension of imminent litigation.").

[5] Although Rembrandt filed a second action against CoxCom in Texas, on four patents other than the '903, this second action was filed after CoxCom's declaratory judgment action and, therefore, as a matter of law is legally irrelevant.  *West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d 1295, 1297 (Fed. Cir. 1992) ("This court applies this objective test to the facts at the time the complaint is filed.").

District Court for the Eastern District of Pennsylvania recently has stated, "a prior history of litigation [between the parties] is not necessarily relevant to the determination at all." *Peregrine Surgical, Ltd. v. Synergentics, USA, Inc.*, 2006 WL 3857492 at *4 (E.D. Pa. Dec. 29, 2006). In dismissing plaintiff's declaratory judgment action, the court in *Peregrine* stated that the "fact that a company has engaged in prior litigation over other patents does not produce a reasonable apprehension of suit in the instant case." *Id.* (citing *Glaxo Group, Ltd. v. Dr. Reddy s Labs., Ltd.*, 325 F. Supp. 2d 502, 507 (D.N.J. 2004) ("the fact that Glaxo has previously exhibited litigious tendencies with respect to other patents does not produce a reasonable apprehension of litigation in this case.")). Similarly, in *Moore U.S.A. Inc. v. The Standard Register Co.*, the district court held that even as many as three previous lawsuits between the parties in the last five years on related subject matter was insufficient, without more, to find a reasonable apprehension of an imminent suit. 2001 WL 34076423 (N.D.N.Y. Aug. 28, 2001).[6]

In this case, the mere fact that Rembrandt had filed one previous lawsuit against CoxCom on four other patents does not even come close to the type of conduct that satisfies the legal requirements for declaratory judgment jurisdiction. Declaratory judgment jurisdiction usually is found where a patentee holds the threat of litigation over an accused infringer's head for tactical or business purposes. *See Arrowhead*, 846 F.2d at 736. Here, even after filing its initial lawsuit, Rembrandt never threatened CoxCom with any additional patents, it did not contact any of

---

[6] *See also, Black & Decker Inc. v. Robert Bosch Tool Corp.*, 371 F. Supp. 2d 965 (N.D. Ill. 2005); *Progressive Technology in Lighting Inc. v. Lumatech Corp.*, 45 U.S.P.Q. 2d 1928, 1933 (W.D. Mich. 1998) (prior litigation between parties even with other facts present not enough for declaratory judgment jurisdiction); *Ryko Mnfct. Co. v. Delta Services and Equipment Corp.*, 28 U.S.P.Q. 2d 1558 (E.D. La. 1993) (same).

CoxCom's customers or suppliers about any potential infringement,[7] nor did it issue any press releases or make any public statements to indicate that it intended to sue CoxCom on the '903, or any other patent.[8]

The Federal Circuit, as well as many district courts, have held that the mere fact that there is a litigation history between two parties, particularly where it only comprises one prior case, does not give rise to declaratory judgment jurisdiction on any other patents owned by the plaintiff. A contrary policy would open the floodgates to unjustified litigation and allow all defendants to use the Declaratory Judgment Act as a weapon against patentees in clear contradiction to the purposes of the Act. *See Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc*., 395 F.3d 1324, 1333 (Fed. Cir. 2005).

### 3.    Rembrandt's Suits Against Others on the '903 Patent.

Finally, CoxCom alleges that Rembrandt's previous lawsuits against Time Warner and Cablevision on the '903 patent have put it under a "real and immediate apprehension of suit on the '903 patent." (D.I. 1 at ¶19). CoxCom reasons that because Rembrandt accused Time Warner and Cablevision's high speed Internet services of infringing the '903 patent, CoxCom would be accused as well since it also provides high speed Internet services. However, both Rembrandt and CoxCom's conduct shows convincingly that CoxCom had no objective basis for believing that it was threatened with a lawsuit on the '903.

First, Rembrandt's own actions illustrate that CoxCom had no objectively reasonable fear of an imminent lawsuit based on the suits against others. The very fact that other cable companies, and not CoxCom, were sued on the '903, logically should have caused CoxCom to

---

[7] *See, e.g., Microchip Technology, Inc. v. Chamberlain Group, Inc*., 441 F.3d 936, 941 (Fed. Cir. 2006); *Vanguard Research, Inc. v. PEAT, Inc.,* 304 F.3d 1249, 1255 (Fed. Cir. 2002).

[8] *See, e.g., Comcast Cable Comm. Corp. v. Finisar Corp*., 2006 WL 3259000, *3 (N.D.Cal. Nov. 9, 2006).

assume that it was not going to be sued on the '903, particularly when no suit was filed against it on that patent in the six week period before it filed this action. Moreover, Rembrandt filed its case against Time Warner on the '903 patent on September 13, 2006. In that September action against Time Warner, Rembrandt, in addition to the '903 patent, asserted four patents against Time Warner that had never been asserted against CoxCom. If Rembrandt's action against Time Warner, in fact, caused CoxCom to fear imminent suit, then CoxCom would have filed a declaratory action against Rembrandt on all five patents that were asserted against Time Warner. CoxCom does not explain why the alleged imminent fear related solely to the '903. The obvious explanation is that CoxCom did not file suit on the five patents because Rembrandt's action against Time Warner did not put CoxCom in any fear of imminent suit on any of the five patents asserted by Rembrandt against Time Warner, including the '903 patent.

As a matter of law, the mere fact that Rembrandt sued a competitor of CoxCom on a different group of patents does not provide an objective basis for CoxCom to believe that it would be sued on the '903 patent. *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) ("The prior patent litigation initiated by [defendant] against two other parties unconnected with [plaintiff], was too remote to make [plaintiff's] apprehension of further litigation in 1982 reasonable, insofar as necessary to give standing to bring a declaratory action on that basis.").[9] *See Mylan Pharmaceuticals, Inc. v. Merck & Co., Inc.*, 2005 WL 2850137 at *6 (M.D. Pa. Oct. 28, 2005). A patentee's history of enforcing patents does not in and of itself provide any indication regarding the patentee's intentions regarding other patents. *See Mutual Pharm. Co. v. Pfizer Inc.*, 307 F. Supp. 2d 88, 93-94 (D.D.C. 2004). For the same reasons,

---

[9] *See also, West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d 1295, 1298 (Fed. Cir. 1992) (holding defendant's litigation against unrelated third parties did not give plaintiff an objective reason to fear litigation).

Rembrandt's October 13, 2006 lawsuit against Cablevision in Delaware does not objectively support CoxCom's alleged apprehension of imminent suit.

CoxCom's substantial delay in doing anything in response to Rembrandt actions also belies CoxCom's claim now that those actions put CoxCom in fear of an immediate suit on the '903. Rembrandt filed its original suit against CoxCom on July 1, 2006. In the six months before it filed this declaratory judgment action, CoxCom did nothing. Rembrandt sued Time Warner on the '903 patent on September 13, 2006. In response to this, CoxCom again did nothing for over two and a half months. Finally, Rembrandt filed its suit against Cablevision on the '903 patent on October 13, 2006. Once again, for over six weeks CoxCom did nothing. *Holley Performance Products, Inc. v. Barry Grant, Inc*., 74 U.S.P.Q. 2d 1357 (N.D. Ill. 2004) (Fear of lawsuit dissipated when declaratory judgment plaintiff did nothing during the two week deadline set by patentee for response to infringement allegations.); *Citizen Electronics Co., Ltd. v. Osram GMBH*, 377 F. Supp. 2d 149 (D.D.C. 2005) (case dismissed where plaintiff's delay indicated no apprehension of imminent suit.

In this case, the objective facts demonstrate that CoxCom did not have a reasonable apprehension of suit on the '903 patent. In fact, even when Rembrandt filed its second action against CoxCom without yet knowing about the declaratory judgment action, it did not assert the '903 patent against CoxCom. CoxCom simply cannot meet its burden of proving that the facts here put it in imminent apprehension of a lawsuit and, therefore, its complaint must be dismissed.

## II. EVEN IF THE COURT HAS JURISDICTION, IT SHOULD NEVERTHELESS DISMISS THIS CASE IN THE EXERCISE OF ITS DISCRETION UNDER THE DECLARATORY JUDGMENT ACT

Even if the Court were to find subject matter jurisdiction here, it can and should dismiss this case in the exercise of its discretion under the Declaratory Judgment Act. The Act provides federal courts with a "unique breadth of . . . discretion to decline to enter a declaratory

judgment." *Wilton v. Seven Falls*, 515 U.S. 277, 287 (1995); *see also, Breitigan v. New Castle County*, 350 F. Supp. 2d 571, 582 (D. Del. 2004) (The Act "confers a discretion on the courts rather than an absolute right upon the litigant.").

In deciding whether to exercise its discretion, courts should consider whether hearing a declaratory judgment action would further the objectives of the Act. "Simply because there is an actual controversy between the parties does not mean that the district court is required to exercise that jurisdiction." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996). An action evidently filed "as a tactical measure," rather than to resolve a true cloud of litigation, is an appropriate candidate for discretionary dismissal. *Id.* at 815. The Federal Circuit has described the purpose of the Declaratory Judgment Act to prevent a scenario where

> a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword . . . . Guerilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity.

*Arrowhead,* 846 F.2d at 734-35.

In this case, no evidence exists that Rembrandt has engaged in any extra-judicial patent enforcement or such a *danse macabre*. In fact, Rembrandt has never contacted CoxCom or any of its affiliates or customers regarding the '903 patent or attempted to coerce or hinder CoxCom with any "cloud of litigation." Rather, it is CoxCom's own actions than have multiplied the number of cases between the parties.

Moreover, the broader patent dispute between these two parties, including the '903 patent, is already being addressed in the Eastern District of Texas. Now that Rembrandt has added the '903 patent to its second action against CoxCom in Texas, there is no conceivable purpose for this lawsuit to continue. CoxCom will have a full and fair opportunity to present its

case against the '903 patent in conjunction with its already pending case including Rembrandt's other patents in Texas. Since discovery has not begun in any of these cases, there can be no prejudice to either party.

Given the facts of this case, it is evident that CoxCom's action does nothing to further the purposes of the Declaratory Judgment Act. Entertaining this case would simply be a waste of the judicial resources of this District and provides no benefit to either party. This is surely not the type of conduct the Act was created to guard against. On this independent basis, this action should be dismissed.

## CONCLUSION

Because declaratory judgment jurisdiction is lacking for the reasons set forth above, CoxCom's improperly filed Complaint should be dismissed.

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

 /s/ Kevin M. Baird
George Pazuniak (# 478)
Kevin M. Baird (# 4219)
James M. Lennon (# 4570)
AnnaMartina Tyreus (# 4771)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Tel:  (302) 252-4324
Fax:  (302) 661-7725
kbaird@wcsr.com

*Counsel for Rembrandt Technologies, LP*

Dated:  January 26, 2007

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2007, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF and caused the same to be served on the plaintiff at

the following address in the manner indicated below:

<u>**VIA HAND DELIVERY AND EMAIL**</u>

Rodger D. Smith II (# 3778)
Leslie A. Polizoti (# 4299)
Chase Manhattan Centre
1201 North Market Street, P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
lpolizoti@mnat.com

<u>**VIA EMAIL**</u>

Mitchell G. Stockwell
Kilpatrick Stockton LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, GA 30309
(404) 815-6500
mstockwell@kilpatrickstockton.com

/s/ Kevin M. Baird
Kevin M. Baird (# 4219)

# EXHIBIT A

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2006 WL 2583107 (D.Del.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
AngioDynamics, Inc. v. Diomed Holdings,
Inc.D.Del.,2006.Only the Westlaw citation
is currently available.
  United States District Court,D. Delaware.
    ANGIODYNAMICS, INC., Plaintiff,
                      v.
   DIOMED HOLDINGS, INC., Defendant.
           **C.A. No. 06-02 GMS.**

              Sept. 7, 2006.

David E. Wilks, Reed Smith LLP,
Wilmington, DE, Arthur Dresner, Stephen
M. Chin, Reed Smith LLP, New York, NY,
for Plaintiff.
Frederick L. Cottrell, III, Richards, Layton
& Finger, Wilmington, DE, Michael A.
Albert, Michael N. Rader, Wolf, Greenfield
& Sacks, P.C., Boston, MA, for Defendant.

              *MEMORANDUM*
GREGORY M. SLEET, District Judge.

           **I. INTRODUCTION**

**\*1** On January 3, 2006, AngioDynamics,
Inc. ("AngioDynamics") brought this
declaratory judgment action against Diomed
Holdings, Inc. ("Diomed"). Presently before
the court are Diomed's Motion to Dismiss
(D.I.8), and AngioDynamics' Motion to
Amend (D.I.10). For the following reasons,
the court will grant Diomed's motion to
dismiss and deny AngioDynamics' motion to
amend.

           **II. BACKGROUND**

A subsidiary of Diomed, Diomed Inc., owns
U.S. Patent Nos. 6,981,971 (the " 971
patent") and 6,986,766 (the " 766 patent")
(collectively, the "patents-in-suit"). The
patents-in-suit are directed to product
features, which include markings along an
introducer sheath, of a system for delivering
laser energy to the walls of a vein, and a
method directed to the use of a product with
those features. (D.I 4 ¶¶ 13, 16-17.) The
method of delivering laser energy to the
walls of a vein is known as endovenous laser
treatment. (D.I. 11, at 4.) Both Diomed and
AngioDynamics offer products relating to
endovenous laser treatment. Diomed,
however, has the exclusive rights in three
patents, including the patents-in-suit, that
relate to endovenous laser treatment.

AngioDynamics alleges that the issuance of
the patents-in-suit, as well as Diomed's
conduct, including the filing of a lawsuit
against it and other companies for
infringement of a different patent and the
making of certain statements regarding the
patents-in-suit, have given it a reasonable
apprehension that Diomed would sue it for
patent infringement. (D.I. 4 ¶ 31.)
Accordingly, AngioDynamics has filed a
declaratory judgment action, asking the
court to declare all claims of the patents-in-
suit invalid, non-infringed, and
unenforceable. (Id. at Prayer for Relief.)

On January 31, 2006, Diomed filed a motion
to dismiss for lack of subject matter
jurisdiction. On February 14, 2006,
AngioDynamics filed a motion to amend its
first amended complaint.

            **III. DISCUSSION**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Diomed contends that the court should dismiss both counts of the declaratory judgment action because AngioDynamics had no objectively reasonable apprehension of imminent suit on the 971 and 776 patents and, therefore, AngioDynamics' claim is premature. In other words, Diomed contends the court lacks subject matter jurisdiction over AngioDynamics' declaratory judgment action.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the jurisdiction of the Court to address the merits of a plaintiff's complaint. Such a challenge may present either a facial or a factual challenge to subject matter jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). When asserting a facial challenge, a defendant contends that the complaint alleges facts that, even if true, would be insufficient to establish the Court's jurisdiction. *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000). The present motion presents a facial challenge to the complaint because the jurisdictional facts are not in dispute. Such a motion requires the court to consider the allegations of the complaint as true and to make all reasonable inferences in the plaintiff's favor. *See id.* Additionally, the court must test the existence of jurisdiction as of the time the complaint was filed. *Lang v. Pacific Marine & Supply Co.,* 895 F.2d 761, 764 (Fed.Cir.1990).

**\*2** The Declaratory Judgment Act (the "Act") provides that "[i]n a case of actual controversy ... [a court of competent jurisdiction] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28

U.S.C. § 2201(a). Thus, before a court may exercise jurisdiction over a declaratory judgment action, the Act requires an "actual controversy between the parties ." *Medimmune, Inc. v. Centocor, Inc.,* 409 F.3d 1376, 1378-79 (Fed.Cir.2005) (citing *Teva Pharms. USA, Inc. v. Pfizer, Inc.,* 395 F.3d 1324, 1331 (Fed.Cir.2005)). "In general, the presence of an 'actual controversy' within the meaning of the statute depends on 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 810 (Fed.Cir.1996) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

However, a district court does not have jurisdiction to hear the action when there is no actual controversy. *Spectronics Corp. v. H .B. Fuller Co.,* 940 F.2d 631, 634 (Fed.Cir.1991), *cert. denied,* 112 S.Ct. 658 (1991). Moreover, "even assuming [the existence of] an actual controversy, the exercise of a court's jurisdiction over a declaratory judgment action is discretionary." *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.,* 982 F.2d 1520, 1526 (Fed.Cir .1992) (citations omitted).

In the patent context, the Federal Circuit has developed a two-part test for determining whether the declaratory judgment action is justiciable: (1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit; and (2) present activity by the declaratory judgment plaintiff which could constitute infringement, or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                  Page 3
Slip Copy, 2006 WL 2583107 (D.Del.)
**(Cite as: Slip Copy)**

concrete steps taken by the declaratory judgment plaintiff with the intent to conduct such activity. *See Goodyear Tire & Rubber Co. v. Releasomers Inc.,* 824 F.2d 953, 955 (Fed.Cir.1987) (citations omitted). In addition, the declaratory judgment plaintiff bears the burden of proving the existence of facts underlying its allegations of the existence of an actual controversy. *Jervis B. Webb Co. v. S. Sys., Inc.,* 742 F.2d 1388, 1399 (Fed.Cir.1984).

Here, neither party disputes that the second element has been satisfied. Thus, the court's determination turns on whether AngioDynamics has a reasonable apprehension of suit. "When the defendant's conduct, including its statements falls short of an express charge [or threat], one must consider the 'totality of the circumstances' in determining whether that conduct meets the first prong of the test." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988) (quoting *Goodyear,* 824 F.3d at 955). AngioDynamics, therefore, must be able to demonstrate that it has a reasonable apprehension of imminent suit. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (this requirement of imminence reflects the mandate in Article III of the U.S. Constitution that the injury in fact be "concrete," and "actual or imminent, not conjectural or hypothetical"); *see Teva Pharms. v. Pfizer, Inc.,* 395 F.3d 1324, 1333 (Fed.Cir.2005); *E.I. DuPont de Nemours & Co. v. Great Lakes Chem. Corp.,* 383 F.Supp.2d 642, 647 (D.Del.2005).[FN1]

> FN1. AngioDynamics maintains that the suit does not have to be imminent for a reasonable apprehension to exist and attempts to distinguish *Teva Pharms. v. Pfizer, Inc.,* 395

F.3d 1324 (Fed.Cir .2005), a recent case in which the Federal Circuit stated that an "actual controversy" exists between parties when there is a reasonable apprehension of *imminent* suit. 395 F.3d at 1333 (emphasis in original). AngioDynamics contends that *Teva* is distinguishable from the case at bar because it "involved a pharmaceutical drug application that was subject to compliance with provisions of the Hatch-Waxman Amendments to the Federal Food, Drug and Cosmetic Act." (D.I. 11, at 16.) According to AngioDynamics, "when the *Teva* Court stated that the suit must be imminent for 'reasonable apprehension,' it was addressing the unique situation that arises in Hatch-Waxman cases." (Id. at 17.) The court cannot agree with AngioDynamics' position. While it is true that the declaratory judgment subject matter jurisdiction issue in *Teva* arose as a result of a pharmaceutical drug application, that fact was not critical to the court's statement regarding imminency of suit. Indeed, the court set forth the imminency requirement for reasonable apprehension in the context of discussing the standard that it must apply to determine whether the suit was fit for judicial review. Moreover, the court did not, as AngioDynamics suggests, single out or distinguish Hatch-Waxman cases as "unique" during its discussion of the reasonable apprehension element of the two-part test.

**\*3** In the present case, AngioDynamics contends that the following facts, when

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

viewed in their totality, create a reasonable apprehension of an infringement suit by Diomed: (1) Diomed's history of defending its patents, as demonstrated by its lawsuits against AngioDynamics and other companies for infringement of U.S. Patent No. 6,398,777 (the " 777patent"); (2) Diomed's lawsuit against Vascular Solutions, Inc. ("Vascular Solutions") and a former Diomed employee for trade secret misappropriation; and (3) a statement made by James Wylie ("Wylie"), Diomed's President and Chief Executive Officer, at a July 28, 2005 conference call set up to review the company's second quarter financial results.

After having considered these facts in the context of the relevant case law, the court is unpersuaded that AngioDynamics has demonstrated a reasonable apprehension of imminent suit. First, although AngioDynamics has shown that Diomed brings lawsuits for patent infringement to protect its investments, it has not argued that Diomed has sued any party for infringement of either of the patents-in-suit. Thus, while relevant to the court's analysis, Diomed's lawsuits for infringement of the 777 patent do not lead the court to a finding of reasonable apprehension. *See DuPont Dow Elastomers, L.L. C. v. Green Tweed of Delaware,* 148 F.Supp.2d 412, 415 (D.Del.2001) (granting motion to dismiss declaratory judgment action based, in part, on the fact that the defendant did not have a pattern of suing on the patent-in-suit).

Likewise, Diomed's lawsuit against Vascular Solutions and a former Diomed employee for trade secret misappropriation does not lend credence to AngioDynamics' contention of a reasonable apprehension. To support its contention, AngioDynamics cites to *Vanguard Research, Inc. v. PEAT, Inc.,*

304 F.3d 1249 (Fed.Cir.2002) and *Goodyear Tire & Rubber Co. v. Releasomers Inc.,* 824 F.2d 953 (Fed.Cir.1987), two cases in which the Federal Circuit concluded that the plaintiff had a reasonable apprehension of suit, based partly on prior litigation involving trade secret misappropriation. What AngioDynamics fails to mention in its briefing, however, is the fact that the prior lawsuits for trade secret misappropriation in both *Vanguard* and *Goodyear* were lawsuits filed by the patentee against the declaratory judgment plaintiff. *See Vanguard,* 304 F.3d at 1255; *Goodyear,* 824 F.2d at 954. Here, in contrast, Diomed filed its trade misappropriation lawsuit against another company and one of its own former employees.

Additionally, the Federal Circuit did not just look at the prior lawsuit against the declaratory judgment plaintiffs in *Vanguard* and *Goodyear.* In *Vanguard,* the patentee also had informed the plaintiff's customers that the plaintiff was using patented technology without a license. *See Vanguard,* 304 F.3d at 1255. In the present case, AngioDynamics has neither alleged nor presented evidence regarding conduct on the part of Diomed directed to its customers. *See DuPont Dow,* 148 F.Supp.2d at 415 (dismissing case for lack of declaratory judgment jurisdiction based, in part, on the absence of conduct interfering with the plaintiff's customer relations). In *Goodyear,* the patentee had told the plaintiff's representative that, when the patents-in-suit issued, the parties "would have to talk about infringement of the patents by Goodyear and possible licensing since Goodyear might be liable for past patent infringement," and that "the parties might wind up in Federal Court on these issues." *Goodyear,* 824 F.2d at 956 n. 5. Here, as will be discussed below, Diomed did not directly discuss the newly

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5
Slip Copy, 2006 WL 2583107 (D.Del.)
**(Cite as: Slip Copy)**

issued patents with AngioDynamics, and did not use any language in statements about the patents that would give AngioDynamics a reasonable apprehension of suit. As such, Diomed's present lawsuit for trade secret misappropriation does not support of finding of reasonable apprehension, even when considered together with its lawsuits for infringement of the 777 patent.

**\*4** Finally, AngioDynamics points to Wylie's statement during Diomed's second quarter 2005 earnings conference call. According to the amended complaint, Wylie stated the following:

It is important to note that on July 26, Diomed announced that it had received a Notice of Allowance from the U.S. Patent and Trademark Office for a patent on Diomed's proprietary technique of using a marked introducer sheath to control the rate of withdrawal of an optical fiber during an intravenous laser procedure. Diomed introduced a marked introducing sheath especially configured for use in the proprietary technology in the fourth quarter of 2003. Currently, all EVLT procedure kits sold by Diomed contain a marked introducer sheath for use in the method covered by the allowed patent. Notably, both AngioDynamics and Vascular Solutions are offering marked introducer sheaths particularly for use in a technique *embraced by* the now allowed Diomed patent. Further, it is important to point out that this case is not connected to the U.S. Patent 6,398,777 infringement lawsuits for which I will now provide an update.

(D.I. 4 ¶ 22.) (emphasis added). The Federal Circuit, on many occasions, has addressed statements made by the patentee to either potential infringers or third parties. On the one hand, the Federal Circuit has stated that the test for finding a controversy

"cannot turn on whether the parties used polite terms in dealing with one another." *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 811 (Fed.Cir .1996). That is, " 'in light of the subtleties in lawyer language,' *Arrowhead,* 846 F.2d at 736, the Federal Circuit has not required ... 'magic words' to create a justiciable controversy." *DuPont Dow,* 148 F.Supp.2d at 415. On the other hand, "the 'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible infringer; it requires that the objective circumstances support such an apprehension." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,* 57 F.3d 1051, 1053-54 (Fed.Cir.1995). Indeed, the court has determined that a patentee does not create a reasonable apprehension when the patentee states directly to the potential infringer that its activities "fall within," "are covered by," and are "operations under" the patent. *Shell Oil v. Amoco,* 970 F.2d 885, 889 (Fed.Cir.1992). Additionally, the Federal Circuit has held that a "patentee's statement that it intend[s] to enforce [its] patent [does] not ... create a reasonable apprehension of suit." *Phillips Plastics,* 57 F.3d at 1054.

In the present case, the court is not convinced that Wylie's statement that AngioDynamics' products are "embraced by" the patents-in-suit was sufficient to give rise to a reasonable apprehension of suit. The statement was not made to AngioDynamics directly; rather, it was made during a conference call that Diomed utilized to announce and discuss its financial results with investors and other interested third parties.[FN2] Moreover, the statement is consistent with the types of statements that the Federal Circuit has already determined do not create a reasonable apprehension on the part of the potential infringer. *See, e.g., Shell,* 970 F.2d at 889; *Phillips Plastics,* 57

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 6
Slip Copy, 2006 WL 2583107 (D.Del.)
**(Cite as: Slip Copy)**

F.3d at 1054. Lastly, while AngioDynamics contends that the "embraced by" language used in the conference call was enough to create a reasonable apprehension on its part, it ignores the remainder of the call, during which Wylie, in response to a question from a caller, stated that he did not "want to get into a discussion on the call relative to infringement" and did not "want to comment" on what Diomed would do with the patent. (D.I. 9, Ex. A at 35:32-36:35.) These statements could not have created any apprehension of an imminent suit in AngioDynamics, much less an objectively reasonable apprehension.

> FN2. According to AngioDynamics, Diomed "must have reasonably anticipated" that at least one representative of AngioDynamics would have participated in the conference call because it was "broad[ly] advertise[d]" in a Diomed press release inviting any "interested parties" to participate. (D.I. 11, at 8.) Thus, AngioDynamics asserts that Wylie's statement was made to the general industry, including its customers, and "broadcast specifically to [it]." (Id.) AngioDynamics; assertion is of no moment, however, because the court concludes that the statement "embraced by" is not one which would trigger a reasonable apprehension of suit. The court's conclusion is confirmed by the fact that AngioDynamics has neither alleged nor argued that the statement has interfered with its customer relations. See, e.g., Arrowhead, 846 F.3d at 737 (noting that the patentee's conduct "produced an apprehension of litigation serious

enough to cause a demand for indemnification from the potential infringer's customers); Vanguard, 304 F.3d at 1251 (discussing patentee's interference with potential infringer's customers).

**\*5** Essentially, the facts of the present case boil down to the following: Diomed has sued AngioDynamics and other companies for infringement of a patent "not directly related to" either of the patents-in-suit. (See D.I. 11, at 14.) Diomed has also sued Vascular Solutions and one of its former employees for trade secret misappropriation involving the technology that is the subject of the patents-in-suit. Additionally, Diomed's ownership of the patents-in-suit may serve as a potential roadblock to AngioDynamics' sales of its endovenous laser treatment system. However, Diomed has not expressly threatened to sue AngioDynamics, and its statements regarding the patents-in-suit were made during a 2005 second quarter earnings conference call with investors and interested third parties. Moreover, during that conference call, Wylie refused to "comment on what we [Diomed] will potentially do or not do with this [recently allowed] patent." (D.I. 9, Ex. A at 35:32-36:35.) To conclude that Diomed's conduct provided AngioDynamics with a reasonable apprehension of suit would amount to a finding that "a reasonable apprehension of suit arises when a patentee does nothing more than exercise its lawful commercial prerogatives and, in so doing, puts a competitor in the position of having to choose between abandoning a particular business venture or bringing matters to a head by engaging in arguably infringing activity," which does not meet the objective test for determining declaratory justiciability. Cygnus Therapeutics Sys. v.

Slip Copy                                                                                    Page 7
Slip Copy, 2006 WL 2583107 (D.Del.)
**(Cite as: Slip Copy)**

*ALZA Corp.,* 92 F.3d 1153, 1160 (Fed .Cir.1996); *see Nokia Corp. v. Interditigal Commc'ns,* No. Civ. A. 05-16-JJF, 2005 WL 3525696, at *3 (D.Del. Dec. 21, 2005). Accordingly, the court will dismiss AngioDynamics' complaint.[FN3]

> FN3. AngioDynamics has filed a Motion to Amend (D.I.10) in order to correct the name of the defendant and state with more particularity its allegations with respect to unenforceability. "[A] court should deny leave to amend if the moving party is guilty of undue delay, bad faith, dilatory motive, prejudice, or his or her amended claims are futile." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). Because AngioDynamics' second amended complaint would not cure the defect in the court's jurisdiction, allowing it to amend would be futile. Thus, the court will deny AngioDynamics' motion to amend.

### *ORDER*

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendant's Motion to Dismiss (D.I.8) is GRANTED.

2. The First Amended Complaint (D.I.4) shall be dismissed without prejudice.

3. The plaintiff's Motion to Amend (D.I.10) is DENIED.

D.Del.,2006.
AngioDynamics, Inc. v. Diomed Holdings, Inc.
Slip Copy, 2006 WL 2583107 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 819704 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Diomed's Motion to Dismiss and Answering Brief in Opposition to Angiodynamics' Motion to Amend (Feb. 21, 2006) Original Image of this Document (PDF)
• 2006 WL 819703 (Trial Motion, Memorandum and Affidavit) Angiodynamics, Inc.'s Answering Brief in Opposition to Diomed Holdings, Inc.'s Motion to Dismiss and Angiodynamics, Inc.'s Brief in Support of Angiodynamics, Inc.'s Motion for Leave to Amend Angiodynamics, Inc.'s First Amended Complaint (Feb. 14, 2006) Original Image of this Document (PDF)
• 1:06cv00002 (Docket) (Jan. 3, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                    Page 1
Slip Copy, 2006 WL 3259000 (N.D.Cal.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Comcast Cable Communications Corp. v.
Finisar    Corp.N.D.Cal.,2006.Only    the
Westlaw citation is currently available.
United States District Court,N.D. California.
COMCAST CABLE COMMUNICATIONS
CORPORATION, Plaintiff,
v.
FINISAR CORPORATION, Defendant.
**No. C 06-04206 WHA.**

Nov. 9, 2006.

Daralyn J. Durie, Ajay Krishnan, David J.
Silbert, Keker & Van Nest LLP, San
Francisco, CA, for Plaintiff.
George Tacticos, Morgan & Finnegan, LLP,
San Francisco, CA, John Francis Sweeney,
Danielle Vincenti Tully, Gerard A. Haddad,
Morgan & Finnegan LLP, New York, NY,
for Defendant.

**ORDER DENYING DEFENDANT'S
MOTION TO DISMISS**
WILLIAM ALSUP, District Judge.

**INTRODUCTION**

**\*1** In this action for a declaration of patent
invalidity and noninfringement, defendant
Finisar Corporation moves to dismiss
plaintiff Comcast Cable Communications
Corporation's action on the ground that this
Court lacks subject-matter jurisdiction. This
order finds that plaintiff has a reasonable
apprehension of suit by defendant Finisar
and that it would be inappropriate to decline
jurisdiction. Accordingly, defendant's
motion is **Denied.**

**STATEMENT**

U.S. Patent No. 5,404,505 ("the    505
patent"), entitled "System for Scheduling
Transmission of Indexed and Requested
Database Tiers On Demand At Varying
Repetition Rates," concerns the transmittal
and broadcast of digital information to a
wide base of subscribers. The patent is
owned by defendant Finisar.

Plaintiff Comcast was initially approached
by defendant Finisar in February 2005. An
attorney representing Finisar, John T.
Gallagher, sent a letter to Comcast's general
counsel advising that Finisar was the owner
of the    505 patent, Finisar was prepared "to
take all steps necessary under U.S. patent
law to protect its proprietary rights," and
that Comcast should consider the patent
closely    (Exh.    1).    Comcast    replied
approximately one week later via a short
letter stating that it would review Finisar's
patent and would reply only once it had
done so. Four months later, Mr. Gallagher
sent another letter to Comcast alerting
Comcast that Finisar was "prepared to meet"
and "discuss the    505 patent and its relation
to your company's operational systems"
(Exh. 3). About seven weeks later, Comcast
replied to this second letter from Finisar.
Comcast's second reply was practically
identical to its first, stating that it was
reviewing the    505 patent and would be in
touch once it completed its review.

There were no subsequent communications
until June 2006. In June 2006, defendant
Finisar sent plaintiff Comcast a third letter.
This letter reiterated earlier offers to extend
a license to Comcast but it went a step

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

further. The June 2006 letter directed the reader to a recent jury verdict in a suit filed by Finisar "finding the 505 patent valid and infringed by DirecTV" (Exh. 5). The letter also advised that the jury awarded approximately seventy-nine million dollars in past damages in *Finisar Corp. v. DirecTV Group Inc.* Nine days later, on July 7, 2006, plaintiff Comcast filed this declaratory-judgment action.

In its complaint, plaintiff Comcast seeks a declaratory judgment of noninfringement and a declaratory judgment preventing defendant Finisar from claiming any construction of the 505 patent that would cover plaintiff's activities. Plaintiff additionally alleges that defendant Finisar's patent is invalid and seeks a declaratory judgment to that effect. Lastly, plaintiff Comcast seeks an injunction against defendant Finisar.

Defendant Finisar now moves to dismiss plaintiff Comcast's claim arguing that there is no federal subject-matter jurisdiction, allegedly because plaintiff Comcast has no reasonable apprehension of suit.

## ANALYSIS

### 1. There Is An Actual Controversy.

**\*2** In order to bring an action seeking declaratory judgment, an actual case or controversy must exist as the Declaratory Judgment Act requires. 28 U.S.C. 2201; *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 887 (Fed.Cir.1992) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239-41 (1937)). The Act's requirement of an actual controversy parallels the requirements of Article III of the Constitution. *EMC Corp. v.*

*Norand Corp.,* 89 F.3d 807, 810 (Fed.Cir.1996). The Federal Circuit has established a two-part inquiry to determine whether or not there is an actual case or controversy in a patent action:

Under that test, there must be both (1) an explicit threat or other action by the patentee which creates a *reasonable apprehension* on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) *present activity* by the declaratory judgment plaintiff *which could constitute infringement,* or concrete steps taken by the declaratory judgment plaintiff with the intent to conduct such activity.

*Teva Pharms. USA, Inc. v. Pfizer Inc.,* 395 F.3d 1324, 1330 (Fed.Cir.2005) (emphasis added). The test is an objective one, and plaintiff bears the burden to establish its reasonable apprehension of suit by a preponderance of the evidence. *Shell Oil,* 940 F.2d at 888. In order for an actual controversy to be present, both prongs must be satisfied. "The first prong looks to the patentholder's conduct, and the second prong looks to the potential infringer's conduct." *Sierra Applied Scis., Inc. v. Advanced Energy Indus.,* 363 F.3d 1361, 1373 (Fed.Cir.2004).

### A. Reasonable Apprehension of Suit.

The reasonable apprehension of suit inquiry is an objective one that asks whether the alleged infringer reasonably believed the patentee would sue for infringement. Reasonable apprehension of suit does not require any magic words. "[S]uch apprehension may be induced by subtler conduct if that conduct rises to a level sufficient to indicate an intent on the part of the patentee to enforce its patent." An offer of license alone or a proposal for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 3
Slip Copy, 2006 WL 3259000 (N.D.Cal.)
**(Cite as: Slip Copy)**

negotiations is insufficient to establish a reasonable apprehension of suit; the threat of enforcement is the core of the patentee's bargaining power. A reasonable apprehension of suit must necessarily involve more than proposed negotiations but does not require an express charge that patentee plans to sue for infringement of its patent. *EMC Corp.,* 89 F.3d at 811.[FN1]

> FN1. Like *EMC Corp.,* the third factor discussed in that decision is not applicable here as it is reserved for cases where "it was the declaratory judgment plaintiff, not the patentee-defendant, who first approached the opposing party." *EMC Corp.,* 89 F.3d at 812.

The crucial inquiry here turns on whether the conduct of defendant Finisar was the *subtler conduct* the Federal Circuit referred to in *EMC Corp.* When there is no express charge of infringement, the court must look to the "totality of the circumstances." *Shell Oil,* 970 F.2d at 888. Here, defendant Finisar was involved in litigation over this *very same* patent, and even directed plaintiff Comcast to look at the jury verdict in *Finisar Corp. v. DirecTV Group Inc.* It was not until defendant Finisar directed plaintiff Comcast to this verdict that plaintiff Comcast filed suit. In *Finisar Corp. v. DirecTV Group Inc.,* a jury had already found the 505 patent valid and infringed. The letter also pointed its reader to the staggering amount of damages in the verdict. This information was sufficient to place plaintiff in reasonable apprehension of suit. While Finisar should not be punished for what it did not say in its letters, it also should not be rewarded for carefully phrased letters that do not include the fatal words regarding patent infringement but imply the

same litigious message. Furthermore, as examined in *EMC Corp.,* Finisar is not a "quiescent patent owner." Finisar instigated these interactions with its letters, and has on more than one occasion pursued lawsuits to protect its patents. Rather, this is a situation for a declaratory-judgment action as unwanted litigation is not being forced upon an inactive patent owner. *EMC Corp.,* 89 F.3d at 812.

**\*3** Furthermore, defendant Finisar touted its enforcement strategy in a press release dated April 6, 2005 (Opp.Exh.A). Finisar's press release stated that "Finisar repeatedly contacted DirecTV about its infringement of the 505 patent throughout 2004 and early 2005, indicating its willingness to engage DirecTV in licensing discussions, but Finisar's requests to begin a dialog on the matter were not successful." Plaintiff Comcast saw the writing on the wall. Comcast was reasonably afraid that its failure would result in similar proceedings against it. In light of these circumstances, plaintiff Comcast has a reasonable apprehension that defendant Finisar will seek to enforce the 505 patent in an infringement suit.[FN2]

> FN2. Movant seeks to rely on *Fresenius USA, Inc. v. Transonic Systems, Inc.,* 207 F.Supp.2d 1009 (N.D.Cal.2001) in its argument that plaintiff did not have a reasonable apprehension of suit, and that the letters were simply invitations to negotiate. In addition to not being controlling, *Fresenius* involves different facts where there were ongoing negotiations and "[t]he single letter from Transonic was insufficient to create an actual controversy." *Id.* at 1011.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 4
Slip Copy, 2006 WL 3259000 (N.D.Cal.)
**(Cite as: Slip Copy)**

The parties dispute whether the pending Supreme Court case *Medimmune, Inc. v. Genetench, Inc.* will be dispositive of this motion. In this Court's judgment, a relaxation of the Federal Circuit test by the Supreme Court would only strengthen the holding herein. The suit is proper even under the Federal Circuit's current test.

### B. Present Infringement.

"All that the second prong requires ... is a showing that plaintiff's conduct evidence[s] a real interest in an activity that *may, potentially, be enjoined.*" *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 738 (Fed.Cir.1988). Activity inducing infringement is sufficient to satisfy this prong. *See Fina Research, S.A. v. Baroid Ltd.,* 141 F.3d 1479, 1485 (Fed.Cir.1998).

Here, plaintiff Comcast is involved in media communications. Defendant's patent involves the transmittal and broadcast of digital information. The second prong has been satisfied because plaintiff is involved in activity that could constitute infringement, especially in light of the allegedly broad construction of the 505 patent in the DirecTV jury verdict.

### 2. This Court Will Not Abstain.

Because this Court finds that there is an actual controversy, it must decide whether it is appropriate to decline jurisdiction here. In deciding whether to abstain from exercising jurisdiction, "[i]t is appropriate ... for a district court to examine whether hearing the declaratory judgment action would serve the objectives for which the Declaratory Judgment Act was created." *EMC Corp. v..*

*Norand Corp.,* 89 F.3d at 814. While declining jurisdiction is proper when extrajudicial dispute resolution can be achieved, the Act was created so that "competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests." *Id.* at 815 (citing *Arrowhead,* 846 F.2d at 735). "The purpose of the Act is to enable a person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side. It accommodates the practical situation wherein the interests of one side to the dispute may be served by delay in taking legal action." *Ibid.* (citing *BP Chems. v. Union Carbide Corp.,* 4 F.3d 975, 977 (Fed.Cir.1993)).

### CONCLUSION

**\*4** For the reasons cited above, defendant's motion to dismiss is **Denied.**

### IT IS SO ORDERED.

N.D.Cal.,2006.
Comcast Cable Communications Corp. v. Finisar Corp.
Slip Copy, 2006 WL 3259000 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 3852128 (Trial Pleading) Amended Complaint for Declaratory Judgment of Patent Invalidity and Noninfringement (Nov. 30, 2006)
• 2006 WL 3852246 (Verdict, Agreement

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5
Slip Copy, 2006 WL 3259000 (N.D.Cal.)
**(Cite as: Slip Copy)**

and Settlement) Stipulation for Filing of
Amended Complaint (Nov. 30, 2006)
• 2006 WL 3852127 (Trial Pleading)
Answer and Counterclaim of Defendant
Finisar Corporation (Nov. 22, 2006)
• 2006 WL 3619739 (Trial Motion,
Memorandum and Affidavit) Defendant
Finisar Corporation's Reply Memorandum
in Support of Its Motion to Dismiss for Lack
of Subject Matter Jurisdiction (Oct. 26,
2006)
• 2006 WL 3619738 (Trial Motion,
Memorandum and Affidavit) Comcast's
Opposition to Finisar's Motion to Dismiss
for Lack of Subject Matter Jurisdiction (Oct.
19, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                  Page 1
Not Reported in F.Supp.2d, 2001 WL 34076423 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

Moore U.S.A. Inc. v. Standard Register
Co.W.D.N.Y.,2001.Only the Westlaw
citation is currently available.

United States District Court,W.D. New
York.

MOORE U.S.A. INC., and Toppan Forms
Co., Ltd., Plaintiffs,

v.

THE STANDARD REGISTER
COMPANY, Defendant.
**No. 98-CV-485C(F).**

Aug. 28, 2001.

Nixon & Vanderhye P.C. (James D.
Berquist), Arlington, VA, -andCohen
Swados Wright Hanifin Bradford & Brett
(Laurence B. Oppenheimer), Buffalo, New
York, for Plaintiffs, of counsel.
Oblon, Spivak, McClelland, Maier &
Neustadt, P.C. (Charles L. Gholz),
Arlington, VA, -andGibson, McAskill &
Crosby (Brian P. Crosby), Buffalo, New
York, for Defendants, of counsel.

DECISION AND ORDER
CURTIN, J.

INTRODUCTION

**\*1** Presently before the court in this patent
infringement suit is a single aspect of
Motion 8 [FN1] or Item 9,[FN2] which is
plaintiff/counterclaim-defendant Moore
North America's ("Moore") [FN3] motion to
dismiss certain claims asserted by
defendant/counterclaimant The Standard
Register Co. ("SRC"). The court heard oral
argument on August 8, 2001.

FN1. By a prior order, the court
organized the many pending motions
in this case by assigning them
numbers other than the docket item
numbers that each motion bears. *See*
Item 297.

FN2. Motion 8 was docketed as Item
9 in 00-CV-840 ("the 2000 action").
The 2000 action was recently closed
and consolidated with 98-CV-485.
*See* Items 346 and 349. In an effort
to avoid confusion, the court will
refer to any documents that were
originally filed in the 2000 action by
their docket number and will also
explain that the document was
originally filed in the 2000 action. In
this way, the court can avoid the
confusion that could arise from
references to duplicate docket
numbers in the 1998 and 2000
actions.

FN3. In prior orders and opinions,
the court has referred to Moore
North America as "Moore NA" in
order to distinguish Moore North
America from Moore Corp., Ltd. of
Canada (also a party). Here, the court
opts to refer to Moore North
America simply as "Moore."

BACKGROUND

On June 7, 2001, the court largely denied
Moore's motion to dismiss SRC's complaint
without prejudice and with leave to renew
once the patent phase of the litigation was
completed. Item 49 in 00-CV-840. Moore's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 2
Not Reported in F.Supp.2d, 2001 WL 34076423 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

"motion to dismiss [was] not denied to the extent that it is directed at SRC's claim for declaratory judgment on" U.S. Patent No. 5,314,944 ("the '944 patent"). *Id.* at 3. The court now addresses this outstanding issue.

SRC seeks a declaratory judgment of non-infringement, invalidity and unenforceability of Moore's '944 patent. Moore argues that the "undisputed facts" demonstrate that there is no "case or controversy" involving the '944 patent and insists that this aspect of SRC's complaint must be dismissed as a result.

The '944 patent covers a pressure seal adhesive. In this way, the '944 patent broadly resembles U.S. Patent No. 4,918,128 ("the '128 patent"), which also discloses a pressure seal adhesive and is the main focus of Moore's 1998 action against SRC (98-CV-485).

DISCUSSION

I. Standard of Law

A declaratory judgment action may be brought only in order to resolve an "actual controversy" between "interested" parties. 28 U.S.C. § 2201. In order for there to be an actual controversy,
[t]here must be a "definite and concrete" dispute between adverse parties,.... The [existence of an actual controversy] ... is determined on the totality of the circumstances.....
As applied to declarations of patent rights and relationships, ... there has evolved a pragmatic two-part test for determining declaratory justiciability. There must be both (1) an explicit threat *or* other action by the patentee, which creates a reasonable

apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*BP Chemicals, Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 977-78 (Fed.Cir.1993).

II. Reasonable Apprehension & the Totality of the Circumstances

In the present case, it is clear that Moore issued no explicit threat against SRC in regard to the '944 patent. Therefore, the court must assess the totality of the circumstances in order to determine whether SRC's apprehension is objectively reasonable. *See Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 955 (Fed.Cir.1987).

A. *Moore's History of Litigation*

Moore has sued SRC three different times in the last five years. In December 1997, Moore sought to enforce the '128 patent against SRC in the Eastern District of Virginia. Moore's claim under the '128 patent, however, was dismissed in March 1998 when Judge Bryant found that Moore was merely a bare licensee of that patent. Then in August 1998, Moore commenced this action and again attempted to enforce the '128 patent against SRC, as well as U.S. Patent No. 5,201,464 ("the '464 patent"). Finally, in September 1999, Moore commenced a third action against SRC in which it claimed infringement of U.S. Patent No. 5,785,242 ("the '242 patent"). Unlike the '128 and '944 patents, the '242 patent claims a particular type of C-Fold mailer

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                         Page 3
Not Reported in F.Supp.2d, 2001 WL 34076423 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

that Moore uses in connection with its patented pressure seal adhesives. Moore withdrew this third action on the '242 patent within a matter of months of its commencement.

**\*2** Over the last five to seven years, Moore has also sought to enforce the '128 patent against most of its other competitors in the pressure seal industry, including: Poser Business Forms, King Business Forms, Goodwin Business Forms, Central States Business Forms, and Reynolds & Reynolds.

The court finds that Moore's history of enforcement litigation does not provide grounds for SRC's claim to an objectively reasonable apprehension relative to the '944 patent. Moore has twice attempted to enforce the '128 patent against SRC. Like the '944 patent, the '128 patent covers a pressure seal adhesive. In addition, it is true that Moore has aggressively enforced the '128 patent in several other lawsuits throughout the United States. Yet, what is lacking is some affirmative act on Moore's part regarding enforcement of the '944 patent. Moore has never enforced the '944 patent against SRC or any other competitor. Moore never raised the issue of the '944 patent with SRC in the context of this litigation and the prior '128 patent litigation in Virginia.

For these reasons, SRC's declaratory judgment claim fails in much the same way that the plaintiffs' claims failed in cases like *Progressive Technology in Lighting v. Lumatech, Inc.,* 45 U.S.P.Q .2d 1928 (W.D.Mich.1998) ( *"Prolight"* ); and *Premo Pharmaceutical Labs., Inc. v. Pfizer Pharmaceutical Labs., Inc.,* 465 F.Supp. 1281 (S.D.N.Y.1979).

In *Premo,* the court flatly rejected a claim of reasonable apprehension where the only evidence supporting Premo's claim of reasonable apprehension was the fact that Pfizer had commenced 38 lawsuits under five of its 620 patents over the previous 17 years. When faced with this active patent enforcer in Pfizer, the court found that an extensive history of patent enforcement does not create reasonable apprehension. *Id.* at 1283-84.

Similarly, in *Prolight,* the court faced a situation where there had been prior litigation between the parties involving a broadly related technology to the patent-in-suit in the declaratory judgment action. Much like the case here, then, the patent owner in *Prolight* (Lumatech) had recently sought to enforce a patent against the declaratory judgment plaintiff (Prolight), which involved a technology similar to the patent involved in the declaratory judgment patent (*i.e.,* fluorescent lamps and lighting systems). Notwithstanding a recent enforcement action involving a closely related technology, the court found no reasonable apprehension. Rather, the court found that "such prior unrelated litigation is not sufficient to create reasonable apprehension of litigation...." *Id.* at 1932.

Finally, the court takes note of *Ryko Mnfct. Co. v. Delta Services and Equipment Corp.,* 28 U.S.P.Q.2d 1558 (E.D.La.1993). Much like this case, *Ryko* involved a significant history of patent litigation between the two parties. Despite this history, the court found no reasonable apprehension. Furthermore, Moore's counterpart in that case-Ryko-had gone so far as to make specific references to the "declaratory judgment patent"-the 298,973-during discovery in an unrelated infringement suit. Notwithstanding such conduct, the court discerned no cause for reasonable apprehension as to the 298,973

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                            Page 4
Not Reported in F.Supp.2d, 2001 WL 34076423 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

patent.

**\*3** In this case, Moore has done far less than Ryko, since there is no proof that Moore has even referred to the '944 patent during its present enforcement of the '128 patent. Moreover, the *Ryko* court acknowledged that the product at issue in Ryko's infringement action against Delta *did* resemble some of the claims in the 298,973 patent. *Id.* at 1560. Yet, this fact led the *Ryko* court to draw an inference *against* reasonable apprehension as to the 298,973 patent.

Despite [Ryko's] knowledge of Delta's product, Ryko has never asserted verbally or in writing that it believes that Delta's design is an infringement of patent no. 298,973. Thus, by not bringing an infringement action if one indeed exists, Ryko would be risking the loss of its exclusive right to produce the product designated as patent no. 298,973. The Court finds this to [be] an unlikely scenario.

*Ryko,* 28 U.S.P.Q.2d at 1560.[FN4]

> FN4. The court notes in passing that the particular facts of *CAE Screenplates, Inc. v. Beloit Corp.,* 957 F.Supp. 784 (E.D.Va.1997), and *Indium, Crown Drug v. Revlon,* 703 F.2d 240 (7th Cir.1983), render them of marginal value to this court's analysis.

The cases cited by SRC do not persuade the court that the declaratory judgment claim is justiciable. *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 880-81 (Fed.Cir.1983), offers no real support to SRC. In that case, defendant Schwartz did far more to create apprehension than Moore has done here. Schwartz had made a demand for further royalties pursuant to the '637 patent-the same patent that Bard put at issue in the declaratory judgment action. Schwartz then commenced a State court action for those same royalties. In addition, some of Schwartz's claims in the State action amounted to allegations that Bard had induced its subcontractor, Delmed, to infringe the '637 patent and had also committed contributory infringement of the patent. In this case, Moore has done far less than Schwartz, both in terms of quantity and quality.

SRC reads *Fina Oil and Chemical Co. v. Ewen,* 123 F.3d 1466 (Fed Cir.1997), for the proposition that reasonable apprehension can be established where there is a history of litigation between the same parties "on the same or similar technologies." Item 24, p. 24. A careful reading of *Fina* demonstrates the error of SRC's argument. In the Texas State court action, the declaratory judgment defendant Ewen made a cross-claim against plaintiff Fina for a constructive trust on proceeds derived from the '851 patent-the same patent at issue in the declaratory judgment action. In this way, the holding in *Fina* was tied to the fact that Ewen had put the '851 patent at issue in State court and then gave Fina further cause for fear when he testified that there were defects in several of Fina's patents, including the '851 patent.

Here, there is no evidence that Moore has referred to the '944 patent in the context of this litigation or any other, let alone evidence that Moore has indicated a belief that SRC has infringed the '944 patent.

Finally, *Goodyear Tire & Rubber Co. v. Releasomers,* 824 F.2d 953 (Fed.Cir.1987), is limited by its facts. Unlike that case, there is no prior or parallel litigation between Moore and SRC relating generally to the pressure sensitive adhesive technology.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

While Moore has commenced two actions against SRC in an effort to enforce the '128 patent specifically, Moore and SRC have never been involved in litigation that dealt broadly with the technology disclosed by both the '128 and '944 patents.

### B. *Refusal to Grant a Covenant not to Sue*

**\*4** "[A] patentee's refusal to give assurances that it will not enforce its patent is relevant to the determination [of whether reasonable apprehension exists, but] ... not dispositive." *BP Chemicals,* 4 F.3d at 980. In this case, it is clear that Moore refused to grant such a covenant, but only after SRC had first requested it. Moore expressed "surprise" at SRC's request and pointed out that it had never enforced the '944 patent and that the '944 patent had never "been the subject of discussion between the parties" prior to Moore's receipt of SRC's request. Item 9, Exh. B.

Moore's refusal to provide SRC with a covenant not to sue does not render SRC's apprehension reasonable. *See generally Crown Drug v. Revlon,* 703 F.2d 240, 244 (7th Cir.1983) ("[C]ourts have expressed enhanced skepticism toward such claims where, as here, the plaintiff initiated the discussion at issue.... 'We have found no case in which plaintiff demanded patent clearance from a competitor and was able to rely upon the refusal to grant it as a basis for its reasonable apprehension.' ") (quoting *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1212 (7th Cir.1980)). Here, it was SRC that first raised the subject of the '944 patent, and it was SRC that first raised the possibility of Moore's enforcing the '944 patent against SRC. In doing so, SRC also requested a covenant not to sue. Thus, it appears that SRC was attempting to manufacture justiciability for its declaratory judgment claim on the '944 patent. SRC demanded-essentially out of the blue-that Moore grant it a covenant not to sue on the '944 patent, and SRC now vainly claims that Moore's refusal to do so is evidence of Moore's intent to enforce the '944 patent against it.

### C. *Similarities Between the '128 and the '944 Patents*

According to SRC, the '128 and '944 patent cover essentially the same pressure seal adhesive. SRC summarily claims that the '128 and '944 patents are closely tied to one another, but provides no explanation or elaboration on this point. *See* Item 24 in 00-CV-840, p. 25 and Exh. D. Based on this purported link between the '128 and '944 patents, SRC argues that a party's history of enforcing one patent, which covers a certain technology (*i.e.,* the '128 patent), creates grounds for reasonable apprehension of that same party's future enforcement of another patent, which covers the same technology (*i.e.,* the '944 patent).

A review of Moore's promotional literature does not substantiate SRC's position. Moore's promotional literature explains its pressure seal adhesive technology in the following terms: "One of the elements that makes Moore's pressure seal product unique is the chemical composition of its cohesive.... Actually, *several different cohesives* have been developed for use in different applications. *All of them* have undergone extensive testing to ensure that *they* perform properly...." Item 24, Exh. D, p. 9 (emphasis added). Thus, the promotional literature does not claim that Moore uses a single pressure seal adhesive, nor does it imply that the '128 patent and the

Not Reported in F.Supp.2d                                        Page 6
Not Reported in F.Supp.2d, 2001 WL 34076423 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

'944 patent cover a substantially identical pressure seal adhesive.[FN5]

> FN5. A review of the abstracts for the '128 and '944 patents further suggests that different adhesives are claimed in each respective patent. *See* Item 24, Exh. D, pp. 10-12. On their face, the two patents claim different pressure seal adhesives.

**\*5** The promotional literature does not suggest that Moore would likely follow an unsuccessful enforcement of the '128 patent against SRC with a similar attempt at enforcing the '944 patent. *See supra* (discussion of *Ryko,* 28 U.S.P.Q.2d at 1560).

## CONCLUSION

While SRC's apprehension regarding enforcement of the '944 patent may be real, it is not supported by fact and cannot be deemed reasonable. In light of the court's finding on this point, it is unnecessary to resolve the issue of whether SRC is engaged in "activity which could constitute infringement" or has shown "the intent to conduct such activity." *BP Chemicals,* 4 F.3d at 978. For the reasons discussed herein, Moore's motion to dismiss is granted in part (Item 9 from 00-CV-840). More specifically, Moore's motion to dismiss is granted as to SRC's declaratory judgment claim on the '944 patent. Moore's motion to dismiss shall remain pending as to the unresolved antitrust issues that were stayed by prior order.

So ordered.

W.D.N.Y.,2001.
Moore U.S.A. Inc. v. Standard Register Co.

Not Reported in F.Supp.2d, 2001 WL 34076423 (W.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:98cv00485 (Docket) (Aug. 03, 1998)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                        Page 1
Not Reported in F.Supp.2d, 2005 WL 2850137 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Mylan Pharmaceuticals Inc. v. Merck & Co., Inc.M.D.Pa.,2005.Only the Westlaw citation is currently available.

United States District Court,M.D. Pennsylvania.
MYLAN PHARMACEUTICALS INC., Plaintiff,
v.
MERCK & CO., INC., Defendant.
**No. Civ. 1:05-CV-1416.**

Oct. 28, 2005.

Amy D. Brody, Christine J. Siwik, William A. Rakoczy, Rakoczy Molino Mazzochi Siwik LLP, Chicago, IL, Charles W. Rubendall, II, Keefer, Wood, Allen and Rahal, Harrisburg, PA, for Plaintiff.
Edward W. Murray, Mary J. Morry, Merck & Co., Inc., Rahway, NJ, Robert L. Baechtold, Stevan J. Bosses, Fitzpatrick, Cella, Harper & Scinto, New York, NY, Brian P. Downey, Justin G. Weber, Pepper Hamilton LLP, Harrisburg, PA, for Defendant.

Jury Trial Demanded
RAMBO, J.

*MEMORANDUM*

**\*1** Before the court are Defendant Merck & Co, Inc.'s ("Merck") Motion to Dismiss (Doc. 19) and Contingent Motion to Transfer Under 28 U.S.C. § 1404(a) (Doc. 22). The parties have briefed the issues and the matters are ripe for disposition. For the reasons that follow, the court will grant Defendant's motion to dismiss because the

court lacks subject matter jurisdiction. Accordingly, the court will deny Defendant's contingent motion to transfer as moot.

*I. Background*

A. *The Hatch-Waxman and Medicare Amendments*

The Federal Food, Drug, and Cosmetic Act of 1938 ("FDDCA"), 21 U.S.C. §§ 1 et seq., governs the procedures for the approval of pioneer and generic drugs. The FFDCA's statutory scheme for the approval of generic drugs was first modified by the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman Amendments"), Pub.L. No. 98-417, 98 Stat. 1585 (1984). In 2003, Congress further modified the generic drug approval scheme when it enacted the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("Medicare Amendments"), Pub.L. No. 108-173, 117 Stat.2066 (2003) [FN1] to prevent abuses associated with the patent code's declaratory judgment provisions.

> FN1. The Hatch-Waxman Act is codified at 35 U.S.C. § 271. The relevant portions of the FFDCA, as modified by the Hatch-Waxman and Medicare Amendments, are codified at 21 U.S.C. § 355.

Under the current statutory scheme, pioneer drug manufacturers must file a New Drug Application ("NDA") with the Food and Drug Administration ("FDA") to obtain

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

approval to manufacture and market a drug. 21 U.S.C. § § 355(a)-(b)(1). An NDA contains comprehensive information demonstrating the drug's safety and efficacy. *See id.* NDA-holders are also required to notify the FDA of all patents that cover the new drug. 21 U.S.C. § § 355(b)(1), (c)(2). The FDA then lists the patents in what is commonly referred to as the "Orange Book." [FN2]

> FN2. The official name of the publication is "Approved Drug Products with Therapeutic Equivalence Evaluations."

A manufacturer of a generic version of an approved drug may then submit an Abbreviated New Drug Application ("ANDA") to the FDA, in which it may rely on the NDA's safety and efficacy studies. 21 U.S.C. § § 355(j)(1), (2)(A)(I). An ANDA must include information establishing that the generic drug is the bioequivalent of the approved pioneer drug. 21 U.S.C. § 355(j)(2)(A). An ANDA must also contain one of four certifications regarding any patents that are listed in the Orange Book for the pioneer drug:
(I) that such patent information has not been filed, (II) that such patent has expired, (III) of the date on which such patent will expire, or (IV) that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted.

21 U.S.C. § § 355(j)(2)(A)(vii)(I-IV). "These are commonly referred to as paragraph I, II, III, and IV certifications." *Teva Pharms. USA, Inc. v. Pfizer Inc.,* 395 F.3d 1324, 1328 (Fed.Cir.2005).

When an ANDA filer wants to sell its generic drug product before a listed patent has expired, it must file a paragraph IV certification. When filing a paragraph IV certification, the ANDA filer must also notify the owner of any relevant patents and NDA holder and provide them with a "detailed statement of the factual and legal basis of the opinion of the applicant that the patent is invalid or will not be infringed." 21 U.S.C. § § 355(j)(2)(B)(i), (iv).

**\*2** The filing of the ANDA triggers a forty-five-day period during which the ANDA applicant is barred from filing a declaratory judgment action. 21 U.S.C. § 355(j)(5)(B)(iii). If the patent holder files an infringement action within that forty-five-day period, the FDA may not approve the ANDA for thirty months, unless the suit is resolved or the patent expires earlier. *Id.* If the patent holder does not file an infringement suit during the forty-five-day period, the FDA may approve the ANDA. *Id.*

As an incentive to encourage early ANDA applicants, the Hatch-Waxman amendments provide for a 180-day marketing exclusivity period for the first ANDA applicant to make a paragraph IV certification. 21 U.S.C. § 355(j)(5)(B)(iv). The Medicare Amendments, which apply to the instant case, made various changes with respect to the exclusivity period provisions, including "forfeiture provisions" that identify the circumstances in which the 180-day exclusivity period can be forfeited.[FN3] 21 U.S.C. § 355(j)(5)(D).

> FN3. The Medicare Amendments were enacted on December 8, 2003; the forfeiture provisions are applicable to ANDAs "filed after December 8, 2003, for which no

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                           Page 3
Not Reported in F.Supp.2d, 2005 WL 2850137 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

paragraph IV certification was made before December 8, 2003." *Teva,* 395 F.3d at 1329; Medicare Prescription Drug, Improvement and Modernization Act of 2003, § 1102(b). Mylan Pharmaceuticals, Inc. notified Merck about its ANDA and paragraph IV certification by letter dated April 26, 2005.

The exclusivity period ensures that the only generic drug on the market during that time is that of the first ANDA filer because the FDA may not approve a subsequent ANDA for the same drug during the exclusivity period. 21 U.S.C. § 355(j)(5)(B)(iv). The exclusivity period is triggered by the first commercial marketing of the drug (by either the pioneer drug owner or the first ANDA filer.) *Id.* However, it can also be triggered earlier, on the date on which a court enters judgment that the patent is invalid or not infringed, 21 U.S.C. § 355(j)(5)(B)(iii). Thus, an action involving a subsequent ANDA filer can result in a judgment that triggers the exclusivity period. *See id.*

The Medicare Amendments also added civil action provisions which state that if neither the patent-holder or NDA-holder brings an infringement action during the forty-five day period following receipt of the paragraph IV certification, the ANDA applicant may "bring a civil action ... for a declaratory judgment that the patent is invalid or will not be infringed by the drug for which the applicant seeks approval," in accordance with 28 U.S.C. § 2201 (the Declaratory Judgment Act). 21 U.S.C. § 355(j)(5)(C)(i).

## B. *Factual Background*

Merck developed a formulation of finasteride, which it markets under the brand

name PROSCAR® ,[FN4] a drug used to treat symptomatic benign prostatic hyperplasia (enlarged prostate, known as "BPH"). Merck holds NDA No. 20-180, which the FDA approved, allowing Merck to market and sell the PROSCAR® finasteride formulation. Merck also holds several patents that relate to its finasteride product, including United States Patent Nos.: 1) 4,760,071 ("the '071 patent"), issued on July 26, 1988, which covers the compound itself; 2) 5,886,184 ("the '184 patent"), issued on May 23, 1999, which covers a particular crystalline form of finasteride; 3) 6,046,183 ("the '183 patent"), issued on April 4, 2000, which covers a method of treatment for BPH using finasteride in combination with another specific drug; and 4) 5,942,519 ("the '519 patent"), issued on August 25, 1999, which covers using finasteride specifically for patients who are suffering from precipitated acute urinary retention ("PAUR"). All four patents are listed in the FDA's Orange Book for PROSCAR® .

> FN4. Mylan also markets finasteride under the brand name PROPECIA® .

**\*3** On April 30, 2002, and July 2, 2003, Ivax Pharmaceuticals Inc., ("Ivax") submitted ANDAs seeking to market generic forms of Merck's PROSCAR® finasteride product. Ivax also notified Merck regarding its paragraph IV certifications for the '184 and '183 patents. Merck did not sue Ivax during the subsequent forty-five-day period and has not sued Ivax to date. Ivax was the first ANDA filer and is thus entitled to the benefit of the 180-day exclusivity period.

On April 26, 2005, Mylan notified Merck regarding Mylan's ANDA for the same product, along with paragraph IV

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 2850137 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

certifications for the '184 and '183 patents. Mylan also submitted a section viii statement, pursuant to 21 U.S.C. § 355(j)(2)(A)(viii), stating that the '519 patent claims a method of using finasteride for which Mylan is not seeking approval. Merck did not sue Mylan during the subsequent forty-five-day period and has not sued Merck to date. The only communication that Mylan has received from Merck regarding its generic finasteride product is a letter dated June 9, 2005, indicating that Merck did not intend to sue within the forty-five-day period. Merck has declined to covenant not to sue Mylan for infringement of the patents.

To date, no company has filed a paragraph IV certification for the '071 patent, which expires on June 19, 2006. Both Ivax and Mylan have filed paragraph III certifications that they will wait until after the '071 expiration date to market their generic finasteride products. Merck has indicated that because finasteride is not covered *per se* by the '184, '183, or '519 patents, it is possible for a generic competitor to make and sell a generic finasteride product without infringing any of those patents.

### C. *Procedural History*

Mylan Pharmaceuticals, Inc. ("Mylan") filed a Complaint on July 14, 2005, seeking a declaratory judgment that its generic finasteride drug product does not and will not infringe the '184, '183, and '519 patents. Merck filed a Motion to Dismiss (Doc. 19) on August 29, 2005, for lack of subject matter jurisdiction, claiming that no case or controversy exists. Because the court finds no case or controversy, the court will grant Merck's Motion to Dismiss and dismiss the Complaint for lack of subject matter

jurisdiction.[FN5]

> FN5. Merck also filed a Contingent Motion to Transfer Under 28 U.S.C. § 1404(a). (Doc. 22.) The court will deny that motion as moot.

### II. *Legal Standard*

" 'A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." ' *Vieth v. Pennsylvania,* 188 F.Supp.2d 532, 537 (M.D.Pa.2002) (quoting *Ballenger v. Applied Digital Solutions, Inc.,* 189 F.Supp.2d 196, 199 (D.Del.2002)). The motion should be granted where the asserted claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Coxson v. Pennsylvania,* 935 F.Supp. 624, 626 (W.D.Pa.1996) (citing *Growth Horizons v. Delaware County,* 983 F.2d 1277, 1280-81 (3d Cir.1993)).

**\*4** A motion to dismiss under Rule 12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. *See Carpet Group Int'l v. Oriental Rug Imps. Ass'n,* 227 F.3d 62, 69 (3d Cir.2000). This case presents a facial challenge because Defendant does not dispute, at this juncture, the jurisdictional facts alleged in the Complaint. *See* 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.30[4] (3d ed.1999) (explaining the difference between a facial and factual challenge to subject matter jurisdiction pursuant to Rule 12(b)(1)). Therefore, the court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100

Not Reported in F.Supp.2d                                                Page 5
Not Reported in F.Supp.2d, 2005 WL 2850137 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

(1990); *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000).

### III. *Discussion*

#### A. *The Declaratory Judgment Act*

The Declaratory Judgment Act provides in relevant part that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act's actual controversy requirement parallels the federal jurisdictional requirement found in Article III of the Constitution. *Teva,* 395 F.3d at 1331.

Essentially, the court must determine " 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." ' *Id.* (quoting *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 810 (Fed.Cir.1996)). If no actual controversy exists, then the court lacks jurisdiction to hear the case. *Id.* at 1332. However, even when the court determines that there is a controversy, it may exercise its discretion to decline jurisdiction. *Id.*

The inquiry regarding whether an actual controversy exists in a suit seeking a declaration of patent non-infringement or invalidity is two-fold. *Id.*
There must be both (1) an explicit threat or other action by the patentee [that] creates a reasonable apprehension on the part of the

declaratory judgment plaintiff that it will face an infringement suit, and (2) present activity by the declaratory judgment plaintiff [that] could constitute infringement, or concrete steps taken with the intent to conduct such activity.

*Id.* In addition, with respect to the reasonable apprehension prong, " '[w]hen the defendant's conduct, including its statements falls short of an express charge, one must consider the totality of the circumstances in determining whether that conduct meets the first prong of the test." ' *Id.* (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988).

Mylan and Merck agree that Mylan's submission of the paragraph IV certification satisfies the second prong of the test. Accordingly, the issue before the court is whether any of Merck's conduct established a reasonable apprehension that Merck would sue Mylan for infringement.

#### B. *Analysis*

**\*5** Mylan acknowledges that Merck has not explicitly stated that it intends to sue Mylan for infringement of its finasteride patents (Def.'s Opp'n to Pl.'s Mot. to Dismiss at 12.) ("Merck has said nothing to Mylan or this Court about its intentions *after* the expiration of this 45-day period.") Accordingly, the court will consider whether Merck's conduct, under the totality of circumstances, establishes a reasonable apprehension that Merck will sue Mylan for infringement of the patents. *Teva,* 395 F.3d at 1332.

Mylan argues that the following Merck acts establish grounds for its reasonable

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

apprehension of an infringement suit: 1) Merck's listing of the finasteride patents in the Orange Book; 2) Merck's prior history of defending its patents through litigation; 3) Merck's public statements that it will defend its finasteride patents; and 4) Merck's refusal to covenant not to sue Mylan for infringement. Mylan also argues that the Medicare Amendments civil suit provision (21 U.S.C. § 355(j)(5)(C)) provides a means to assert subject matter jurisdiction subject only to Article III requirements, which it believes to be different than the requirements of the two-prong test. Upon consideration of all of the circumstances, and in accordance with Federal Circuit precedent,[FN6] the court finds that Mylan's arguments fail to establish a reasonable apprehension of suit.

> FN6. Patent law appeals are heard by the Court of Appeals for the Federal Circuit; thus the law of the Federal Circuit applies. *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 888 n. 4 (Fed.Cir.1992).

### 1. Orange Book Listing

Mylan argues that Merck's listing of the patents in the Orange Book is sufficient on its own to establish a reasonable apprehension of suit because it represents Merck's position that it could reasonably assert an infringement suit with respect to its patents. *See* 21 U.S.C. § 355(b)(1) (providing that NDA applicants must file notice of any patents "with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug"-the FDA then lists these patents in the Orange Book). However, without more, Merck's

compliance with the statutory listing requirement "should not be construed as a blanket threat to potential infringers" by patent owners. *Teva,* 395 F.3d at 1333. The Orange Book listing is insufficient to satisfy the objective intent to sue standard required to establish an actual controversy between a patentee and "any ANDA filer who submits a paragraph IV certification with respect to the patent." *Id.* Thus, Mylan's argument that Merck's Orange Book listing alone establishes a reasonable apprehension of suit fails.

### 2. History of Litigation

Mylan argues that Merck's history of asserting its patents, including its finasteride patents, as well as other patents, through litigation involving other companies establishes a reasonable apprehension of suit here. Mylan relies on Merck's litigation against Dr. Reddy's specifically and Merck's litigation history generally. As a threshold matter, Merck's infringement litigation history is relevant but not dispositive. *Id.* The determination of whether there is an actual controversy between the parties turns on "the Article III mandate that the injury in fact be 'concrete,' and 'actual or imminent, not conjectural or hypothetical.' ' *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)).

**\*6** First, the court notes the similarities between Mylan's position here and Teva's in *Teva,* where the Federal Circuit court held that Teva failed to demonstrate a reasonable apprehension of suit. *Id.* at 1334. The similarities include Mylan's "virtual conce[ssion] that [Merck] will not bring immediate suit for infringement of the [finasteride patents]," [FN7] and the fact that

Not Reported in F.Supp.2d                                                                 Page 7
Not Reported in F.Supp.2d, 2005 WL 2850137 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

"[Merck] need not sue [Mylan] immediately" because the FDA cannot approve Mylan's ANDA for generic finasteride before Ivax's 180-day exclusivity period expires. *See id.*

> FN7. Mylan points to Merck's suit against Dr. Reddy's two years after the filing of Dr. Reddy's ANDA for generic finasteride/PROPECIA® and speaks in terms of Merck's possible "future intentions."

Moreover, the nature of Merck's litigation against Dr. Reddy's regarding two of its finasteride patents and against other companies regarding other patents is insufficient to establish that, under the instant circumstances, Mylan has a reasonable apprehension of suit. Merck's infringement suit against Dr. Reddy's involving the finasteride patents, although relevant, does not on its own convey a reasonable apprehension of suit to Mylan. Although the *Arrowhead* court determined that reasonable apprehension existed where a patentee had previously filed suit involving the same patent against another company, it did so where there were additional factors that, taken together, satisfied the totality of circumstances test. 846 F.2d at 737. An infringement suit against another filer, even to protect the same patent, does not conclusively establish a reasonable apprehension of suit. *See Dr. Reddy's Labs., Ltd. v. Pfizer, Inc.,* No. Civ. A. 03-CV-726, 2003 WL 21638254, at *6 (D.N.J. Jul.8, 2003) (Pfizer's suit against first ANDA filer and involving same patent did not establish reasonable apprehension of suit for subsequent ANDA filer).

Mylan points to nothing more than the bare fact that Merck filed suit against Dr. Reddy's

for finasteride patents for a different brand name product (PROPECIA® ). It suggests no other similarities between the Dr. Reddy's circumstances and its own and, in fact, fails to identify specifically which finasteride patents are at issue in that action (Mylan identifies them only as "other Merck-owned finasteride patents). In addition, Merck has not sued Ivax, the first filer here, or any other filer regarding the finasteride patents for PROSCAR® . Accordingly, the court finds that Merck's conduct with respect to Dr. Reddy's fails to establish a reasonable apprehension of suit for Mylan.

Merck's history of enforcing other patents against other companies, although relevant, also fails to establish a reasonable apprehension of suit for Mylan. A patentee's history of enforcing patents generally does not in and of itself provide any indication regarding the patentee's intentions regarding other patents. *See Mutual Pharm. Co. v. Pfizer Inc.,* 307 F.Supp.2d 88, 93-94 (D.D.C.2004); *Dr. Reddy's Labs.,* 2003 WL 21638254, at *7. Moreover, [i]n cases where courts have found prior litigation sufficiently threatening, either (1) the defendant referenced that litigation in some communication to the plaintiff, or (2) there was ongoing litigation between the parties over a series of closely related patents involving the same technology." *Apotex, Inc. v. Pfizer Inc.,* 385 F.Supp.2d 187, 194 (S.D.N.Y.2005) (internal citations omitted). No such communication or ongoing litigation between the parties involving the same technology exist here. Accordingly, Merck's prior history of litigation regarding its other patents fails to establish a reasonable apprehension of suit for Mylan.

### 3. *Public Statements*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 8
Not Reported in F.Supp.2d, 2005 WL 2850137 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*7** Mylan also bases its reasonable apprehension argument on statements Merck published in its annual and quarterly reports. The statement that "[Merck] intends to vigorously defend its patents, which it believes are valid, against infringement by generic companies attempting to market products prior to the expiration dates of such patents," [FN8] on its own, fails to establish a reasonable apprehension of suit for Mylan. "[A] patent holder's statement that it intends to enforce its patent does not [necessarily] create a reasonable apprehension of suit." *Torpharm, Inc. v. Pfizer Inc.,* No. Civ. 03-990-SLR, 2004 WL 1465756, at \*41 (D.Del. June 28, 2004), *vacated as moot,* 125 Fed. Appx. 987 (Fed.Cir.2005) (determined to be moot when Pfizer entered into covenant not to sue Torpharm for infringement) (citing *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,* 57 F.3d 1051, 1054 (Fed.Cir.1995).

       FN8. The relevant language in its entirety reads "Generic pharmaceutical manufacturers have submitted ANDAs to the FDA seeking to market in the United States a generic form of *Fosomax, Prilosec* and *Propecia* prior to the expiration of the Company's (and AstraZeneca's in the case of *Prilosec* ) patents concerning these products. The generic companies' ANDAs generally include allegations of non-infringement, invalidity and unenforceability of the patents. Generic manufacturers have received FDA approval to market a generic form of *Prilosec.* The Company has filed patent infringement suits in federal court against companies filing ANDAs for generic

alendronate and finasteride and AstraZeneca and the Company have filed suits in federal court against companies filing ANDAs for generic omeprazole. Similar patent challenges exist in certain foreign jurisdictions. The Company intends to vigorously defend its patents, which it believes are valid, against infringement by generic companies attempting to market products prior to the expiration dates of such patents."

Merck's statement is "of a general nature, directed to [an] overall strategy of enforcing [Merck's] patent rights against generic competition" and is "not specifically directed against [Mylan], nor is there any evidence suggesting that it was made with [Mylan] in mind." *Id.* (declining to find that a statement that Pfizer would "continue aggressively to defend challenges to [its] intellectual property" in a press release regarding an infringement suit against the first ANDA filer for the same patent implicated by Torpharm's ANDA). Moreover, courts have found patentee communications to be threatening in contexts where they 1) specifically link the prospect of litigation to questions concerning an ANDA filer's ability to make a generic drug properly without the patents or 2) otherwise link a policy of enforcement or likelihood of litigation to a specific generic company in letters or other communications, thus implicitly conveying a threat of litigation. *See, e.g., Dr. Reddy's Labs., Ltd. v. aaiPharma Inc.,* No. 01 Civ. 10102(LAP), 2002 WL 31059289, at \*3-4 (S.D.N.Y. Sept.13, 2002) (patentee stated in two *Wall Street Journal* articles that it would be "unlikely" or "difficult for" generic companies to make Prilosec properly without using patents and that if

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 9
Not Reported in F.Supp.2d, 2005 WL 2850137 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

generic companies "refused to pay" patentee for licenses, a "threat of a lawsuit" existed); *DuPont Merck Pharm. Co. v. Bristol-Myers Squibb Co.,* 62 F.3d 1397, 1401 (Fed.Cir.1995) ("Bristol-Myers' stated policy, *together with letters* sent by Bristol-Myers to DuPont Merck/Endo and Mylan relating to the '776 patent, create a reasonable apprehension on the part of DuPont Merck/Endo and Mylan.") (emphasis added); *Kos Pharms, Inc. v. Barr Labs., Inc.,* 242 F.Supp.2d 311, 316 (S.D.N.Y.2003) (Kos' statement that it would "aggressively enforce" its patents was made in a press release discussing the underlying litigation between the parties).

No such communications have occurred between Merck and Mylan. The only specific communications referenced here are Merck's June 9, 2005 letter stating that it would not sue Mylan for infringement within the forty-five-day period and its October 5, 2005 letter declining Mylan's proposed covenant and stipulation of non-infringement. The June 9 letter addressing Merck's intentions for the forty-five-day period makes no other representations about Merck's intentions and contains no reference to or statement of a policy of patent enforcement on the part of Merck.

**\*8** The October 5 letter declining to enter into a covenant or stipulations similarly contains no representations about Merck's intentions regarding a law suit. The letter simply conveys Merck's beliefs that it is not obligated to enter into a covenant and that the instant action is inappropriate. Thus, Mylan fails to identify any communications from Merck that would recast its stated general enforcement strategy in a way that would establish a reasonable apprehension of suit for Mylan.

*4. Refusal to Covenant*

Mylan also argues that Merck's refusal to grant Mylan a covenant not to sue supports its contention that a reasonable apprehension of suit exists. Mylan correctly notes that this is a relevant factor; however, it is not dispositive. *Teva,* 395 F.3d at 1333 (citing *BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 980 (Fed.Cir.1993). Moreover, Merck is under no statutory obligation to provide a covenant or otherwise assure Mylan that it will not sue for infringement. *See Teva Pharms. USA, Inc. v. Pfizer Inc.,* No. Civ. A. 03CV10167RGS, WL 2003 WL 22888848, at *4 (D.Mass. Dec.8, 2003), *aff'd Teva,* 395 F.3d 1324. Mylan argues that Merck's statement that it would not sue within the forty-five-day period following notice of Mylan's ANDA, without a covenant not to sue, includes the unspoken inference of "yet." This argument is simply too speculative to establish a reasonable apprehension of suit for Mylan under the instant circumstances.

*5. Statutory Civil Suit Provision*

Finally, Mylan argues that the Medicare Amendments, through the declaratory judgment provision, provide a means of satisfying Article III's requirements without satisfying the reasonable apprehension of suit prong of the two-part test. The Federal Circuit squarely addressed this issue in *Teva* and

conclude[d] that the plain language of the statute, as well as the legislative history, support the conclusion that Congress did not intend for the Medicare Amendments to cause courts to alter the requirement of the two-part test that a declaratory judgment plaintiff must demonstrate a "reasonable

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 10
Not Reported in F.Supp.2d, 2005 WL 2850137 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

apprehension" of suit to establish Article III jurisdiction. [The] traditional two-part test remains good law....

395 F.3d at 1337. Accordingly, the court will rely upon the traditional two-part test in making its finding that none of the above factors relied upon by Mylan, taken alone or taken together, establish a reasonable apprehension of suit. Therefore, the court lacks subject matter jurisdiction to consider Mylan's request for declaratory judgment.

## IV. *Conclusion*

For the foregoing reasons, the court grants Merck's Motion to Dismiss for lack of subject matter jurisdiction. Accordingly, the court denies Merck's Contingent Motion to Transfer Under 28 U.S.C. § 1404(a) as moot.

## *ORDER*

In accordance with the accompanying memorandum of law, IT IS HEREBY ORDERED THAT:

1) Defendant's Motion to Dismiss (Doc. 19) is GRANTED;

**\*9** 2) Defendant's Contingent Motion to Transfer Under 28 U.S.C. § 1404(a) (Doc. 22) is DENIED as MOOT;

3) Plaintiff's oral request for oral argument on this motion is deemed MOOT; and

4) The Clerk of Court is directed to close the file.

M.D.Pa.,2005.
Mylan Pharmaceuticals Inc. v. Merck & Co.,

Inc.
Not Reported in F.Supp.2d, 2005 WL 2850137 (M.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3136824 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant's Contingent Motion to Transfer Under 28 U.S.C. | 1404(A) (Oct. 26, 2005) Original Image of this Document (PDF)
• 2005 WL 3136820 (Trial Motion, Memorandum and Affidavit) Mylan Pharmaceuticals Inc.'s Memorandum of Law in Opposition to Merck's Motion to Dismiss (Oct. 4, 2005) Original Image of this Document (PDF)
• 2005 WL 2613067 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint (Aug. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 2613070 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant's Contingent Motion to Transfer under 28 U.S.C. | 1404(A) (Aug. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 2233973 (Trial Pleading) Complaint for Declaratory Judgment (Jul. 14, 2005) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                                                        Page 1
Slip Copy, 2006 WL 3857492 (E.D.Pa.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Peregrine Surgical, Ltd. v. Synergetics,
USA, Inc.E.D.Pa.,2006.Only the Westlaw
citation is currently available.
United States District Court,E.D.
Pennsylvania.
PEREGRINE SURGICAL, LTD.
v.
SYNERGETICS, USA, INC. and
Synergetics, Inc.
**Civil Action No. 06-2237.**

Dec. 29, 2006.

Bruce E. Rodger, Paul Mardinly Durham
James Flandreau & Rodger PC, Media, PA,
Robert J. Basil, Collier & Basil, PC, New
York, NY, for Peregrine Surgical, Ltd.
Adam S. Barrist, Frey Petrakis Deeb Blum
Briggs & Mitts PC, Philadelphia, PA, Kara
R. Yancey, Molly B. Edwards, Harness,
Dickey & Pierce, PLC, St. Louis, MO,
Matthew L. Cutler, Rudolph A. Telscher,
JR., Harness Dickey & Pierce PLC, Clayton,
MO, for Synergetics, USA, Inc. and
Synergetics, Inc.

*MEMORANDUM & ORDER*
SURRICK, J.
**\*1** Presently' before the Court is Defendants'
Motion To Dismiss (Doc. No. 7). For the
following reasons, Defendants' Motion will
be granted.

**I. BACKGROUND**

Peregrine Surgical, Ltd. ("Peregrine") and
Synergetics, USA, Inc. and Synergetics, Inc.
("Synergetics") are competitors in the field

of surgical products for ophthalmic surgery.
(Doc. No. 4 at 2 .) Synergetics is the holder
of U.S. Patent No. 5,921,998 ("the 998
Patent") for the product, the Diamond
Dusted Membrane Scraper ("DDMS").
(Doc. No. 7 at 2.) Synergetics acquired the
rights to the 998 Patent on October 1, 1999.
(*Id.*) The DDMS is a surgical instrument that
separates and removes proliferative
membranes from the retina while reducing
the risk of damaging the retina or forming a
retinal tear. (*Id.*) Peregrine is engaged, and
alleges that it was, at the time of the filing of
the Complaint in this case, engaged in the
manufacturing and marketing of a product it
calls "SOS," which shares certain physical
characteristics with the DDMS. (Doc. No. 4
at 2.) On May 26, 2006, Peregrine filed a
Complaint in this Court seeking a
Declaratory Judgment against Synergetics.
Peregrine seeks a judgment declaring that it
has not committed any act of infringement
with regard to the 998 Patent and an order
permanently enjoining Synergetics from
asserting any claims under the 998 Patent
against Peregrine for any activity relating to
Peregrine's SOS product. (Doc. No. 1.)
Peregrine filed an Amended Complaint on
June 19, 2006. (Doc. No. 4.)

Synergetics and Peregrine engaged in prior
litigation involving patent infringement
actions for products not related to the 998
Patent. In 2004, Synergetics sued Peregrine
in the Eastern District of Pennsylvania for
patent infringement on two Synergetics
patents for a connector/adapter system,
patents which are not in dispute in the
instant matter. (Doc. No. 11 at 3;
*Synergetics Inc. v. Peregrine Surgical Ltd.,
et al.,* Civ. A. No. 04-CV-4939.) On January
1, 2006, Synergetics sued Peregrine for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2
Slip Copy, 2006 WL 3857492 (E.D.Pa.)
**(Cite as: Slip Copy)**

patent infringement in this district for patents and products not at issue in the 2004 suit or in the instant litigation. (*See Synergetics, Inc. v. Peregrine Surgical, Ltd., et al.,* Civ. A. No. 06-CV-107; Doc. No. 27 at 1.) [FN1] The 2004 case settled after mediation with the presiding judge, the Honorable Norma L. Shapiro. (Doc. No. 11 at 3-4.) On June 15, 2006, counsel for both parties met with Judge Shapiro to discuss the terms of a possible settlement. (*Id.* at 4 .) Among the terms discussed was the notion that Peregrine would not manufacture or sell its SOS product for a period of two years. (*Id.*) Peregrine's Board of Directors rejected this term and proposed an abstention of one year on the production and sale of the SOS. (*Id.*) Ultimately, the parties settled that litigation without any restrictions on the manufacture or sale of the SOS membrane scraper. (*Id.* at 4-5.) There were no discussions between the parties regarding the SOS product prior to the filing of the Complaint on May 26, 2006. (*See id.* at 5.) Moreover, at oral argument on the Motion to Dismiss, held on December 14, 2006, counsel for Synergetics stated, and counsel for Peregrine agreed, that Synergetics had no knowledge of the SOS product prior to Peregrine's filing of the instant Complaint seeking a declaratory judgment. (Hr'g Tr. at 6, 9, 10.)

> FN1. On November 12, 2006, Plaintiff filed a Motion for Leave to File a Surreply in Opposition to Motion to Dismiss Case (Doc. No. 27) in which it sought to file a surreply in the form of a Certification of Robert J. Basil. We will grant this Motion and consider the Certification to be Plaintiff's Surreply.

*2 On August 17, 2006, Defendants moved, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Complaint, arguing that there was no actual controversy when the Complaint was filed and hence that the Court lacks subject matter jurisdiction over the case. (Doc. No. 7.) On November 8, 2006 Synergetics filed suit against Peregrine in the United States District Court for the District of Missouri, claiming that Peregrine's SOS product infringes Synergetics's 998 Patent. (*Synergetics v. Peregrine Surgical Ltd.,* Civ. A. No. 06-CV-1632; Doc. No. 27 at 2.) On November 15, 2006, Plaintiff filed a Motion for Preliminary Injunction in this Court seeking an order barring Synergetics from taking any action in furtherance of the Missouri action until the declaratory judgment action in this Court is resolved. (Doc. No. 28.) As mentioned above, oral argument was held on the Motion to Dismiss on December 14, 2006. (Doc. No. 33.)

## II. LEGAL STANDARD

A motion to dismiss will be granted under Federal Rule of Civil Procedure 12(b)(1) when the court lacks subject matter jurisdiction over a claim. *EEOC v. Creative Playthings, Ltd.,* 375 F.Supp.2d 427, 431 (E.D.Pa.2005) (citing *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir.2005)). When ruling on a 12(b)(1) motion, courts distinguish between "facial" attacks and factual attacks on a court's subject matter jurisdiction. *Id.* Courts review a "facial" attack based on the parties' pleadings but may look beyond the pleadings to determine jurisdiction in reviewing a factual attack. *Id; In re Kaiser Group Int'l Inc.,* 399 F.3d 558, 561 (3d Cir.2005). In either case, the plaintiff bears the burden of demonstrating

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 3
Slip Copy, 2006 WL 3857492 (E.D.Pa.)
**(Cite as: Slip Copy)**

that the court has proper jurisdiction over the claim. *Mash Enterprises, Inc. v. Prolease Atl. Corp.,* 199 F.Supp.2d 254, 256 (E.D.Pa.2002). When considering a "facial" challenge, we must accept all of the allegations in the Complaint as true and construe them in the light most favorable to the plaintiff. *In re Kaiser Group Int'l,* 399 F.3d at 561. We may also consider exhibits attached to the Complaint, matters of public record, and "undisputedly authentic" documents that a defendant attaches to the motion to dismiss. *EEOC v. Equicredit Corp. of Am .,* Civ. No. 02-844, 2002 WL 31371968, at *2 n. 1 (E.D.Pa. Oct.8, 2002) (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993)).[FN2]

> FN2. Defendants do not specify whether they bring a facial or factual attack on the Court's subject matter jurisdiction. In assessing this Motion, we have considered the pleadings as well as the parties' statements at oral argument.

### III. DISCUSSION

### A. Standard for Declaratory Judgment Actions in Patent Cases

Declaratory Judgment actions may only be brought when an "actual controversy" exists between "interested parties." 28 U.S.C. § 2201(a); *B.P. Chems., Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 977 (Fed.Cir.1993). When courts are asked to make declaratory judgments where patent rights are involved, courts apply a two-prong test to determine whether an actual controversy exists. *Id.* at 978. The test requires the existence of both: "(1) an explicit threat or other action by the

patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Id.; see also Interdynamics, Inc. v. Firma Wolf,* 698 F.2d 157, 166 (3d Cir.1983) (citing *Int'l Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1210-11 (7th Cir.1980)).[FN3]

> FN3. We note that "the question of what test to apply to determine the justiciability under the Declaratory Judgment Act in a patent case 'pertains to patent law' " and, as a result, "Federal Circuit jurisprudence controls." *Institut Pasteur v. Simon,* 332 F.Supp.2d 755, 757 n. 2 (E.D.Pa.2004) (citing *Flex-Foot, Inc. v. CRP, Inc.,* 238 F.3d 1362, 1365 (Fed.Cir.2001)).

### B. Reasonable Apprehension

**\*3** The Complaint alleges and Plaintiff confirmed during oral argument that Peregrine is, and was at the time the Complaint was filed, engaged in the manufacture and marketing of its SOS product. (Doc. No. 1 at 2; Hr'g Tr. at 9.) The Complaint alleges that Peregrine has already produced this product for sale and has accepted purchase orders for it. (Doc. No. 1 at 2.) The Complaint also alleges that the product shares certain characteristics with Synergetics's DDMS product such that its production and sale of the SOS product could constitute infringement of the 998 Patent. (*Id.*) The fact that Synergetics has now filed suit in Missouri alleging that the SOS product infringes the 998 Patent certainly supports this allegation. Clearly,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 4
Slip Copy, 2006 WL 3857492 (E.D.Pa.)
**(Cite as: Slip Copy)**

Plaintiff has established the second prong of the two-prong test-that it is engaged in activity that could constitute infringement. The first prong, whether Synergetics created a reasonable apprehension on the part of Peregrine that Peregrine would face an infringement suit based on its SOS product, is more problematic.

Defendants claim, and Plaintiff does not disagree, that Synergetics had no knowledge of the SOS product until Plaintiff filed its Complaint for declaratory relief on May 26, 2006. (Hr'g Tr. at 6, 9, 10.) Plaintiff points to two events, both of which occurred after the Complaint was filed, in support of its contention that an actual controversy exists. First, Peregrine points to the June 15, 2006 settlement conference with Judge Shapiro in the separate litigation between the parties, during which the SOS product was discussed. At this conference, Defendants proposed, as a part of the settlement, that Plaintiff abstain from manufacturing and marketing its SOS product for two years. Plaintiff proposed a one year moratorium, which Defendants rejected. The matter was settled without agreement on the SOS product. Plaintiff asserts that these negotiations demonstrate that Synergetics had a significant amount of information about the SOS product by June 15, 2006, enough to demand a two-year moratorium and reject a proposed one-year moratorium. (Doc. No. 11 at 5.) In addition to the settlement negotiations in June 2006, Plaintiff points to the November 2006 filing of the Missouri patent infringement case, the realization of Peregrine's concerns that its SOS product would bring a patent infringement suit by Synergetics. (Doc. No. 27 at Certification ¶ 4.)

While Plaintiff is correct that the June 2006 negotiations and the Missouri suit filed in November 2006 together demonstrate that there is currently an actual controversy, neither of these events is dispositive on the issue of subject matter jurisdiction in this case. "An objective standard governs whether a party is under a reasonable apprehension of suit." *Black & Decker, Inc. v. Robert Bosch Tool Corp.,,* 371 F.Supp.2d 965, 968 (N.D.Ill.2005). In order to find that subject matter jurisdiction is proper, we must find that Plaintiff had a reasonable apprehension that it would face a patent infringement suit at the time it filed its Complaint. *West Interactive Corp. v. First Data Res., Inc.,* 972 F.2d 1295, 1297 (Fed.Cir.1992) (court applies test for reasonable apprehension "at the time the complaint is filed"); *Indium Corp. of Am. v. Semi-Alloys, Inc.,* 781 F.2d 879, 883 (Fed.Cir.1985) ( "The test is an objective one-reasonable apprehension, like other jurisdictional prerequisites, must exist at the time suit is filed."); *Holley Performance Prods., Inc. v. Barry Grant, Inc.,* No. 04 C 5758, 2004 WL 3119017, at *2 (N.D.Ill.Dec.20, 2004). As a result, events that occurred after the filing of the Complaint cannot control. *See Fairplay Elec. Cars, LLC v. Textron Innovations, Inc.,* 431 F.Supp.2d 491, 493 (D.Del.2006) (holding that plaintiff cannot rely on a letter to establish reasonable apprehension because it was sent after the lawsuit was filed). Under the circumstances, neither the settlement negotiations before Judge Shapiro nor the subsequently filed Missouri action can be relied upon to demonstrate that reasonable apprehension existed at the time that Peregrine filed its Complaint in this case on May 26, 2006.

**\*4** In addition to its attempt to rely on the two subsequent events to demonstrate reasonable apprehension of suit, at oral argument Peregrine also suggested that we

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 5
Slip Copy, 2006 WL 3857492 (E.D.Pa.)
**(Cite as: Slip Copy)**

may find that it has met the first prong of the actual controversy test by looking to the totality of circumstances in existence at the time the Complaint was filed. In particular, Peregrine points to three factors, which led it to file the declaratory judgment action: (1) the history of litigiousness between these two parties; (2) the similarity of the products; and (3) Defendants' competitive nature in this field. (Hr'g Tr. at 15.) Plaintiff is correct that "courts must examine the totality of circumstances in determining whether a controversy exists." *Black & Decker, Inc.,* 371 F. Supp 2d at 968 (citing *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 880 (Fed.Cir.1983)). In addition, Plaintiff correctly points to language in *Interdynamics, Inc. v. Firma Wolf,* in which the Third Circuit commented that in applying the actual controversy test to fact situations, " 'courts should make a pragmatic judgment, aware of the business realities that are involved.' " *Interdynamics, Inc.,* 698 F.2d at 168 (quoting *Sherwood Med. Indus., Inc. v. Deknatel, Inc.,* 512 F.2d 724, 728 (8th Cir.1975)). Nevertheless, we are compelled to conclude that under the totality of circumstances present in this case, Plaintiff has failed to demonstrate a reasonable apprehension of suit at the time the Complaint was filed.

A review of the case law on this issue makes clear that the mere history of litigiousness coupled with Plaintiff's perception of Defendants' competitive nature and the similarity of the products at issue is not sufficient. First, a prior history of litigation is not necessarily relevant to the determination at all. The fact that a company has engaged in prior litigation over other patents does not produce a reasonable apprehension of suit in the instant case. *See Glaxo Group, Ltd. v. Dr. Reddy's Labs., Ltd.,* 325 F.Supp.2d 502, 507 (D.N.J.2004)

("[T]he fact that Glaxo has previously exhibited litigious tendencies with respect to other patents does not produce a reasonable apprehension of litigation in this case."); *see also Fairplay Elec. Cars, LLC,* 431 F.Supp.2d at 493 (distinguishing case from one where reasonable apprehension found because prior litigation involved different product than the one at issue in instant litigation); *cf. Sherwood Med. Indus., Inc .,* 512 F.2d at 728 (finding prior litigation, along with other factors, to create reasonable apprehension when prior litigation involved same patent). While some courts have found prior litigation to be relevant to this determination, they do so in cases where the prior litigation involves the same product, technology, or patent that is at issue in the declaratory judgment action. *See Sherwood Med. Indus., Inc.,* 512 F.2d at 728; *Interdynamics, Inc.,* 698 F.2d at 168, 168 n. 12 (finding reasonable apprehension when prior and instant litigation arose in context of contempt proceedings for violation of consent decree on same patent). In the instant case, Plaintiff can point to no suits on the 998 Patent by Synergetics against any party before Peregrine filed its declaratory judgment action. The two prior suits between Peregrine and Synergetics involved unrelated patents and unrelated products. The fact that two companies that are both engaged in the production of ophthalmic surgical devices have a history of patent infringement litigation involving other products does not create an objectively reasonable apprehension of suit in this case.

**\*5** In addition, the history of litigation coupled with the fact that Peregrine considers Synergetics to be a fierce competitor and the fact that the products are similar do not, by themselves, create a reasonable apprehension of suit. More is required. For example, in *Sherwood Medical*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 6
Slip Copy, 2006 WL 3857492 (E.D.Pa.)
**(Cite as: Slip Copy)**

*Industries,* the Eighth Circuit found a reasonable apprehension of suit based on the totality of circumstances where the plaintiff pointed to four separate actions on the part of the defendant that led to its reasonable apprehension. The court considered the following circumstances:

First, [defendant] had brought an action for infringement of these patents against another competitor in this field around 1969. Second, [defendant]'s patent attorney wrote [a], letter to [plaintiff], subtly pointing out that [defendant] had sued in the past to protect its patents and that it wished to determine whether or not [plaintiff]'s device might also infringe the patents. Third, even after [plaintiff] refused to send a sample, [defendant] went to some effort to obtain some of [plaintiff]'s units for examination. Fourth, a high ranking employee of [defendant], its director of new products, told [plaintiff]'s project manager that [plaintiff]'s devices infringed the patents and that this was the opinion of [defendant]'s attorneys also.

*Sherwood Med. Indus., Inc.,* 512 F.2d at 728.

In contrast, in *Indium,* the Federal Circuit upheld the district court's dismissal of declaratory judgment claims despite evidence of prior litigation by the patent holder and a letter by the patent holder to the declaratory judgment plaintiff offering the plaintiff an opportunity to license the patent at issue on a non-exclusive basis. *Indium Corp. of Am.,* 781 F.2d at 883. Similarly, in *West Interactive,* the Federal Circuit rejected the notion that a meeting between third parties could constitute sufficient evidence of reasonable apprehension of suit. At the meeting between a licensee of the patent at issue and a third party, the licensee commented that both the plaintiff and the third party had infringed the patents at issue. While the third party communicated this conversation to the plaintiff, the court did not consider these third party communications to be sufficient evidence of reasonable apprehension. *West Interactive Corp.,* 972 F.2d at 1297-98.

In this case, Plaintiffs have failed to present sufficient evidence to satisfy the objective actual controversy test. Plaintiffs can point to no communication at all between the parties about this patent prior to the filing of the declaratory judgment action. The only communication between the parties came in June 2006, after the Complaint had been filed. In addition, Plaintiff concedes that Defendants did not even have any knowledge of its SOS product prior to the commencement of the instant litigation. The only prior litigation between the two parties involved patents that are not at issue in the instant litigation. This history cannot, on its own, support a finding of reasonable apprehension. The fact that Plaintiff considers Defendant to be a fierce competitor is certainly not sufficient for the Court to conclude that there was an objectively reasonable apprehension of suit. We acknowledge that Plaintiff's conclusion that it would face a patent infringement suit by Synergetics ultimately proved true. However, this suggests merely that Peregrine made an astute prediction based on the circumstances, not that there was sufficient evidence to satisfy the burden of the objective actual controversy test. "[A]lthough the apprehension may have been real, we do not agree that it was reasonable on the present record." *Indium Corp. of Am.,* 781 F.2d at 883.

**\*6** In reviewing all of the facts and circumstances, we are compelled to conclude that Peregrine has failed to carry

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 7
Slip Copy, 2006 WL 3857492 (E.D.Pa.)
**(Cite as: Slip Copy)**

its burden of establishing that it had a
reasonable apprehension of suit under the
998 Patent at the time it filed the declaratory
judgment action. Accordingly, we will grant
Defendants' Motion to Dismiss for lack of
subject matter jurisdiction.

An appropriate Order follows.

### ORDER

AND NOW, this *29th* day of December,
2006, upon consideration of Defendants'
Motion To Dismiss (Doc. No. 7) and all
papers submitted in support thereof and in
opposition thereto, and after oral argument,
it is ORDERED as follows:
1. Plaintiff's Motion for Leave to File a
Surreply in Opposition to Motion to Dismiss
Case (Doc. No. 27) is GRANTED.
2. Defendants' Motion to Dismiss (Doc. No.
7) is GRANTED. Plaintiff's Complaint is
DISMISSED with prejudice.

IT IS SO ORDERED.

E.D.Pa.,2006.
Peregrine Surgical, Ltd. v. Synergetics,
USA, Inc.
Slip Copy, 2006 WL 3857492 (E.D.Pa.)

Briefs and Other Related Documents (Back
to top)

• 2006 WL 2304093 (Trial Pleading)
Amended Complaint Declaratory Judgment
Action (Jun. 14, 2006) Original Image of
this Document (PDF)
• 2006 WL 1557115 (Trial Pleading)
Complaint (May 26, 2006) Original Image
of this Document (PDF)
• 2:06cv02237 (Docket) (May 26, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                                    Page 1
Slip Copy, 2006 WL 2726728 (D.Del.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Positec USA, Inc. v. Milwaukee Elec. Tool
CorpD.Del.,2006.Only the Westlaw citation
is currently available.
  United States District Court,D. Delaware.
  POSITEC USA INC., and Positec USA Inc.,
                    Plaintiffs,
                        v.
      MILWAUKEE ELECTRIC TOOL
   CORPORATION, Defendant.
            **C.A. No. 05-890 GMS.**

               Sept. 25, 2006.

William J. Marsden, Jr., Fish & Richardson,
P.C., Wilmington, DE, for Plaintiffs.
Jack B. Blumenfeld, Leslie A. Polizoti,
Morris, Nichols, Arsht & Tunnell LLP,
Wilmington, DE, for Defendant.

            *MEMORANDUM*
GREGORY M. SLEET, District Judge.

          **I. INTRODUCTION**

**\*1** On December 27, 2005, Positec USA Inc.
(a North Carolina corporation) and Positec
USA Inc. (a South Carolina corporation)
(collectively, "Positec USA") brought this
declaratory judgment action against
Milwaukee Electric Tool Corporation
("Milwaukee"). Presently before the court is
Milwaukee's Motion to Dismiss (D.I.9). For
the following reasons, the court will deny
the motion to dismiss.

          **II. BACKGROUND**

Milwaukee is the assignee of U.S. Patent

Nos. 6,108,916 (the " 916 patent"),
6,301,790 (the " 790 patent"), and 6,588,112
(the " 112 patent") (collectively, the
"patents-in-suit"). The patents-in-suit are
directed to circular saws having a movable
handle. (D.I. 4 ¶¶ 13, 16-17.) In September
2005, Milwaukee became aware of the
WORX Circular Saw (the "WORX Saw"),
which is manufactured by one of the
companies of Positec Group Limited (the
"Positec Group"). (D.I. 12, at 3.) Milwaukee
contacted Positec Germany GmbH ("Positec
Germany"), by letter, to inquire further
about the design of the WORX Saw, and to
get some information about the
manufacturer of the saw. (D.I. 10, at 2.)
Milwaukee's letter also included copies of
the patents-in-suit. Positec Germany
responded to Milwaukee, via email, stating
that it had forwarded the September 2005
letter and patents-in-suit to Positec
Machinery Co. Ltd. ("Positec China"). (D.I.
12, at 5.) On October 10, 2005, Milwaukee
sent a letter and copy of the patents-in-suit
to Positec China to again inquire about the
design of the WORX Saw and its
manufacturer. (D.I. 10, at 2.) Positec China
responded on October 23, 2005, stating that
"Positec does not make use of any valid
claim of Milwaukee." (*Id.*) On November 4,
2005, Milwaukee responded, requesting the
basis for Positec China's claim that Positec
did not infringe and sales information
regarding the WORX saw. (*Id.*) Positec
China did not respond to the letter. (*Id.*) On
December 15, 2005, Milwaukee sent another
letter to Positec China, which stated that
certain claims of the patents-in-suit were
infringed by the WORX Saw. (D.I. 13, Ex. 7
at 2 .) The letter advised Positec China to
"immediately cease" the manufacture, offer
for sale, sale, and use of the WORX Saw.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 2
Slip Copy, 2006 WL 2726728 (D.Del.)
**(Cite as: Slip Copy)**

(*Id.*) The letter further stated that Milwaukee "will be forced to commence an infringement action," in the event that Positec China did not cease its activities by December 29, 2005. (*Id.*) Finally, the letter insisted that Positec China provide the contact information of the manufacturer, if it did not manufacture the WORX Saw, and the contact information for the importer of the saws so that "Milwaukee can enforce its intellectual property rights against such parties." (Id. at 3.) Positec USA subsequently brought the present declaratory judgment lawsuit against Milwaukee.

Positec USA alleges that Milwaukee's conduct has given it a reasonable apprehension that Milwaukee would sue it for patent infringement. (D.I. 1 ¶ 21.) Accordingly, Positec USA asks the court to declare all claims of the patents-in-suit invalid and non-infringed. (*Id.* at Prayer for Relief.)

**\*2** On January 17, 2006, Milwaukee filed a motion to dismiss for lack of subject matter jurisdiction. Also, on January 17, 2006, Milwaukee sent another letter to Positec China, "explain[ing]" that its prior correspondence with Positec Germany and Positec China, including the December 15, 2005 letter, "was only intended to 'initiate a dialogue in the hopes of reaching an amicable global business resolution.' " (D.I. 14, at 3.)

### III. DISCUSSION

Milwaukee contends that the court should dismiss this declaratory judgment action because Positec USA had no objectively reasonable apprehension of imminent suit on the 916, 790, and 112 patents and, therefore, its claims are premature. In other words, Milwaukee contends the court lacks subject matter jurisdiction over Positec USA's declaratory judgment action.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the jurisdiction of the Court to address the merits of a plaintiff's complaint. Such a challenge may present either a facial or a factual challenge to subject matter jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). When asserting a facial challenge, a defendant contends that the complaint alleges facts that, even if true, would be insufficient to establish the Court's jurisdiction. *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000). The present motion presents a facial challenge to the complaint because the jurisdictional facts are not in dispute. Such a motion requires the court to consider the allegations of the complaint as true and to make all reasonable inferences in the plaintiff's favor. *See id.* Additionally, the court must test the existence of jurisdiction as of the time the complaint was filed. *Lang v. Pacific Marine & Supply Co.,* 895 F.2d 761, 764 (Fed.Cir.1990).

The Declaratory Judgment Act (the "Act") provides that "[i]n a case of actual controversy ... [a court of competent jurisdiction] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Thus, before a court may exercise jurisdiction over a declaratory judgment action, the Act requires an "actual controversy between the parties ." *Medimmune, Inc. v. Centocor, Inc.,* 409 F.3d 1376, 1378-79 (Fed.Cir.2005) (citing *Teva Pharms. USA, Inc. v. Pfizer, Inc.,* 395 F.3d 1324, 1331 (Fed.Cir.2005)). "In general, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

presence of an 'actual controversy' within the meaning of the statute depends on 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 810 (Fed.Cir.1996) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

**\*3** However, a district court does not have jurisdiction to hear the action when there is no actual controversy. *Spectronics Corp. v. H .B. Fuller Co.,* 940 F.2d 631, 634 (Fed.Cir.1991), *cert. denied,* 112 S.Ct. 658 (1991). Moreover, "even assuming [the existence of] an actual controversy, the exercise of a court's jurisdiction over a declaratory judgment action is discretionary." *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.,* 982 F.2d 1520, 1526 (Fed.Cir .1992) (citations omitted).

In the patent context, the Federal Circuit has developed a two-part test for determining whether the declaratory judgment action is justiciable: (1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit; and (2) present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken by the declaratory judgment plaintiff with the intent to conduct such activity. *See Goodyear Tire & Rubber Co. v. Releasomers Inc.,* 824 F.2d 953, 955 (Fed.Cir.1987) (citations omitted). In addition, the declaratory judgment plaintiff bears the burden of proving the existence of facts underlying its allegations of the existence of an actual controversy. *Jervis B. Webb Co. v. S. Sys., Inc.,* 742 F.2d 1388, 1399 (Fed.Cir.1984).

Here, neither party disputes that the second element has been satisfied. Thus, the court's determination turns on whether Positec USA has a reasonable apprehension of suit. Positec USA, therefore, must be able to demonstrate that it has a reasonable apprehension of imminent suit. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (this requirement of imminence reflects the mandate in Article III of the U.S. Constitution that the injury in fact be "concrete," and "actual or imminent, not conjectural or hypothetical"); *see Teva Pharms. v. Pfizer, Inc.,* 395 F.3d 1324, 1333 (Fed.Cir.2005); *E.I. DuPont de Nemours & Co. v. Great Lakes Chem. Corp.,* 383 F.Supp.2d 642, 647 (D.Del.2005).

In the present case, Positec USA asserts that it had a reasonable apprehension of an imminent patent infringement suit when it filed this declaratory judgment action, based on Milwaukee's explicit and unambiguous threats to institute litigation against the manufacturer and importer of the WORX Saw. More particularly, Positec USA points to the December 15, 2005 letter from Milwaukee to Positec China, its sister company, which states that Milwaukee "will be forced to commence an infringement action to enforce its intellectual property rights and to stop your company's infringement," if Positec China has not ceased infringing activities by December 29, 2005. (D.I. 11, Ex. 7 at 2.) In the letter, Milwaukee also inquires as to whether Positec China is the manufacturer of the WORX Saw and, if Positec China is not the manufacturer, "insist[s] that [Positec China] provide to [it] *immediately* the name,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                Page 4
Slip Copy, 2006 WL 2726728 (D.Del.)
**(Cite as: Slip Copy)**

address and contact information of the manufacturer and of the importer, if these parties are different, so that Milwaukee can enforce its intellectual property rights against such parties." (*Id.* at 2-3) (emphasis in original). Milwaukee's letter further "insist[s]" that Positec China provide it "a full and complete accounting of any infringing circular saws or power tools manufactured, *sold,* or used in Germany, in the United Kingdom, or *in the U.S.*" (*Id.* at 2) (emphasis added).

**\*4** After having read and considered Milwaukee's December 15, 2005 letter, the court concludes that it contains an explicit and direct threat of a patent infringement suit against Positec China.[FN1] However, the question remains as to whether the letter constitutes an explicit threat of infringement against Positec USA. Positec USA maintains that the letter does. As support, Positec USA offers the following evidence: (1) the letter does not speak to only the manufacturer of the WORX Saw, but also the importer and seller of the saw in the United States; (2) Positec China is the sister corporation of Positec USA; and (3) Positec USA is the only company of the Positec Group that imports and cells the WORX Saw in the United States.

> FN1. Milwaukee contends in its reply brief that its January 17, 2006 letter to Positec China regarding the patents-in-suit evidences an intention to address patent issues directly with Positec China, the manufacturer of the saw. According to Milwaukee, the letter "explains that its prior correspondence, including the December 15, 2005 letter, was intended to 'initiate a dialogue in the hopes of reaching an amicable global

business resolution.' " (D.I. 14, at 10; D.I. 15, Ex. 9 at 1.) The letter discusses the present case, and states that Milwaukee "has no intention of litigating its referenced patents against Positec USA or any other customer, distributor or sales representative of Positec China at this time." (*Id.*) The letter also states that Milwaukee hopes to avoid litigation entirely by communicating directly with Positec China. (*Id.*) The court finds that Milwaukee's attempt, after the commencement of this lawsuit, to backpedal and "explain" the real intention of its prior letters belies its assertion that it did not threaten litigation against Positec USA.

Conversely, Milwaukee contends that the December 15, 2005 letter was addressed to only the manufacturer of the saw and, therefore, Milwaukee has not threatened to sue importers of the saw. Milwaukee refers the court to the following line in the letter for support: "If your company does not manufacture the WORX Circular Saw ... we insist that you provide to us immediately the name, address and contact information of the manufacturer and of the importer, if these parties are different, so that Milwaukee can enforce its intellectual property rights against such parties." (D.I. 14, at 4 .) Milwaukee contends that the above-cited language "clearly indicates that [its] intention was simply to ascertain whether Positec China manufactures the WORX Circular Saw, in order to make certain that [it] was communicating with the proper party." (*Id.*)

After having considered the parties' positions, the court concludes that Positec USA's argument is more persuasive for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 5
Slip Copy, 2006 WL 2726728 (D.Del.)
**(Cite as: Slip Copy)**

several reasons. First, while Milwaukee contends that its December 15, 2005 letter was not meant to threaten importers of the WORX Saw, the actual words of the letter tell a different story. Contrary to Milwaukee's position, the letter directly implicates importers of the saw, even though it does not directly name any, by insisting that Positec China provide Milwaukee with contact information of the manufacturer and importer, so that it could enforce its intellectual property rights as to both of them. In addition, the letter requests an accounting of any "infringing circular saws ... manufactured, sold or used ... in the U.S." (D.I. 11, Ex. 7 at 2.) This request begs the question: why would Milwaukee ask for information regarding importers, sales, and use in the United States if it only desired to sue the manufacturer of the saws. Given the foregoing, the court cannot conclude that Milwaukee's actions were directed only to the manufacturer of the saws.

Furthermore, courts have held indirect charges of patent infringement sufficient to support a declaratory judgment action challenging the validity of a patent. *Volkswagen of America v. Engelhard Minerals & Chemicals Corp.,* 401 F.Supp. 1210 (S.D.N.Y.1975); *see Lex Computer & Management Corp. v. CBS Inc.,* 684 F.Supp. 811 (S.D.N.Y.1988). In the *Volkswagen* case, Volkswagen's United States subsidiary, Volkswagen of America ("VWA"), filed a declaratory judgment action of non-infringement against a company holding patents directed to catalytic converters. *Volkswagen,* 401 F.Supp. at 1212-13. The defendant moved to dismiss for lack of subject matter jurisdiction and argued that VWA's European parent, and not VWA, was threatened with an infringement suit. *Id.* at 1213. The court denied the motion to

dismiss, noting that "[i]n patent cases, a justiciable controversy has been found to exist where a patentee has 'charged' a company with infringement, either directly or indirectly, provided that company has already begun to produce and sell the allegedly infringing device, or made substantial preparations to do so." *Id.* (quoting *Muller v. Olin Mathieson Chem. Corp.,* 404 F.2d 501, 504 (2d Cir.1968)). The court further noted that the "charge of infringement" requirement is to be liberally construed. *Volkswagen,* 401 F.Supp. at 1213. Finally, the court held that "[i]ndirect, as well as direct charges of infringement may be sufficient to support a declaratory judgment action challenging the validity of a patent," and that "any infringement charge against [VWA's parent] with respect to cars imported into the United States creates a very significant risk of suit for VWA, the wholly-owned subsidiary ... and the sole importer and distributor of Volkswagens in the United States." *Id.* at 1214.

**\*5** The facts of the present case are strikingly similar to those in *Volkswagen.* Here, Positec USA is a sister company to Positec China, and the sole importer of the WORX Saw in the United States. (See D.I. 13 ¶ ¶ 3-4.) Therefore, any infringement charge against Positec China with respect to WORX Saws imported into the United States creates a very significant risk of suit for Positec USA. Given these facts, the court concludes that Positec USA has demonstrated a reasonable apprehension of an infringement suit by Milwaukee, based upon Milwaukee's indirect threat of infringement in its December 15, 2005 letter.[FN2] Accordingly, the court will exercise its discretion to hear this declaratory judgment action and deny Milwaukee's motion to dismiss.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN2. Milwaukee cites *R & P Pools, Inc. v. The New Kayak Pool Corp.,* Case No. 01-CV0051E(M), 2001 U.S. Dist. LEXIS 1505, at *1-2 (W.D.N.Y. Feb. 14, 2001), as supporting dismissal of this action for lack of subject matter jurisdiction. In *R & P Pools,* the district court dismissed a declaratory judgment action brought by a retailer, and based on a cease and desist letter sent from the patentee to a supplier of the retailer. *Id.* at *2. The court concluded that the plaintiff was attempting to assert the right of the supplier to bring the declaratory action, because the plaintiff believed that the supplier would not do so. *Id.* at *5. This court concludes that *R & P Pools* is distinguishable from the present case. First, *R & P Pools* is distinguishable because, in that case, the court noted that the plaintiff "d[id] not state that it fears that [the] defendant will bring an infringement suit against it." *Id.* In addition, the plaintiff even stated that the defendant had never asserted that its products infringe the patents-in-suit. *Id.* Here, in contrast, Positec USA alleges that it had a fear of an imminent suit when it filed its complaint based on Milwaukee's threats in its December 15, 2005 letter. Positec USA also alleges that Milwaukee asserted that its product, the WORX Saw, infringes the patents-in-suit. Further, in *R & P Pools,* the only relationship between the plaintiff and the third party was that of supplier and retailer. In the present case, Positec USA is a sister company of Positec China, and its only importer and seller of the WORX Saw in the United States. For these reasons, the court finds *Volkswagen,* and not *R & P Pools,* more on point with the facts of this case.

### *ORDER*

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendant's Motion to Dismiss (D.I.9) is DENIED.

D.Del.,2006.
Positec USA, Inc. v. Milwaukee Elec. Tool Corp
Slip Copy, 2006 WL 2726728 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 3427194 (Trial Pleading) First Amended Complaint for Declaratory Judgment (Oct. 2, 2006) Original Image of this Document (PDF)
• 2006 WL 819700 (Trial Motion, Memorandum and Affidavit) Milwaukee Electric Tool Corporation's Reply in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1) (Feb. 7, 2006) Original Image of this Document (PDF)
• 1:05cv00890 (Docket) (Dec. 27, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 238999 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Sirius Satellite Research Inc. v. Acacia Research Corp.S.D.N.Y.,2006.Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
SIRIUS SATELLITE RESEARCH INC.,
Plaintiff,
v.
ACACIA RESEARCH CORPORATION
and Acacia Global Acquisition Corp.,
Defendants.
**No. 05 Civ. 7495(PAC).**

Jan. 30, 2006.

*OPINION & ORDER*
CROTTY, J.
**\*1** Plaintiff Sirius Satellite Radio Inc. ("Plaintiff" or "Sirius") commenced this action on August 24, 2005, seeking a declaratory judgment that a patent owned by defendants Acacia Research Corporation and Acacia Global Acquisition Corp. (collectively, "Defendant" or "Acacia") is invalid or, in the alternative, that Sirius is not infringing the patent. Acacia now moves to dismiss the Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,[FN1] on the grounds that the pre-action communications between the parties, which form the basis of plaintiff's complaint, do not create an actual controversy. The Court agrees with Acacia; finds that it lacks subject matter to entertain this action; and, accordingly, dismisses the complaint.

> FN1. Acacia bases its Federal Rule 12(b)(6) argument on the same

failure to create an actual controversy as the Federal Rule 12(b)(1) argument. Since the existence of an actual controversy speaks to the subject matter jurisdiction of the Court, the proper motion would be a motion to dismiss pursuant to Federal Rule 12(b)(1). Therefore, the Court will treat Acacia's motion solely as a motion to dismiss pursuant to Federal Rule 12(b)(1) for lack of subject matter jurisdiction.

FACTS

Sirius is a corporation providing digital satellite radio service throughout the United States. (Compl.¶ 4.) Acacia is a corporation in the business of purchasing patents from third parties and licensing or enforcing them. (*Id.* ¶ 5.)

On November 5, 1991, the United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 5,063,610 (the "610 Patent") to the inventor, David Alwadish. (*Id.* ¶ 7.) The 610 Patent covers a system for broadcasting material together with related program information, such as the name of the song or its artist. (*Id.*) Alwadish sold the 610 Patent to Global Patent Holdings, Inc., which in turn sold it to Acacia in January 2005. (*Id.* ¶ 8.)

Acacia immediately began enforcing, and attempting to license, the 610 patent. By letter dated March 30, 2005, Robert Berman, the Chief Operating Officer and General Counsel of Acacia, wrote to Sirius, alleging that the 610 Patent "covers a service being offered by Sirius." (Caplan Decl., Ex. A.) In

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 238999 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

the letter, Acacia urged Sirius to consult outside patent counsel to determine if its service infringed the 610 Patent, expressed its desire to resolve the matter "amicably without the need for excessive legal costs," and communicated its interest in negotiating an exclusive license.[FN2] (*Id.*) Mr. Berman made himself and the company engineers available for consultation and advised that he would follow up in thirty days if he did not hear from a Sirius representative in the interim. (*Id.*)

> FN2. The exact language reads:
> I would expect that you will send this matter to outside patent counsel for review. We will make our engineers and attorneys available to you via telephone, and are also available to meet in person with you and your counsel to answer any questions and provide any additional material you may need. As before, our goal is to resolve this matter amicably without the need for excessive legal costs.
> If you act quickly, we are also prepared to discuss an exclusive license for Sirius ...
> .... I will contact you in approximately 30 days to check on the status of this matter and discuss next steps.
> (*Id.*)

Sirius immediately retained outside counsel to review the matter.[FN3] (Caplan Decl. ¶ ¶ 1-3 & Exs. C-G, L.) Sirius's attorney, Mr. Jonathan D. Caplan, attempted to investigate Acacia's allegations, but discovered that filewrapper-the record of proceedings before the USPTO resulting in the issuance of the 610 Patent-had disappeared.[FN4] (*Id.* ¶ ¶ 4-5.) Unable to fully investigate the potential infringement without the filewrapper, Sirius refused to commence license negotiations with Acacia. (*Id.*)

> FN3. Sirius retained Mr. Jonathan Caplan, Esq., of Kramer Levin Naftalis & Frankel LLP, immediately upon receipt of the March 30, 2005 letter. (*See* Caplan Decl. ¶ ¶ 1-3.) All subsequent communication between Sirius and Acacia went through Mr. Caplan, rather than through Sirius's in-house counsel, business executives, or patent specialists, (*Id.,* Ex. C-G, L.) Acacia, on the other hand, continued to handle the matter in house, through its General Counsel. (*Id.*)

> FN4. Thorough investigation revealed that the USPTO had lost the filewrapper, neither the inventor nor his patent attorney had retained a file, and Acacia was not given a file when it obtained the patent from Global Patent Holdings. (Caplan Decl., Ex. G.)

In an effort to facilitate license negotiations, Acacia made the inventor and his attorney available to Sirius. (*Id.,* ¶ 6 & Exs. C-D.) Acacia limited the scope of questioning, however, to issues of patent prosecution (i.e., office actions, meetings with examiners, changes to claims, and all other proceedings directly related to the grant of the patent by the USPTO), not "general discovery." (*Id.,* Ex. D, at 1.) After interviewing both the inventor and his patent prosecution attorney, Sirius still refused to enter license negotiations. (*Id.* Ex. C.)

**\*2** Acacia continued to press the matter. On June 17, 2005, Mr. Berman wrote another

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 3
Not Reported in F.Supp.2d, 2006 WL 238999 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

letter to Sirius stating that it expected a "substantive response to [its] infringement allegations and license request within [a] two week period." (*Id.*) Two weeks came and went without a definitive answer; however, Acacia took no action that would suggest an impending infringement suit. Instead, Acacia continued to push for license negotiations. (*Id.,* Exs. E & G.) For example, on August 4, 2005, Acacia faxed Sirius the one document it was able to locate from the filewrapper. (*Id.,* Ex. E) Rather than spur negotiations, after reviewing this document-a May 30, 1991 letter discussing the allowability of the Alwadish patent's main claim 1 in view of another pre-existing patent-Sirius concluded that it could not be infringing the 610 patent and therefore would not negotiate a license. (*Id.,* Exs. F & L.)

Sirius communicated its position to Acacia on August 15, 2005. (*Id.,* Ex. F.) In the letter, Sirius expressly declared: "Sirius does not, and cannot infringe the Alwadish patent ... Therefore, Sirius considers this matter closed-the Alwadish patent does not apply to Sirius." (*Id.*) Acacia responded the same day. (*Id.,* Ex. G.) In its response letter, Acacia challenged Sirius's interpretation of the 1991 letter, suggesting that the 1991 letter "cut the heart out of Sirius's defense," and therefore strengthens Acacia's case, and urging further discussions between the two companies, "so that [Acacia's] engineers can explain to [Sirius] how [they] believe Sirius is infringing the Alwadish patent, and [Sirius] can in turn, explain how [it] is not." [FN5] (*Id.*)

> FN5. The letter actually states:
> I understand your frustration in that the [1991] letter ... seems to cut the heart out of Sirius' defense. Your

contention is that the patent was invalid and should not have been issued over [the pre-existing patent]. As indicated by the letter, this argument was rejected by the examiner, for the reasons indicated.
...
We believe that the [1991] letter makes our case even stronger. If "closed" means that Sirius is no longer interested in amicably resolving this matter, please confirm that to me. Otherwise, I suggest that we have at least one more call so that my engineers can explain to you how we believe Sirius is infringing the Alwadish patent, and you can in turn, explain how they are not.
(*Id.*)

Sirius was not persuaded. In an August 24, 2005 conference call, Mr. Caplan made clear that because Sirius was not infringing the 610 patent, it was not interested in discussing the patent further or entertaining license negotiations. (*Id.* ¶ 15.) Mr. Berman responded that Acacia understood Sirius's position and Acacia would "act accordingly." (*Id.*) The same day, Sirius filed this declaratory judgment action. (Compl.¶ 1.)

## DISCUSSION

### A. Federal Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

A district court must dismiss a case pursuant to Federal Rule of Civil Procedure 12(b)(1) when it lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). As the party "seeking to invoke the subject

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2006 WL 238999 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

matter jurisdiction of the district court," plaintiff bears the burden of proving jurisdiction. *Scela v. City Univ. of New York,* 76 F.3d 37, 40 (2d Cir.1996); *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996). Thus, the Court must "refrain from 'drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," ' *Takeda Chem. Indus., Ltd. v.. Watson Pharm., Inc.,* 329 F.Supp.2d 394, 402 (S.D.N.Y.2004) (quoting *APWU v. Potter,* 343 F.3d 619, 623 (2d Cir.2003)), and may "refer to evidence outside the pleadings." *Luckett v. Bure,* 290 F.3d 493, 496-96 (2d Cir.2002).

B. Subject Matter Jurisdiction Under the Declaratory Judgment Act

**\*3** Through the Declaratory Judgment Act, 28 U.S.C. § § 2201 and 2202, a litigant may file an action in federal court seeking a "declar[ation] of its rights and other legal relations." 28 U.S.C. § 2201. This declaration has the effect of a final judgment, and may be used by the prevailing party to stave off future litigation. *Id .* Since federal courts may not issue advisory opinions, however, a litigant may seek a declaratory judgment only where an "actual controversy" exists. *Id.* "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree." *Dataline, Inc. v. MCI Worldcom Network Servs.,* Inc., No. 00 Civ. 1578, 2001 WL 102336, at \*2 (S.D.N.Y. Feb. 6, 2001). "In general, the presence of an 'actual controversy' within the meaning of the statute depends on 'whether the facts alleged, under all the circumstances, show ... a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." ' *Gen-*

*Probe Inc. v. Vysis, Inc.,* 359 F.3d 1376, 1379 (Fed.Cir.2004) (quoting *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 810 (Fed.Cir.1996), and *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

The conduct required to create an "actual controversy" differs according to the subject matter of the action. In the patent context, the Federal Circuit follows a two-part test, which focuses on the conduct of both the patentee and the putative infringer, to determine if a declaratory judgment plaintiff has an "actual controversy." First, there must be "an explicit threat or other action by the patentee, which creates a *reasonable apprehension* on the part of the declaratory judgment plaintiff that it will face an infringement suit." *Gen-Probe,* 359 F.3d at 1380 (emphasis added) (quoting *BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir.1993)). "Reasonableness" is judged by an objective standard, based on the conduct of the patent holder, not the subjective feelings of the potential infringer. *Cygnus Therapeutics Systems v. ALZA Corp.,* 92 F.3d 1153, 1160 (Fed.Cir.1996). The burden falls on the declaratory judgment plaintiff to prove, by a preponderance of the evidence, that its apprehension of suit was reasonable. *Id.* at 1159.

Second, there must be a "present activity which could constitute an infringement or concrete steps taken with the intent to conduct such activity." *Id.* The parties do not dispute that Sirius satisfies this second prong, as Sirius currently offers the allegedly infringing service in the marketplace. (Caplan Decl., Ex. A.) This case thus turns on whether, based on Acacia's conduct and communications prior to the filing of this action, Sirius had a reasonable apprehension of imminent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 5
Not Reported in F.Supp.2d, 2006 WL 238999 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

infringement litigation.

*1. Reasonable Apprehension Created by an*
*Express Charge of Infringement*

**\*4** To create a reasonable apprehension, the patentee "must signal an intention to file suit claiming infringement." *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 1326 (Fed.Cir.1998). The Federal Circuit has held that when a patentee makes an explicit threat of an infringement suit or an express charge of infringement, there is always an actual controversy. *See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1998). The declaratory judgment plaintiff need not make any additional showing in order to file a declaratory judgment action. *Id.* ("If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more.").

Sirius argues that Acacia's March 30, 2005 letter amounts to an express charge of infringement. The Court does not agree; and a fair reading of the letter does not support a conclusion that there was an express threat.[FN6] It is well settled that neither the offer of a patent license nor language in a letter stating that the declaratory judgment plaintiff's product or service is "covered by" or "falls within" defendant's patent amounts to an "express charge" of infringement. *See Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisia,* 57 F.3d 1051, 1053 (Fed.Cir.1995); *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885 (Fed.Cir.1992). More explicit language is required before a court will find an express charge or threat. *See, e.g., Elecs. for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1344 (Fed.Cir.2005) (finding

express threat where the patentee stated that it would drive the alleged infringer out of business and sue all its customers, warned that "bad things are going to happen," and even identified specific attorneys and law firms in support of his litigation threats). Acacia's March 30, 2005 letter does not expressly charge infringement of the 610 patent or threaten infringement litigation, it merely expresses a belief that Sirius might be infringing the patent and invites discussions between the companies and their patent experts to resolve the matter. The letter was carefully crafted to promote licensing negotiations between the parties, using the same "covered by" language that the Federal Circuit has previously deemed permissible. This language is not sufficient to create an actual controversy.

> FN6. The purpose of the March 30, 2005 letter was to initiate negotiations for a patent license-a goal which is to be encouraged. If every suggestion of patent coverage and request to enter license negotiations were deemed to be a "threat" sufficient to justify a declaratory judgment, there would be far fewer patent license negotiations and far more litigation. Its character is not changed by Exhibit B, which presents a detailed claims analysis. Had Exhibit B not been included with Exhibit A, Sirius could have stated, correctly, that it would not respond until it saw the patent holder's claims analysis. Thus, Exhibit B does not provide evidence of a threat, rather, it supports the request to enter into license negotiations.

*2. Reasonable Apprehension by a Totality of*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2006 WL 238999 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*the Circumstances*

In the alternative, Sirius argues that Acacia's conduct, when viewed as a whole, created a reasonable apprehension of imminent litigation, and therefore created an actual controversy. The Federal Circuit is mindful of the risk that requiring an "explicit threat" could promote manipulation by "patentee[s] who use careful phrases in order to avoid explicit threats, thus denying recourse to the courts while damages accrue." *Phillips Plastics,* 57 F.3d at 1053. Therefore, a court may find an "actual controversy" in the absence of an express charge of infringement or threat of litigation, if the totality of the circumstances create a reasonable apprehension-based on an objective test-that the patentee intended to bring an infringement suit. *Arrowhead,* 846 F.2d at 736; *Shell Oil,* 970 F.2d 888.

**\*5** While the "totality of the circumstances" test is a fact-specific inquiry, the Federal Circuit has identified certain factors that make a declaratory judgment plaintiff's apprehension of litigation presumptively reasonable: (1) where the allegations of infringement come from outside litigation counsel, rather than from the patentee's in-house counsel or business executives; (2) where the patentee warned the declaratory judgment plaintiff's customers of the potential infringement; (3) where the patentee has enforced the same patent or technology against other companies in prior litigation; or (4) where the patentee gave the declaratory judgment plaintiff an unfairly short period of time to respond to the infringement allegations before taking other action. *See, e.g., Arrowhead,* 846 F.2d at 737-38 (finding actual controversy where all four factors present, and noting that contact of infringer's customers and prior litigation were especially strong evidence of the

patentee's willingness and desire to sue); *see also Kos Pharm.,* 242 F.Supp.2d at 315-16 (finding actual controversy where patentee had filed three prior lawsuits against the plaintiff to enforce similar patents); *Cargill, Inc. v. Sears Petroleum & Transp. Corp.,* No. 02 Civ. 1395, 2002 WL 31426308, at \*4 (S.D.N.Y. Oct. 28, 2002) (finding reasonable apprehension of imminent litigation where letters came from patentee's outside litigation counsel, patentee told plaintiff's distributors of the patent dispute, and patentee's lawyers gave plaintiff only 10 days to respond before advising their client of its legal options); *Consac Indus., Inc. v. Nutramax Labs, Inc.,* No. 97 Civ. 1155, 1998 WL 229255, at \*3-4 (E.D.N.Y. Mar. 31, 1998) (finding reasonable apprehension where letters came from patentee's attorneys and patentee had previously filed three infringement actions to enforce the patent). Conduct that would not create a reasonable apprehension of an infringement action in isolation may create a reasonable apprehension when coupled with other activities. *See Teva Pharm. USA, Inc. v. Pfizer, Inc.,* 395 F.3d 1324, 1333 (Fed.Cir.2005).

Sirius argues that a number of these presumptively threatening factors are present in this case. First, Sirius points to Acacia's recommendation in the March 30, 2005 letter that Sirius "send this matter to outside patent counsel for review." Sirius argues that this reference to outside counsel created a reasonable apprehension of imminent litigation. In making this argument, however, Sirius misconstrues the case law. In all of the cases finding a reasonable apprehension of litigation based on the involvement of outside counsel, the Court focused on the patentee's decision to refer the case to its own outside counsel. *See, e.g., Cargill,* 2002 WL 31426308, at \*4

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 7
Not Reported in F.Supp.2d, 2006 WL 238999 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

(finding reasonable apprehension where all correspondence came from patentee's attorneys); *Consac Indus.,* 1998 WL 229255, at *4 (same); *see also Dataline, Inc. v. MCI Worldcom Network Servs., Inc.,* No. 00 Civ. 1578, 2001 WL 102336, at *4 (S.D.N.Y. Feb. 6, 2001) (finding no reasonable apprehension of litigation where initial letter came from in-house executive). In this case, on the other hand, all correspondence came from Acacia's Chief Operating Officer and General Counsel, an in-house executive. Acacia did not involve outside litigation counsel until after Sirius filed this declaratory judgment action. There is no indication that Sirius's reference to "outside patent counsel" signaled an intent to litigate. The more reasonable interpretation is that Acacia believed that Sirius could benefit from outside review of the patent before entering license negotiations.

**\*6** Second, Sirius points to Acacia's history of defending its patents through infringement litigation. The Federal Circuit has expressly held, however, that the fact that a patentee has aggressively asserted its patent rights against other alleged infringers is not sufficient to create a reasonable apprehension of imminent litigation. *See Teva,* 395 F.3d at 1333 (finding that history of infringement litigation unrelated to subject patent did not create reasonable apprehension of imminent litigation); *Gen-Probe,* 359 F.3d at 1381, 1382 (finding no reasonable apprehension of imminent litigation even though parties had a history of litigation over other patents). Only where the patentee has "demonstrated a readiness and inclination to sue [plaintiff] over its patents" by filing previous infringement actions to enforce the same technology is an apprehension of imminent litigation reasonable. *Kos Pharm., Inc. v. Barr Labs.,*

242 F.Supp.2d 311, (S.D.N.Y.2003) (finding reasonable apprehension where patentee had filed three prior lawsuits against plaintiff to enforce similar patents); *see Arrowhead,* 846 F.2d at 738 (finding reasonable apprehension where, in addition to other factors, the patentee had previously sued another company for infringement of the same patent); *Consac Indus., Inc. v. Nutramax Labs, Inc.,* No. 97 Civ. 1155, 1998 WL 229255, at *3 (E.D.N.Y. Mar. 31, 1998) (finding reasonable apprehension where, in addition to the fact that the patentee had already referred the matter to outside litigation counsel, the patentee had previously filed three infringement actions against other companies to enforce the same technology).

Third, Sirius contends that Acacia's desire to "act quickly" created a reasonable apprehension of imminent litigation. To support this contention, Sirius points to Mr. Berman's March 30, 2005 letter, in which he "provided a 30-day period for response," and his June 17, 2005 e-mail, in which he "provided a '2 week' time limit for Sirius' response to Acacia's infringement charges." (Pl.'s Mem. of Law in Opp'n 15, 16.) Sirius urges the Court to find that this language is identical to the language found by other courts to create a reasonable apprehension of litigation. (*Id.* at 16.) Despite Sirius's urgings, however, its cases do not support the conclusion it urges. Acacia's actual conduct falls well short of "deadlines" imposed by other patent holders. In Sirius's cases, the patentee strongly suggested litigation if the alleged infringer did not respond within a reasonably short period of time. *See Arrowhead,* 846 F.2d at 737 (demanding, within 20 days, a confirmation that all unauthorized practices were discontinued, and threatening that the patentee "had in the past not hesitated to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 8
Not Reported in F.Supp.2d, 2006 WL 238999 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

protect its patent rights whenever appropriate"); *Cargill,* 2002 WL 3146308, at \*1 (advising, in letter sent by patentee's outside litigation counsel, that if alleged infringer did not respond within ten days the authors would "advise [their] client of their legal options"); *Comtec Info. Sys., Inc. v. Monarch Marking Sys., Inc.,* 962 F.Supp. 15, 17 (D.R.I.1997) (finding reasonable apprehension of imminent litigation where patentee threatened, in third letter from outside counsel, that if the alleged infringer did not act promptly, the patentee "will have no choice but to proceed accordingly").

**\*7** No similar language is present in this case. In the March 30, 2005 letter, Mr. Berman states that he "will contact [Sirius] in approximately 30 days to check on the status of this matter and discuss next steps." (Caplan Decl., Ex. A.) Mr. Berman did not threaten legal action at the end of the 30-day period. Instead, he suggests that if he has not heard by then, he will call Sirius. No reasonable observer would find this statement to create an apprehension of immediate litigation. Similarly, in the June 17, 2005 e-mail, Mr. Berman requested that Sirius respond to Acacia's infringement allegations within two weeks. Again, Mr. Berman did not threaten legal action if it did not hear from Sirius at the end of the two-week period. Significantly, even though the parties had not entered license negotiations by the end of the two-week period mentioned in the e-mail, Acacia did not file, or even threaten, an infringement action. This course of events hardly suggests that Acacia intended to sue Sirius in the near future.

Fourth, Sirius contends that Acacia's choice of words in its communications created a reasonable apprehension of imminent litigation. Specifically, Sirius points to

Acacia's reference in the March 30, 2005 letter to "excessive legal costs" and in subsequent correspondence to "contentions," "infringement allegations," "Sirius' defense" and the strength of Acacia's "case," "terms which are universally understood to refer to litigation." (Pl.'s Mem. of Law in Opp'n 16.) The Court is not persuaded by this argument; a reasonable observer would not find Acacia's use of these terms, when read in context, forewarned litigation. Instead, a contextual reading confirms that Acacia was merely "jawboning" in anticipation of license negotiations. Acacia's goal of was a license, not a lawsuit. Taking a position in license negotiations is commercially acceptable behavior and does not create a reasonable apprehension of imminent litigation. *See Cygnus,* 92 F.3d at 1160; *Shell Oil,* 970 F.2d at 889.

Looking at the totality of the circumstances, the Court finds that Acacia's conduct prior to the filing of this declaratory judgment action did not create a reasonable apprehension of litigation. Acacia did not involve outside patent counsel, threaten Sirius's customers with infringement if it continued using Sirius's service, sue other alleged infringers to enforce the 610 patent, or use language that would suggest imminent litigation. To the contrary, Acacia repeatedly signaled an intent to avoid litigation in favor of discussions between the parties. Admittedly, Acacia pressed for license negotiations, but "the reasonable apprehension of suit test requires more than the nervous state of mind of a possible infringer; it requires that the objective circumstances support such an apprehension" *Cygnus,* 92 F.3d at 1160 (internal quotation marks omitted). The Court finds no such circumstances in this case. Acacia's mere attempts to license the 610 patent to Sirius, however persistent, did not create a reasonable apprehension of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 9
Not Reported in F.Supp.2d, 2006 WL 238999 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

litigation sufficient to invoke the jurisdiction of this Court under the Declaratory Judgment Act.

CONCLUSION

**\*8** The Court finds that Acacia's conduct prior to the filing of this declaratory judgment action did not create a reasonable apprehension of imminent litigation. Since no actual controversy existed, the Court does not have subject matter to entertain this action pursuant to the Declaratory Judgment Act. Accordingly, Acacia's motion to dismiss the complaint for lack of subject matter jurisdiction is GRANTED. The Clerk of Court is directed to enter judgment and close out this case.
SO ORDERED

S.D.N.Y.,2006.
Sirius Satellite Research Inc. v. Acacia Research Corp.
Not Reported in F.Supp.2d, 2006 WL 238999 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3280894 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Oct. 31, 2005)
• 1:05cv07495 (Docket) (Aug. 24, 2005)
• 2005 WL 3280890 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R.CIV.P. 12 (b) (1) and 12(b)(6) (2005)
• 2005 WL 3280892 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Dismiss Plaintiff's Complaint

Pursuant to Fed. R.CIV.P. 12 (b) (1) and 12(b)(6) (2005)
• 2005 WL 3654917 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(B)(1) for Lack of Subject Matter Jurisdiction (2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.