## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COXCOM, INC.

      Plaintiff,

    v.

REMBRANDT TECHNOLOGIES, LP

      Defendant.

C.A. No.  06-721-GMS

---

## REMBRANDT TECHNOLOGIES, L.P.'S (1) OPPOSITION TO COXCOM'S MOTION TO ENJOIN DEFENDANT FROM PROCEEDING WITH THE TEXAS ACTION AND (2) REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(b)(1)

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

George Pazuniak (# 478)
Kevin M. Baird (# 4219)
James M. Lennon (# 4570)
AnnaMartina Tyreus (# 4771)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Tel:  (302) 252-4324
Fax:  (302) 661-7725
kbaird@wcsr.com

*Counsel for Rembrandt Technologies, LP*

Dated:  March 5, 2007

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................1

SUMMARY OF THE ARGUMENT ...............................................................................1

ARGUMENT ...................................................................................................................2

REMBRANDT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS ...............................2

I.    CoxCom is Asking This Court to Assert Federal Jurisdiction on the Basis of
      Speculation and the Wrong Legal Standard.........................................................2

      A.    CoxCom Has Not Proven Objectively Reasonable Apprehension of An
            Imminent Infringement Suit On The '903 Patent When It Filed This
            Action..........................................................................................................2

            1.    Rembrandt's earlier suits against Time Warner and Cablevision,
                  which included the '903 patent, did not create a case or
                  controversy with CoxCom over the '903 patent ...........................3

            2.    The connection to Rembrandt's other earlier lawsuits (the so-called
                  Rembrandt I litigation) is even more attenuated...........................5

            3.    CoxCom has not shown how the nature of Rembrandt's business
                  could convert an otherwise non-justicible case into a justicible one ..........5

            4.    CoxCom's reliance on knowledge acquired *after* it filed this
                  lawsuit is irrelevant as a matter of law........................................7

      B.    *MedImmune* Did Not Create A New Jurisdictional Standard And Has No
            Bearing Here ...............................................................................................8

II.   In Any Event, Even If This Court Could Exercise Jurisdiction, It Should Decline
      To Do So In Light Of The Pending Texas Action ...............................................10

RESPONSE IN OPPOSITION TO COXCOM'S MOTION TO ENJOIN  REMBRANDT
FROM PROCEEDING WITH THE TEXAS ACTION..............................................12

I.    CoxCom Overstates And Misapplies The First-Filed Doctrine.........................12

      A.    CoxCom Misstates that the Other Four Patents in Texas are Subject to
            Compulsory Counterclaims in This Delaware Action ...........................13

B.    CoxCom Incorrectly Relies On, and Then Misstates, Third Circuit Law in Support of its First-Filed Argument.....................................................................13

C.    The First-Filed Doctrine Is Inapplicable Here Because The Two Cases Involve Different Parties and Different Patents.......................................................14

II.    Enjoining the Texas Action Would Frustrate Rather Than Foster Judicial Efficiency And Would Prejudice Rembrandt and Charter ................................................16

CONCLUSION..............................................................................................................................17

**TABLE OF AUTHORITIES**

Page

**Cases**

*Angiodynamics, Inc. v. Diomed Holdings, Inc.*,
    2006 WL 2583107 (D. Del. Sept. 7, 2006) ....................................................... 6

*APV North America, Inc. v. Sig Simonazzi N. Am., Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002) .................................................................. 15

*Bamdad Mechanic Co., Ltd. v. United Technologies Corp.*,
    109 F.R.D. 128 (D. Del. 1985) .......................................................................... 15

*Bayer Bioscience N.V. v. Monsanto Co.*,
    2003 WL 1565864 (D. Del. 2003) (GMS) .................................................. 14, 15

*Black & Decker Inc. v. Robert Bosch Tool Corp.*,
    371 F. Supp. 2d 965 (N.D. Ill. 2005) .................................................................. 5

*Crosley Corp. v. Hazeltine Corp.*,
    122 F.2d 925 (3d Cir. 1941) .............................................................................. 14

*Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*,
    130 F.2d 474 (3d Cir. 1942) .............................................................................. 14

*eBay, Inc. v. MercExchange, LLC*,
    126 S. Ct. 1837 (2006) ........................................................................................ 6

*EEOC v. University of Pa.*,
    850 F.2d 969 (3d Cir. 1988) .............................................................................. 14

*EMC Corp. v. Norand Corp.*,
    89 F.3d 807 (Fed. Cir. 1996) ............................................................................. 10

*Fairplay Electric Cars, LLC v. Textron Innovations, Inc.*,
    431 F.Supp.2d 491 (D. Del. 2006) ...................................................................... 6

*Gen-Probe Inc. v. Vysis, Inc.*,
    359 F.3d 1376 (2004) .......................................................................................... 9

*Indium Corp. of America v. Semi-Alloys, Inc.*,
    781 F.2d 879 (Fed. Cir 1985) ........................................................................ 3, 4

*Jervis B. Webb Co. v. S. Sys., Inc.*,
    742 F.2d 1388 (Fed. Cir. 1984) .......................................................................... 7

*Kerotest Mfg. Co. v. C-O-Two Fire Eqpmt. Co.,*
　　189 F.2d 31 (3d Cir. 1951), *aff'd at* 342 U.S. 180 (1952) ................................. 14

*Kewanee Oil Co. v. M & T Chemicals, Inc.,*
　　315 F. Supp. 652 (D. Del. 1970) ...................................................................... 15

*Laboratory Corp. of Am. Holdings v. Chiron Corp.,*
　　384 F.3d 1326 (Fed. Cir. 2004) ....................................................................... 13

*Lang v. Pacific Marine & Supply Co.,*
　　895 F.2d 761, 764 (Fed. Cir. 1990) ................................................................... 7

*Matsushita Battery Indus. Co., Ltd. v. Energy Conversion Devices, Inc.,*
　　1996 WL 328594 (D. Del., Apr. 23, 1996) ........................................................ 15

*MedImmune, Inc. v. Genentech, Inc.,*
　　549 U.S. ___, 127 S. Ct. 764 (2007) .................................................................. 1

*Metallgesellschaft AG v. Foster Wheeler Energy Corp.,*
　　143 F.R.D. 553 (D. Del. 1992) ......................................................................... 13

*Millipore Corp. v. University Patents, Inc.,*
　　682 F. Supp. 227 (D. Del. 1987) ........................................................................ 7

*Moore U.S.A. Inc. v. The Standard Register Co.,*
　　2001 WL 34076423 (N.D.N.Y. Aug. 28, 2001) ................................................. 5

*Peregrine Surgical, Ltd. v. Synergentics, USA, Inc.,*
　　2006 WL 3857492 (E.D. Pa. Dec. 29, 2006) ..................................................... 5

*Positec USA Inc. v. Milwaukee Electric Tool Corp.,*
　　2006 WL 2726728 (D. Del. 2006) ...................................................................... 7

*Progressive Tech. in Lighting Inc. v. Lumatech Corp.,*
　　45 U.S.P.Q. 2d 1928 (W.D. Mich. 1998) .......................................................... 5

*Rohm & Haas Co. v. Brotech Corp.,*
　　770 F. Supp. 928 (D. Del. 1991) ...................................................................... 15

*Ryko Mnfct. Co. v. Delta Serv. and Equip. Corp.,*
　　28 U.S.P.Q. 2d 1558 (E.D. La. 1993) ................................................................ 5

*Serco Serv. Co. v. Kelly Co., Inc.,*
　　51 F.3d 1037 (Fed. Cir. 1995) ......................................................................... 13

*Shell Oil Co. v. Amoco Corp.,*
　　970 F.2d 885 (Fed.Cir.1992) ............................................................................. 3

*Sirius Satellite Research, Inc. v. Acacia Research Corp.*,
   2006 WL 238999 (S.D.N.Y. Jan. 30, 2006) ...................................................................... 6

*Southern Const. Co. v. Pickard*,
   371 U.S. 57 (1962) ......................................................................................................... 13

*Teva Pharm. USA, Inc. v. Pfizer, Inc.*,
   395 F.3d 1324 (Fed. Cir. 2005) ............................................................................. 2, 3, 6, 8

*Thales Airborn Sys., S.A. v. Universal Avionics Sys. Corp.*,
   2006 WL 1749399 (D. Del. 2006) ................................................................................... 16

*Triangle Conduit & Cable Co. v. National Electric Products Corp.*,
   125 F.2d 1008 (3d Cir. 1942) .......................................................................................... 14

*West Interactive Corp. v. First Data Res., Inc.*,
   972 F.2d 1295 (Fed. Cir. 1992) ..................................................................................... 3, 6

*WS Packaging Group, Inc. v. Global Commerce Group, LLC*,
   2007 WL 205559 (E.D. Wis. Jan. 24, 2007) .................................................................... 9

**Statutes**

28 U.S.C. § 2201(a) ................................................................................................................ 9

**Rules**

Fed. R. Civ. P. 13(a) ............................................................................................................. 15

v

**INTRODUCTION**

After Rembrandt moved to dismiss this declaratory judgment action (D.I. 8), CoxCom filed an answering brief. CoxCom also filed its own motion to enjoin Rembrandt from proceeding with a multi-patent Texas action, which Rembrandt filed against CoxCom and another company the same day this action was filed. (D.I. 12). This brief is both a reply brief in support of Rembrandt motion to dismiss and a response to CoxCom's motion to enjoin Rembrandt from proceeding with the Texas action.

**SUMMARY OF THE ARGUMENT**

1.     CoxCom bears the burden of establishing that an actual case or controversy existed between it and Rembrandt with respect to the '903 patent prior to CoxCom filing this action on November 30, 2006. To meet that burden, CoxCom must show that it had an *objectively reasonable* apprehension of an imminent infringement suit by Rembrandt when it filed this action. Looking at the totality of circumstances known at the time this suit was filed, it was not *objectively reasonable* for CoxCom to anticipate imminent litigation with respect to the '903 patent. CoxCom is reduced to arguing an absurdity – that it reasonably apprehended it would be sued on one of the five so-called "Rembrandt II patents" (the '903 patent) but not the other four. CoxCom's reliance on events that occurred *after* the filing of its complaint – events of which it had no knowledge when it prepared and filed this lawsuit – are irrelevant as a matter of law, because the inquiry is limited to what was known at the time CoxCom filed this action.

CoxCom alternatively urges the Court to abandon the Federal Circuit's reasonable-apprehension standard on the basis of dicta in a footnote in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. ___, 127 S. Ct. 764 (2007). *MedImmune* has no bearing on this case. Indeed, CoxCom's reading of *MedImmune* was recently rejected by another federal court.

1

Even if CoxCom could establish jurisdiction, this Court should decline to exercise it as a matter of discretion in light of the pending multi-patent action in Texas in which CoxCom and Charter are defendants.

2.     In support of its extraordinary motion to enjoin Rembrandt from proceeding with the Texas action, CoxCom invokes the "first-filed" doctrine.  However, CoxCom relies on inapplicable law, inapposite cases, and its argument is based on a false factual premise that the Texas action and this action are the "same lawsuit."  The Texas action includes more parties, patents, and issues than the single patent, single party case here.  Given these differences, enjoining Rembrandt's Texas action against CoxCom on the '903 patent would frustrate rather than foster judicial economy.  Accordingly, CoxCom's motion should be denied.

<u>**ARGUMENT**</u>

Rembrandt first replies to CoxCom's answer to Rembrandt's motion to dismiss. Rembrandt next responds to CoxCom's motion to enjoin Rembrandt from proceeding with the Texas action.

<u>**REMBRANDT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**</u>

**I.     CoxCom is Asking This Court to Assert Federal Jurisdiction on the Basis of Speculation and the Wrong Legal Standard**

**A.     CoxCom Has Not Proven Objectively Reasonable Apprehension of An Imminent Infringement Suit On The '903 Patent When It Filed This Action**

The issue is straightforward.  Did CoxCom reasonably apprehend an imminent lawsuit by Rembrandt on the '903 patent in late November 2006?  *See Teva Pharm. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324 (Fed. Cir. 2005).  This jurisdictional issue is entirely independent of CoxCom's subjective views, because the Court must apply an "objective test to the facts at the time the complaint is filed."  *West Interactive Corp. v. First Data Res., Inc.*, 972 F.2d 1295, 1297

(Fed. Cir. 1992); *see also, Teva*, 395 F.3d at 1333 ("[t]he standard is objective..."); *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887-88 (Fed.Cir.1992) ("[t]he test is an objective one..."). "A purely subjective apprehension of an infringement suit is insufficient to satisfy the actual controversy requirement." *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir 1985). CoxCom, of course, bears the burden of persuasion. *Shell*, 970 F.2d at 887. As explained below, it has not sustained that burden.

> **1.     Rembrandt's earlier suits against Time Warner and Cablevision, which included the '903 patent, did not create a case or controversy with CoxCom over the '903 patent**

CoxCom relies mainly on Rembrandt's two complaints against Time Warner and Cablevision in the Fall of 2006 to support jurisdiction. CoxCom says that it "could read the writing on the wall" that "it was just a matter of time" before it would be sued on the '903 patent. (D.I. 13 at 5). Its logic flows like this:

- "Rembrandt sued Time Warner and Cablevision for patent infringement based on their providing high speed internet products and services through the use of DOCSIS-compliant equipment";

- "CoxCom provides substantially the similar services through DOCSIS-compliant equipment";

- Therefore, "it was just a matter of time before Rembrandt asserted the same patents against CoxCom."

CoxCom's logic does not demonstrate a legally-mandated objective basis for any apprehension.

First, the initial premise cannot withstand scrutiny. Rembrandt's earlier complaints *did not even mention* the DOCSIS standard. Therefore, an objective observer could not *reasonably* anticipate from those earlier complaints that Rembrandt was embarking on imminent litigation against all DOCSIS-using members of the industry. *See West*, 972 F.2d at 1298 (defendant's

3

litigation against unrelated third parties did not give plaintiff an objective reason to fear litigation); *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985).

Second, CoxCom's conclusion is a *non sequitur.* It assumes a patent owner necessarily sues the full universe of all who are subject to suit. But that is an unwarranted assumption. Selective patent enforcement is not uncommon. Indeed, selective litigation makes perfect sense: for example, the first litigation, with or without a final judgment, may lead to settlement which then becomes the template for other agreements, without having to undertake the cost and burden of litigation. Of course, the patent owner may choose to sue everyone at once. But that is a choice. It is not required by law.

Third, CoxCom's logic cannot withstand objective analysis when one contrasts this action to the earlier complaints. If the earlier complaints against Time Warner and Cablevision were the "writing on the wall," as CoxCom asserts, then presumably CoxCom would have based this declaratory judgment action on *all* the patents asserted in those other complaints that were not subject to pending litigation between CoxCom and Rembrandt. It did not.

For example, the complaint against Time Warner asserted five patents. CoxCom suggests all of them relate to DOCSIS. Yet CoxCom filed this declaratory judgment action to test the validity of only *one* of the five patents in the Time Warner complaint, the '903 patent (the others are '761, '234, '159, and '444). CoxCom's argument is thus reduced to this: after reading the Time Warner complaint, CoxCom did *not* reasonably apprehend being sued on *four* of the five patents but *did* reasonably apprehend being sued on one. This selective-apprehension theory makes no sense. If, as CoxCom contends, the Time Warner action led CoxCom to reasonably apprehend that "it was just a matter of time before Rembrandt asserted the *same patents* against CoxCom," *id.* at 5 (emphasis added), then presumably CoxCom would have

4

included the *same patents* – all of them – in this declaratory judgment action.  It did not.  Its

failure to do so undermines its argument that it reasonably apprehended a copy-cat action based

on the earlier complaints Rembrandt filed against others.

### 2. The connection to Rembrandt's other earlier lawsuits (the so-called Rembrandt I litigation) is even more attenuated

CoxCom also asserts that Rembrandt previously sued industry members on the so-called

"Rembrandt I patents."  But those litigations did not involve the '903 patent.  Thus, the

connection between those litigations and any apprehension of suit on the '903 patent is even

more attenuated.  Indeed, as a matter of established law, a history of litigation between two

parties does not give rise to declaratory judgment jurisdiction on *other* patents owned by the

plaintiff.  *Peregrine Surgical, Ltd. v. Synergentics, USA, Inc*., 2006 WL 3857492, *4 (E.D. Pa.

Dec. 29, 2006); *Moore U.S.A. Inc. v. The Standard Register Co.*, 2001 WL 34076423 (N.D.N.Y.

Aug. 28, 2001); *Black & Decker Inc. v. Robert Bosch Tool Corp.*, 371 F. Supp. 2d 965 (N.D. Ill.

2005); *Progressive Tech. in Lighting Inc. v. Lumatech Corp*., 45 U.S.P.Q. 2d 1928, 1933 (W.D.

Mich. 1998); *Ryko Mnfct. Co. v. Delta Serv. and Equip. Corp*., 28 U.S.P.Q. 2d 1558 (E.D. La.

1993).

### 3. CoxCom has not shown how the nature of Rembrandt's business could convert an otherwise non-justicible case into a justicible one

If the earlier litigations do not suffice to create a reasonable apprehension of imminent

suit on the '903 patent in late November 2006, it is difficult to understand how Rembrandt's

alleged status as a non-practicing entity ("NPE") with litigation history changes the outcome.  At

most, Rembrandt's NPE status and litigation history create a presumption that Rembrandt can be

expected vigorously to protect its intellectual property.  As the cases cited in Rembrandt's

opening brief show, however, the fact that a company vigorously protects its intellectual property

is legally insufficient to create a reasonable apprehension of imminent litigation.[1]    CoxCom responds that none of the cited cases involve "NPEs with a history of filing infringement actions on the same patents and on the same technology." (D.I. 13 at 12). Even if that were true, it is irrelevant. Those cases hold that a company does not subject itself to preemptive declaratory judgment litigation by being a vigorous protector of its intellectual property. Therefore, the cited cases demonstrate that Rembrandt's status as an NPE or a vigorous protector of its patent rights does not establish legal apprehension.

CoxCom, which bears the burden of establishing jurisdiction, does not cite any authority that a company's reputation as a protector of intellectual property tips the scale in favor of a case or controversy. Nor does it cite any authority where a court found an actual controversy on the basis of NPE status. CoxCom misleadingly cites Justice Kennedy's concurring opinion in *eBay, Inc. v. MercExchange, LLC*, a case concerning the test used for granting injunctive relief in patent cases, for the proposition that some companies enforce their patent rights but do not produce or sell goods. 126 S. Ct. 1837, 1842 (2006). But Justice Kennedy's only point was that in some circumstances it may be warranted to award damages to the patent owner without injunctive relief. He was not commenting on jurisdiction or the justicibility of declaratory judgment actions, which, of course, were not implicated in *eBay*.

Furthermore, CoxCom's NPE argument proves too much. Despite Rembrandt's NPE status and litigation history, CoxCom filed this declaratory judgment action *only* with respect to a single patent, the '903 patent. Despite Rembrandt's NPE status and litigation history, CoxCom apparently did *not* reasonably anticipate being sued by Rembrandt on the bulk of the so-called

---

[1] *See Teva*, 395 F.3d at 1333 (Fed. Cir.); *West*, 972 F.2d at 1298 (Fed. Cir.); *Angiodynamics, Inc. v. Diomed Holdings, Inc.*, 2006 WL 2583107 at *3 (D. Del. Sept. 7, 2006); *Fairplay Electric Cars, LLC v. Textron Innovations, Inc.*, 431 F.Supp.2d 491, 493 (D. Del. 2006); *Sirius Satellite Research, Inc. v. Acacia Research Corp.*, 2006 WL 238999 at *6 (S.D.N.Y. Jan. 30, 2006).

Rembrandt II patents.  If Rembrandt's NPE status and litigation history did not trigger a reasonable apprehension with respect to the bulk of the Rembrandt II patents, then it is implausible that its NPE status and litigation history led to a reasonable apprehension of litigation over the '903 patent.  Yet that is the position advanced by CoxCom.

### 4.    CoxCom's reliance on knowledge acquired *after* it filed this lawsuit is irrelevant as a matter of law

CoxCom also relies on events that occurred *after* it filed this action—such as the fact that Rembrandt filed the Texas complaint against CoxCom on Rembrandt's second group of patents. But this argument flouts the established rule that "the court must test the existence of jurisdiction *as of the time the complaint was filed*," based on what an objective observer would have concluded at the time the complaint was filed, not on the basis of events occurring *after* the complaint was filed.  *Positec USA Inc. v. Milwaukee Electric Tool Corp.*, 2006 WL 2726728 (D. Del. 2006) (emphasis added) (citing *Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990)).  "Activities that occurred subsequent to the filing of the complaint may not be considered since jurisdiction, if it exists, must be established as of the date of the filing of the declaratory judgment action." *Millipore Corp. v. University Patents, Inc.*, 682 F. Supp. 227, 231 (D. Del. 1987) (citing *Jervis B. Webb Co. v. S. Sys., Inc.*, 742 F.2d 1388, 1398 (Fed. Cir. 1984)). CoxCom's attempt to interpose what it did not know when it filed this action (and what a reasonable company in its shoes could not have known) must be rejected.

CoxCom's argument is flawed for other reasons.  While it is true Rembrandt ultimately sued CoxCom (and Charter) on November 30, 2006—after CoxCom decided to file this action— that complaint did *not* even include a claim under the '903 patent, which is the exclusive subject of this declaratory judgment action.  Instead, Rembrandt's complaint against CoxCom was limited to *other* patents.  Thus, far from supporting CoxCom's position that it reasonably

anticipated a lawsuit on the '903 patent, the November 30 complaint confirms that this '903-patent-declaratory-judgment action was not well founded. CoxCom has not established that a controversy existed between it and Rembrandt over the '903 patent until CoxCom filed this lawsuit.

In this connection, CoxCom also relies on Rembrandt's even-later decision to amend its complaint to include the '903 patent. CoxCom contends the amendment could not have been a reaction to notice that this declaratory judgment action had been filed the previous day. But this is sheer, and incorrect, speculation.

*     *     *

In the final analysis, CoxCom has not met its burden of establishing a reasonable apprehension of imminent litigation over the '903 patent (much less over the '903 patent alone). Its reasonable-apprehension argument is also undermined by this fact: none of *the other* cable companies (namely Charter and Comcast) filed a declaratory judgment action in apprehension of litigation on the Rembrandt II patents, even though the other companies had access to the same information as CoxCom did (e.g., the Time Warner complaint, Rembrandt's NPE status).

**B.**     ***MedImmune* Did Not Create A New Jurisdictional Standard And Has No Bearing Here**

*MedImmune* has no bearing in this case. CoxCom urges that dicta in footnote 11 of *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. ___, 127 S. Ct. 764 (2007) suggests an intent to create a more permissive standard for establishing federal jurisdiction than the existing reasonable apprehension test reflected in *Teva*. CoxCom is wrong for several reasons. First, *MedImmune* decided a narrow issue: whether a patent licensee may bring a declaratory judgment action if it operates under a license agreement. As the Supreme Court characterized it, the issue was

8

> whether Article III's limitation of federal courts' jurisdiction to "Cases" and "Controversies," reflected in the "actual controversy" requirement of the Declaratory Judgment Act, 28 U.S.C. § 2201(a), requires a patent licensee to terminate or be in breach of its license agreement before it can seek a declaratory judgment that the underlying patent is invalid, unenforceable, or not infringed.

*Id.* at 767.

In deciding that issue, the Supreme Court rejected the *per se* rule of *Gen-Probe Inc. v. Vysis, Inc.*, 359 F.3d 1376 (2004), and held only that a licensee need not cease its royalty payments to establish declaratory-judgment jurisdiction to test the validity of the patent or whether it was infringed.

Second, the Court never suggested that the reasonable apprehension test was erroneous. The footnote discussed only whether a justicible controversy exists where the declaratory-judgment plaintiff's self-avoidance of imminent injury was effectively *coerced*. That has nothing to do with this case. CoxCom does not contend it was coerced to take action that avoided a lawsuit by Rembrandt. And, unlike the plaintiff in *MedImmune*, CoxCom was not Rembrandt's licensee.

Third, CoxCom's overly broad reading of the *MedImmune* footnote dicta has already been rejected by the only subsequent court to address this issue. *See WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 2007 WL 205559 (E.D. Wis. Jan. 24, 2007). In that declaratory judgment action, the plaintiff argued, as CoxCom does here, that *MedImmune* "set forth a new jurisdictional test for declaratory judgment actions." *Id.* at *2, fn.3. The court rejected the argument, *id.* ("I do not read *MedImmune* so broadly."), and applied the Federal Circuit's reasonable-apprehension test. *Id.* at *3:

> In the wake of *MedImmune*, the Federal Circuit may reexamine its "reasonable apprehension of suit" test for declaratory judgment jurisdiction in patent cases, ***at least insofar as it applies the test to licensees***. But whether or not it does will not affect the conclusion reached here.

9

*Id*. at \*4 (emphasis added).  The court was correct.  *MedImmune*'s footnote dicta did not purport to scuttle the reasonable apprehension test.

Finally, it is important to note that the reasonable apprehension test was established by the courts to effectuate the "case or controversy" requirement of Article III of the Constitution. The Supreme Court most certainly did not dismiss the existing Constitutional standard, and adopt the standardless test championed by CoxCom:  that anyone can file a declaratory judgment action at any time in an Article III court based on a "mere desire to avoid the threat of a patent." (D.I. 13 at 9).  Certainly, this proposed test appears nowhere in *MedImmune*.  It is not so much a test as it is the absence of one – a dispensing with the requirement of an actual case or controversy and permitting preemptive litigation on demand.  This standard surely would be rejected by the Federal Circuit and should be rejected here.

**II.    In Any Event, Even If This Court Could Exercise Jurisdiction, It Should Decline To Do So In Light Of The Pending Texas Action**

CoxCom acknowledges that even if declaratory judgment jurisdiction exists, a court may in its discretion decline jurisdiction and dismiss the case.  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996).  In this case, that disposition would best foster judicial economy, minimize piecemeal litigation, and lessen the prospect of inconsistent judgments.

The entire patent dispute between Rembrandt and CoxCom regarding *all* so-called Rembrandt II patents is pending in Texas.  CoxCom will have a full and fair opportunity to litigate issues relating to the '903 patent in that forum.  Allowing a parallel, overlapping action to proceed in Delaware with respect to one (and only one) of the patents at issue in the Texas case (the '903 patent) will waste judicial resources and risk inconsistent judgments on the '903 patent, one in Texas, the other in Delaware.  As CoxCom concedes in its brief (at p. 19), "[t]here is no basis for simultaneous conduct . . . in two different courts."  Rembrandt agrees.

10

CoxCom argues that its motion to dismiss the Texas action somehow weighs in favor of this Court exercising jurisdiction. It does not. CoxCom's argument assumes it will prevail on the merits of its Texas motion. But the merits of that motion are not before this Court, and this Court cannot rightly predict on this record what will happen in Texas – no more than the Texas court could predict how this Court will rule on the pending motions. Moreover, in the event the Texas court were to dismiss the action against CoxCom, Rembrandt has the right to re-file its multi-patent complaint against CoxCom, raising the multiple patents, in any forum where venue and personal jurisdiction properly lie, and that forum very well may not be Delaware. Because Rembrandt may re-file its complaint elsewhere, outside Delaware, if the Texas suit against CoxCom is dismissed, dismissal of that action will not eliminate duplicative litigation between Rembrandt and CoxCom over the so-called Rembrandt II patents if this Delaware action persists.

Additionally, the Texas action against CoxCom includes Charter as a defendant with respect to the '903 patent. Consequently, the validity of the '903 patent – the same issue CoxCom is asking this Court to adjudicate – will be litigated in the pending Texas case even if CoxCom is dismissed for lack of personal jurisdiction.

In the final analysis, it is evident that CoxCom's Delaware action does nothing to further the purposes of the Declaratory Judgment Act. Entertaining this case would waste judicial resources and provide no benefit. Accordingly the Court, in exercise of its discretion, may and should dismiss this declaratory judgment action, in the event the Court determines that CoxCom has established subject matter jurisdiction. If the Court declines to exercise jurisdiction, then CoxCom's separate motion to enjoin Rembrandt from proceeding with the Texas action against CoxCom will be moot. That separate motion is discussed immediately below.

11

## RESPONSE IN OPPOSITION TO COXCOM'S MOTION TO ENJOIN REMBRANDT FROM PROCEEDING WITH THE TEXAS ACTION

Based on precisely the same policy rationale that should dictate *declining* jurisdiction – wasted resources, piecemeal litigation, inconsistent judgments – CoxCom urges this Court to wrest control of the '903 patent litigation away from Texas by enjoining Rembrandt from proceeding with the Texas action against CoxCom. However, enjoining the broader Texas action in favor of this more limited action would be inefficient and wasteful, and result in prejudice to Rembrandt. CoxCom's motion should be denied.

CoxCom's extraordinary motion is based on a false factual premise that this action is the "same lawsuit" as the Texas action. (D.I. 13 at 19). Not even close. First, the Texas action features another party, Charter Communications, which is not a party to this action (and which could not be made a party by CoxCom's motion). Second, the Texas action is a multi-patent affair. At issue there are *five* Rembrandt patents. The five patents, which CoxCom refers to as the "Rembrandt II patents," are the '761, '234, '159, '444, and '903 patents. By contrast, this declaratory judgment action has only one patent, the '903. CoxCom does not and cannot plausibly dispute that the other four patents are independent of the '903 patent. They do not have common inventors, issued years after the '903, and they all claim different inventions than the '903 patent.

## I.    CoxCom Overstates And Misapplies The First-Filed Doctrine

CoxCom contends the Texas action should yield to this action because the Delaware action was filed first – four hours earlier, on the same day. Applying the first-filed doctrine here would be contrary to law and policy.

12

**A.     CoxCom Misstates that the Other Four Patents in Texas are Subject to Compulsory Counterclaims in This Delaware Action**

CoxCom errs as a matter of law in arguing that Rembrandt must assert the four additional patents currently pending in the Texas action as counterclaims in this case.  It is well settled that counterclaims on unrelated patents are not compulsory; but are permissive.  *Metallgesellschaft AG v. Foster Wheeler Energy Corp.*, 143 F.R.D. 553, 558 (D. Del. 1992).  It is simply wrong for CoxCom to argue that there is "no question that the Texas action involves only compulsory counterclaims that should be filed here."  (See D.I. 13 at 21).[2]  The four other patents in the Texas action claim entirely different inventions.  Thus, even if the Delaware action were to go forward on the '903 patent, the four remaining patents in dispute between the parties would not be litigated here.

**B.     CoxCom Incorrectly Relies On, and Then Misstates, Third Circuit Law in Support of its First-Filed Argument**

CoxCom erroneously relies on Third Circuit authority in support of its first-filed argument.  The "first-filed" question "raises the issue of national uniformity in patent practice."  *Serco Serv. Co. v. Kelly Co., Inc.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995).  Thus, the issue is controlled by Federal Circuit authority.  *Id.  See also Laboratory Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1331 (Fed. Cir. 2004) ("[W]e hold that injunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different district courts are reviewed under the law of the Federal Circuit.").

CoxCom argues that a district court has a "duty" to enjoin a second filed, citing only three Third Circuit cases decided during the 1940s:  *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d

---

[2] CoxCom cites a 45 year old Supreme Court decision in support this proposition.  *See Southern Const. Co. v. Pickard*, 371 U.S. 57 (1962).  However, *Southern* had nothing to do with patent law and was determined not to involve a compulsory counterclaim.  *Southern* merely resolved an unusual circumstance where two separate suits relating to two separate projects instituted under the Miller Act implicated a counterclaim relating to both suits.

925, 930 (3d Cir. 1941), *Crosley Corp. v. Westhinghouse Elec. & Mfg. Co.*, 130 F.2d 474, 475 (3d Cir. 1942), and *Triangle Conduit & Cable Co. v. National Electric Products Corp.*, 125 F.2d 1008, 1009 (3d Cir. 1942).[3]

However, the Third Circuit itself, as affirmed by the Supreme Court, has held that these same three cases cited by CoxCom establish no rule or "duty" that a second-filed action must be enjoined in favor of the earlier-filed one. *Kerotest Mfg. Co. v. C-O-Two Fire Eqpmt. Co.*, 189 F.2d 31, 34 (3d Cir. 1951), *aff'd at* 342 U.S. 180 (1952). *Kerotest* held that "[n]either *Crosley* nor *Westinghouse* nor *Triangle* was intended to lay down a rule of thumb" but instead was merely "designed as an aid to the parties and to effect the ends of justice." *Id.* The Supreme Court agreed, holding that "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." 342 U.S. at 183.

The Supreme Court thus rejected the type of "rigid mechanical" rule that CoxCom is proposing here. This Court, too, has rejected a rigid application of the doctrine. *See Bayer Bioscience N.V. v. Monsanto Co.*, 2003 WL 1565864, *1 (D. Del. 2003) (GMS). In *Bayer* this court transferred a first-filed action in favor of a second-filed action where (as here) the second filed action was later "only by several hours."

### C. The First-Filed Doctrine Is Inapplicable Here Because The Two Cases Involve Different Parties and Different Patents

This action involves only Rembrandt and CoxCom and only the '903 patent; while the Texas action also involves an independent entity, Charter, and four additional patents. CoxCom

---

[3] The other Third Circuit case cited by CoxCom actually affirmed the district court's discretionary decision *not* to invoke the first-filed rule. *EEOC v. University of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988) ("District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule."). Thus, *EEOC* hardly supports the categorical rule or "duty" championed by CoxCom in this case.

14

simply misstates the facts when it says that "the second-filed Texas action involves the same parties, the same patents and the same accused products and services."  (D.I. 13 at 21-22).

This Court has refused to enjoin a subsequent action, despite the first-filed rule, where there are additional patents in a second filed action.  *See, e.g.*, *APV North America, Inc. v. Sig Simonazzi N. Am., Inc*., 295 F. Supp. 2d 393 (D. Del. 2002) (the court declined to enjoin the second-filed action, because "the Texas action and the Delaware action are not the same, because they implicate different patents and different technologies.").  This Court has also recognized that the first-filed rule is only applicable where the two cases involve the "same claims" and "serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters."  *Bayer*, 2003 WL 1565864 at *1.  In this case, the Delaware and Texas actions involve different patents and different parties.  The two cases do not involve even remotely the same claims or common matters and the first-filed rule is inapplicable.

The cases cited by CoxCom in support of applying the first-filed rule are inapposite.  In three of the cases the concurrent actions involved the identical parties and identical patents.[4]  That is not the situation here.  The other case cited by CoxCom—*Rohm & Haas Co. v. Brotech Corp*., 770 F. Supp. 928 (D. Del. 1991), is also distinguishable.  Rohm & Haas filed a first action against Brotech alleging infringement of four patents.  Then, over a year later, Brotech filed a complaint against Rohm & Haas in another court bringing Sherman Act, RICO, and common law fraud claims.  The court enjoined the second action solely because Brotech's claims were compulsory counterclaims which, pursuant under Fed. R. Civ. P. 13(a), should have been

---

[4] *Matsushita Battery Indus. Co., Ltd. v. Energy Conversion Devices, Inc*., 1996 WL 328594 (D. Del., Apr. 23, 1996); *Bamdad Mechanic Co., Ltd. v. United Technologies Corp*., 109 F.R.D. 128 (D. Del. 1985). (exact same parties and patents); *Kewanee Oil Co. v. M & T Chemicals, Inc.*, 315 F. Supp. 652 (D. Del. 1970).

brought in the first action. As noted above, as matter of law, the other patents are not compulsory counterclaims in this case.

## II.    Enjoining the Texas Action Would Frustrate Rather Than Foster Judicial Efficiency And Would Prejudice Rembrandt and Charter

Any injunction under the first-filed doctrine could only apply to the '903 patent and only to CoxCom. *See Thales Airborn Sys., S.A. v. Universal Avionics Sys. Corp.*, 2006 WL 1749399, *4 (D. Del. 2006) (enjoining second filed suit only with respect to the patents in common between the suits). The first-filed doctrine, even if rigidly applied, cannot plausibly enjoin *other* claims or parties not part of the first-filed suit. Thus, even if the first-filed doctrine were applied, Rembrandt would proceed in the Texas action against CoxCom on the four other patents and against Charter on all five patents, including the '903 patent. Therefore, enjoining the Texas action would not prevent duplicative litigation as CoxCom suggests. Rather, it would result in piecemeal and duplicative litigation, wasting resources for no good reason. The only way to prevent that wastefully duplicative scenario is to dismiss this action – a point which counsels in favor of declining jurisdiction if this Court concludes that CoxCom has satisfied the actual case or controversy requirement.

16

## CONCLUSION

Rembrandt's Motion to Dismiss should be granted.  Granting that motion renders moot CoxCom's separate Motion to Enjoin.  In any event, CoxCom's motion to enjoin Rembrandt from proceeding with the Texas action should be denied.

**WOMBLE CARLYLE SANDRIDGE  & RICE, PLLC**

 /s/ Kevin M. Baird            ____
George Pazuniak (# 478)
Kevin M. Baird (# 4219)
James M. Lennon (# 4570)
AnnaMartina Tyreus (# 4771)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Tel:  (302) 252-4324
Fax:  (302) 661-7725
kbaird@wcsr.com

*Counsel for Rembrandt Technologies, LP*

Dated:  March 5, 2007

17

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and caused the same to be served on the plaintiff at the following address in the manner indicated below:

**VIA HAND DELIVERY AND EMAIL**

Rodger D. Smith II (# 3778)
Leslie A. Polizoti (# 4299)
Chase Manhattan Centre
1201 North Market Street, P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
rsmith@mnat.com
lpolizoti@mnat.com

**VIA EMAIL**

Mitchell G. Stockwell
Kilpatrick Stockton LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, GA 30309
(404) 815-6500
mstockwell@kilpatrickstockton.com

/s/ Kevin M. Baird
Kevin M. Baird (# 4219)