IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COXCOM, INC., | |
| Plaintiff, | |
| v. | C.A. No. 06-721-GMS |
| REMBRANDT TECHNOLOGIES, L.P., | |
| Defendant. | |

**PLAINTIFF COXCOM, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO ENJOIN DEFENDANT FROM PROCEEDING WITH THE TEXAS ACTION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19897-1347
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff CoxCom, Inc.*

OF COUNSEL:

Mitchell G. Stockwell
R. Scott Griffin
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, GA 30309
(404) 815-6500

Tonya R. Deem
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
(336) 607-7485

March 12, 2007

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS ........................................................................................... ii

INTRODUCTION .................................................................................................. 1

ARGUMENT ........................................................................................................ 1

I.     THE FIRST-FILED RULE DOES APPLY ...................................................... 1

     A.     The First-Filed Rule Does Not Require Exactly The Same Patents And Parties. ........................................................................................ 1

     B.     Filing On The Same Day Does Not Prevent Application Of The First-Filed Rule. ..................................................................................... 2

II.     ENJOINING REMBRANDT FROM PROCEEDING WITH THE TEXAS ACTION WILL NOT PREJUDICE REMBRANDT. ........................................... 3

CONCLUSION ...................................................................................................... 4

TABLE OF AUTHORITIES

Page(s)

**Cases**

*APV North Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002)      1

*Bayer Bioscience N.V. v. Monsanto Co.*,
    No. 03-023-GMS, 2003 WL 1565864
    (D. Del. Mar. 25, 2003)      1, 2

*Laboratory Corp. of America Holdings v. Chiron Corp.*,
    384 F.3d 1326 (Fed. Cir. 2004)      3

*Rembrandt Technologies LP v. Adelphia Communications Corp.*,
    No. 1:07-cv-214 (S.D.N.Y. Bankr.)      4

*Rembrandt Technologies LP v. Cablevision Systems Corporation, et al.*,
    C.A. No. 06-635-GMS (D. Del.)      4

**INTRODUCTION**

This is plaintiff CoxCom's Reply Brief in support of its motion to enjoin Rembrandt from proceeding with the Texas Action (D.I. 12).

**ARGUMENT**

I.    **THE FIRST-FILED RULE DOES APPLY.**

    A.    **The First-Filed Rule Does Not Require Exactly The Same Patents And Parties.**

Arguing against "rigid mechanical" application of the first-filed rule (D.I. 15 at 13-14), Rembrandt argues that the rule does not apply here because the parties and patents in this action do not match exactly the parties and patents in the Texas Action (*id.* at 14-15.) Rembrandt is mistaken.

Rembrandt cites *APV North Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393 (D. Del. 2002), for the proposition that this Court requires exactly the same parties and patents in the parallel case before applying the first-filed rule. That is not the holding (or even the dicta) of *APV North America*. The Court in that case held that the first-filed rule did not apply because the second-filed action "involved different technologies and thus, different facts." *Id.* at 397 (citing *Filler v. Lernout*, No. 01-191-SLR, 2001 WL 227079, at *2 (D. Del. Feb. 8, 2002) (holding that additional claims do not render an action "different" for purposes of the first-filed rule)).

Rembrandt also cites *Bayer Bioscience N.V. v. Monsanto Co.*, No. 03-023-GMS, 2003 WL 1565864 (D. Del. Mar. 25, 2003), for the same proposition -- "the first-filed rule is only applicable where the two cases involve the 'same claims'" (D.I. 15 at 15). Again, that is not CoxCom's understanding of the holding of *Bayer* (or the law). Although Rembrandt is correct

that the two actions in *Bayer* involved the same patents, the decision in *Bayer* did not state that this was a requirement for application of the first-filed rule. *See* 2003 WL 1565864, at *1.

This action and the Texas Action involve the same parties (CoxCom and Rembrandt),[1] the same accused activity (providing high-speed internet services), the same accused industry standard (DOCSIS), and at least one of the same patents (the '903 Patent). Moreover, in this action and the Texas Action, all of the patents are directed to the same functionality, operability, and communications step. Specifically, the patents are directed to facilitating communications between a modem, a receiver, and a controller, and to providing high speed internet access through the cable system with cable modems communicating with head-ends. As a result, this Court will be required to resolve the same or substantially similar issues to address the invalidity and non-infringement of the '903 Patent, as those to be addressed for the patents at issue in the Texas Action.

**B.     Filing On The Same Day Does Not Prevent Application Of The First-Filed Rule.**

Citing *Bayer*, Rembrandt argues that the first-filed rule does not apply if the second-filed action was filed on the same day as the first-filed action (D.I. 15 at 14). That is incorrect. Although *Bayer* did transfer the first-filed action, the transfer was not based on the fact that the first-filed action was filed only a few hours before the second-filed action. 2003 WL 1565864, at *1 ("[T]his court does not dispute that this action is first-filed . . . ."). The motion to transfer was granted because the court determined that "'on balance the litigation would more

---

[1]     Rembrandt attempts to make much out of the fact that the Texas Action includes an additional party -- Charter. The claims asserted against Charter, however, are independent of the claims asserted against CoxCom. Charter's activities are not related to CoxCom's activities or to whether CoxCom has infringed Rembrandt's patents, and vice versa. This is not a case in which the additional party is a related entity or the parties were involved in the same transactions and occurrences.

conveniently proceed and the interests of justice be better served by transfer to a different forum.'" 2003 WL 1565864, at *2. The Court transferred the first-filed case to the District of Missouri, where the parties had been litigating *related* patents for *two years*. *Id.* at *1-2.

Moreover, the Federal Circuit has not held that the first-filed rule only applies when the cases are filed on different days. In fact, to the contrary, in *Laboratory Corp. of America Holdings v. Chiron Corp.*, 384 F.3d 1326, 1327 (Fed. Cir. 2004), the Federal Circuit affirmed a district court's order staying a second-filed, infringement action that was *filed four and one half hours* after a declaratory judgment action.

## II.    ENJOINING REMBRANDT FROM PROCEEDING WITH THE TEXAS ACTION WILL NOT PREJUDICE REMBRANDT.

Granting CoxCom's motion to enjoin will result in no more piecemeal or duplicative litigation than already exists as a result of Rembrandt's own litigation strategy. Rembrandt has initiated eight actions against twenty-two defendants (grouped into five corporate defendant groups as: Comcast, Time Warner, Charter Communications, CoxCom and Cablevision) in three judicial districts (District of Delaware, Eastern District of Texas, and Southern District of New York), asserting claims of infringement based on the defendants' implementation of an industry standard (DOCSIS) in providing high speed internet service.[2] Of these eight actions, six of them are against the same defendants. That is, rather than combining the claims against one defendant in one complaint, Rembrandt, *in separate actions, voluntarily chose* to sue Comcast, Time Warner, Charter Communications, and CoxCom *twice* with each action accusing the same activity and same industry standard. Given its own strategy, Rembrandt's contention that granting CoxCom's motion will prejudice Rembrandt is misplaced.

---

[2]    Attached hereto as Exhibit 1 is a list of the actions Rembrandt has filed, asserting that the defendants' provision of high speed internet service through DOCSIS compliant equipment infringes its patents.

Indeed, this Court is already presiding over an action filed by Rembrandt against a cable service provider that involves the '903 Patent, the same accused activity (provision of high speed internet service) and the same industry standard (DOCSIS). *See Rembrandt Technologies LP v. Cablevision Systems Corporation, et al.*, C.A. No. 06-635-GMS (D. Del.). Thus, enjoining Rembrandt from prosecuting its later-filed claims against CoxCom in the Texas Action does not create duplication. Rembrandt's own actions have already caused duplication.

Finally, simply because this case is pending in this forum does not mean that the parties cannot or will not coordinate efforts with respect to the rest of the Rembrandt litigation. In fact, at a recent hearing in *Rembrandt Technologies LP v. Adelphia Communications Corp.*, No. 1:07-cv-214 (S.D.N.Y. Bankr.), counsel for Rembrandt stated that he believed coordination among the parties and courts was desirable (Ex. 2 at 13).[3]

## CONCLUSION

For the foregoing reasons and those stated in CoxCom's Opening Brief, the Court should enjoin Rembrandt from proceeding with the Texas Action against CoxCom.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*
Rodger D. Smith II (#3778)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff CoxCom, Inc.*

---

[3] Attached hereto as Exhibit 2 is a true and correct excerpt of the transcript of the hearing held before United States Bankruptcy Judge Robert E. Gerber of the Southern District of New York in the matter of *Rembrandt Technologies, LP v. Adelphia Communications*, No. 06-1739.

OF COUNSEL:

Mitchell G. Stockwell
R. Scott Griffin
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, GA  30309
(404) 815-6500

Tonya R. Deem
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101-2400
(336) 607-7300

March 12, 2007

762073

<u>**CERTIFICATE OF SERVICE**</u>

I, Rodger D. Smith II, hereby certify that on March 12, 2007, I caused to be electronically filed **PLAINTIFF COXCOM, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO ENJOIN DEFENDANT FROM PROCEEDING WITH THE TEXAS ACTION** with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Kevin M. Baird
> James M. Lennon
> WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

and that on March 12, 2007, I caused copies to be served upon the following in the manner indicated:

> <u>**BY EMAIL AND HAND**</u>
>
> Kevin M. Baird
> James M. Lennon
> WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
> 222 Delaware Avenue, Suite 1500
> Wilmington, DE  19801

> */s/ Rodger D. Smith II*
> Rodger D. Smith II (#3778)
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> (302) 658-9200
> rsmith@mnat.com

EXHIBIT 1

**EXHIBIT 1**
**SCHEDULE OF DOCSIS ACTIONS FILED BY REMBRANDT**

| NO. | NAME OF ACTION | DISTRICT COURT | CIVIL ACTION NUMBER |
|---|---|---|---|
| 1. | Rembrandt Technologies, LP v. Cablevision Systems Corporation and CSC Holdings, Inc. | District of Delaware | 1:06-cv-635 |
| 2. | In Re Adelphia Communication Corp. Rembrandt Technologies, LP v. Adelphia Communications Corp. Corporation, Century-TCI California Communications, LP, Century-TCI Distribution Company, LLC, Century- TCI Holdings, LLC, Parnassos, L.P., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Western NY Cablevision, LP | Southern District of New York (Bankr. Court and District Court) | Bankr: 02-41729 District: 1:07-cv-214 |
| 3. | Rembrandt Technologies, LP v. Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano, LP | Eastern District of Texas | 2:05-cv-443 |
| 4. | Rembrandt Technologies, LP v. Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano, LP | Eastern District of Texas | 2:06-cv-506 |
| 5. | Rembrandt Technologies, LP v. Time Warner Cable, Inc. | Eastern District of Texas | 2:06-cv-224 |
| 6. | Rembrandt Technologies, LP v. Time Warner Cable, Inc. | Eastern District of Texas | 2:06-cv-369 |
| 7. | Rembrandt Technologies, LP v. Charter Communications, Inc.; Charter Communications Operating, LLC; Cox Communications, Inc.,  Cox Enterprises, Inc.; CoxCom, Inc.; CSC Holdings, Inc., and Cablevision Systems Corporation | Eastern District of Texas | 2:06-cv-223 |
| 8. | Rembrandt Technologies, LP v. Charter Communications, Inc.; Charter Communications Operating, LLC, and CoxCom, Inc. | Eastern District of Texas | 2:06-cv-507 |

# EXHIBIT 2

```
 1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF NEW YORK
 2                                    .
      IN RE:                          .  Case No. 02-41729
 3                                    .
      ADELPHIA COMMUNICATIONS,        .  New York, New York
 4                                    .  Tuesday, November 14, 2006
                       Debtors.       .  9:39 a.m.
 5    . . . . . . . . . . . . . . . .
      REMBRANDT TECHNOLOGIES, LP,     .
 6                                    .
                       Plaintiff, .
 7                                    .
             v.                       .  Adv. Proc. No. 06-1739
 8                                    .
      ADELPHIA COMMUNICATIONS,        .
 9                                    .
                       Defendant. .
10    . . . . . . . . . . . . . . .

11               TRANSCRIPT OF PRETRIAL CONFERENCE
               BEFORE THE HONORABLE ROBERT E. GERBER
12                 UNITED STATES BANKRUPTCY JUDGE

13    APPEARANCES:
      For the Plaintiff:          James L. Garrity, Jr., Esq.
14                                SHEARMAN & STERLING, LLP
                                  599 Lexington Avenue
15                                New York, New York 10022-6069
                                  (212) 848-4000
16
                                  Joseph S. Grinstein, Esq.
17                                Tibor L. Nagy, Esq.
                                  SUSMAN GODFREY, LLP
18                                590 Madison Avenue, 8th Floor
                                  New York, New York  10022-8521
19                                (212) 336-8332
      (Appearances continued)
20
      Audio Operator:            Electronically Recorded
21                               by Court Personnel

22    Transcription Company:     Rand Transcript Service, Inc.
                                  311 Cheyenne Road
23                                Lafayette, New Jersey  07848
                                  (973) 383-6977
24
      Proceedings recorded by electronic sound recording,
25    transcript produced by transcription service.
```

```
1
         APPEARANCES:    (Continued)
2

3
         For the Defendant:          Shelley Chapman, Esq.
4                                     Roger Netzer, Esq.
                                      Thomas Meloro, Esq.
5                                     WILLKIE, FARR & GALLAGHER, LLP
                                      787 Seventh Avenue
6                                     New York, New York  10014
                                      (212) 728-8000
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                                 I N D E X

2                                                              Page
    ARGUMENT
3        By Mr. Grinstein                                        5
         By Mr. Garrity                                        15,22
4        By Mr. Netzer                                          16
         By Ms. Chapman                                         18
5        By Mr. Meloro                                          23
         Court Decision - reserved                              30

6
    PRETRIAL CONFERENCE/SCHEDULING                              31

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy                                                    4

1       (Proceedings commence at 9:39 a.m.)

2           THE COURT:  Okay.  We're here on a pretrial

3   conference, what I believe is the first pretrial conference

4   in this adversary.  I -- Mr. Garrity, I know you and I know

5   some of the folks at the other counsel table.  I don't know

6   everybody.  Do you want to make some introductions?

7           MR. GARRITY:  I'd be happy to, Your Honor.  Good

8   morning.  Jim Garrity from Shearman & Sterling.  Your Honor,

9   we are co-counsel principally for bankruptcy purposes of

10  Rembrandt Technologies, LP, the plaintiff in this adversary

11  proceeding.

12          At counsel table with me are Joseph Grinstein and

13  Tibor Nagy.  Mr. Grinstein and Mr. Nagy are with the Susman

14  Godfrey firm and they are co-counsel in this matter and when

15  we get to, if Your Honor will allow us a moment or two to

16  talk about the complaint and the matters at issue, I will

17  turn the floor over to them, if that's all right with you.

18          THE COURT:  Okay.  Ms. Chapman, I know you and Mr.

19  Netzer.  And in between you is?

20          MS. CHAPMAN:  Good morning, Your Honor.  In between

21  us is our partner Tom Meloro, who is a patent specialist and

22  who will be addressing the merits, if, as, and when we get to

23  that today.

24          THE COURT:  Okay.  I think it would be constructive

25  if we spent just a couple of minutes for you folks to tell me

1  the underlying issues.  It's my impression, very

2  impressionistically, that this is a case for -- an action for

3  alleged post-petition patent infringement.  I don't know if

4  I'm fully correct or not.

5          Mr. Grinstein or Mr. Nagy, you want to give me a

6  more detailed discussion of what it's about?

7          MR. GRINSTEIN:  Yes, Your Honor.  Joseph Grinstein

8  for plaintiff Rembrandt.

9          Just as an administrative matter, my pro hac

10  admission is pending, but has not been acted on, so --

11          THE COURT:  Okay.  Certainly you can speak today and

12  I have no doubt that it will be granted.  Go ahead.

13          MR. GRINSTEIN:  Thank you, Your Honor.

14          This is a patent infringement case, as you

15  mentioned.  The complaint was filed in September.  It relates

16  solely to post-petition alleged infringement by the debtors.

17  By agreement the debtors have not yet answered the complaint.

18  Their answer will be due in a few weeks.

19          THE COURT:  Pause, please, Mr. Grinstein.

20          A patent with respect to what kind of a product or

21  technology?

22          MR. GRINSTEIN:  There are four patents that are

23  asserted in this case.  They relate to the debtors' cable

24  modem services.  More specifically, there is a standard by

25  which the entire industry performs cable modem services.

Argument - Grinstein                    6

1   That standard is called "DOCSIS," d-o-c-s-I-s.  It stands for

2   "data over cable system interface specification."  It's a lot

3   of words.

4           That is a standard that all of the cable companies

5   got together in the late 1990s and formed as a way of making

6   sure that each person's or each company's cable modems were

7   compatible with each other; in other words, an industry

8   standard designed to insure efficiency, reliability,

9   compatibility.

10          The allegation in this case by Rembrandt, the

11  plaintiff, is that the DOCSIS standard infringes four of

12  Rembrandt's patents and, by extension, any cable modem

13  services that the debtors performed that were compliant with

14  the DOCSIS standard, which would have been all of them, by

15  implication therefore also infringed the patents.

16          THE COURT:  Now pause, please.

17          If the DOCSIS system is uniformly used across the

18  industry, so by way of example I could, you know, go out to a

19  J&R Music World and get a cable modem there and use it on a

20  Time Warner system or a Comcast system, was there anything

21  that Adelphia did unique to the industry or do you have this

22  claim going out against all of the cable companies in the

23  United States?

24          MR. GRINSTEIN:  We're making this claim against

25  other cable companies:  Time Warner, Comcast.  I'm not sure

1    if every cable company was yet got to, but we are making this

2    claim against other cable companies.

3            The allegation is that Adelphia, by the fact that

4    it's standardized to this industry-wide standard, the

5    industry-wide standard infringes our patents.  So as long as

6    Adelphia was compliant with the standard, and there's no

7    reason to believe that they weren't compliant with the

8    standard or else their cable modem system would not have

9    worked, they're alleged to have infringed.

10           THE COURT:  Now, did I hear you right that you have

11   similar actions pending against other major cable companies?

12           MR. GRINSTEIN:  We do, Your Honor.

13           THE COURT:  And where are they pending?

14           MR. GRINSTEIN:  I believe we have action pending in

15   the eastern district of Texas and I think Delaware as well.

16   Not so sure about -- eastern district of Texas is at least

17   one of them.

18           THE COURT:  And they're all being prosecuted

19   individually?

20           MR. GRINSTEIN:  Yes, Your Honor.

21           THE COURT:  Go on.

22           MR. GRINSTEIN:  There are four patents at issue in

23   this case.  The patents were originally developed by a

24   subsidiary of AT&T/Bell Labs known as Paradyne Corporation.

25   Paradyne was one of the leaders and sort of at the forefront

1  of modem technology back in the 1990s.  A lot of what we see

2  today out in the modem marketplace was due to Paradyne's

3  work.  Rembrandt, the client who is at issue -- who is here

4  today, acquired those patents from Paradyne and is now

5  serving them in this particular case.

6        There are four patents.  They relate specifically to

7  three areas of technology, three distinct methods of

8  infringement.  The first two patents are somewhat related.

9  They're the 159 patent and the 234 patent.  Both of those

10  patents we allege are infringed by the DOCSIS standards that

11  relate to the manner by which cable modems download and

12  update new program content.

13        From time to time a cable modem needs to update its

14  operating system, get updated, get upgrades.

15        THE COURT:  You talking about updating the firmware

16  inside the modem as compared and contrasted to the

17  programming content that the modem sucks off the internet?

18        MR. GRINSTEIN:  Right.  It's the operating systems.

19  You can call it the firmware in the modem.  That's being

20  updated through this download process.  And those patents

21  relate to the DOCSIS standard about how that downloading is

22  to occur.  Those are the 159 and 234 patents.  That's the

23  first area of infringement that we've alleged.

24        The second area of infringement that we've alleged

25  relates to the 761 patent, and that is a patent that covers

Argument - Grinstein                                    9

1    the manner by which cable modems communicate error control

2    correction mechanisms.  One of the more important things that

3    a cable modem does when it's doing data transmission is

4    control for errors.

5            THE COURT:  Well, any modem, cable or otherwise,

6    right?

7            MR. GRINSTEIN:  Certainly, Your Honor.  And the

8    DOCSIS standard sets out a particular method by which cable

9    modem services are supposed to obtain this error control

10   correction mechanism.  The 761 patent, we allege, covers that

11   DOCSIS standard.

12           The third distinct patent is the 444 patent.  The

13   444 patent covers a particular aspect of data transmission by

14   cable modems.  Specifically, it's very important when you're

15   --

16           THE COURT:  Could you repeat that, please, Mr.

17   Grinstein?

18           MR. GRINSTEIN:  Yes.  It's the 444 patent, and it

19   covers a DOCSIS standard that governs data transmission by

20   modems.  More specifically, when you're doing data

21   transmission in a modem, data is transmitted in blocks and

22   chunks.  And it's very important that you delimit the

23   beginning and the end of a particular block of data.

24           The 444 patent relates to the DOCSIS standard for

25   delimiting the beginning and the end of a particular data

1   transmission, and that's particularly critical to exploiting

2   the extent of a potential bandwidth on the system.

3          So those are the three patents -- actually four

4   patents, but they're related to three areas of technology.

5   We've alleged that DOCSIS infringes those patents and, by

6   implication, the defendant's products that -- products and

7   services, I should say, that utilize DOCSIS.

8          Where do we stand right now, Your Honor?  We -- as I

9   mentioned, we filed the adversary complaint in September.

10  The defendants have not yet answered the complaint.  By

11  agreement, we've extended that answer date for some time.

12         The parties have engaged in some informal discovery

13  relating to the upcoming confirmation hearing.  That informal

14  discovery has been aimed at communicating to the defendants

15  what the aspects of our claim is, what the merits of our

16  claim are.  In connection with that informal discovery, there

17  has been a mutual document exchange by both parties.  We have

18  produced documents relating to these patents, relating to our

19  allegations.  They've produced documents back to us.  We have

20  some issues with the extent to which all the documents have

21  been produced to us, but I don't think now is the time or

22  place to discuss those.

23         We've also engaged in some expert discovery.

24  Rembrandt has provided to defendants an expert report from a

25  computer scientist expert who has analyzed the patents,

1   analyzed the DOCSIS standard, and has opined that the DOCSIS

2   standard infringes these four patents.  We provided that to

3   the debtors.

4          We've also provided an expert report from an expert

5   economist who has analyzed the revenues that these cable

6   modem services have generated for the debtors and has stated

7   a damages claim that he alleges -- he opines is the

8   appropriate damages remedy in this particular case.

9          THE COURT:  What kind of damages you looking for?

10         MR. GRINSTEIN:  We have alleged that, because of

11  this alleged infringement, in a hypothetical negotiation, the

12  defendants would have paid to us between a four and five-

13  percent royalty on cable modem services.  I think that ranges

14  -- ends up ranging from between ninety to $115 million.

15         I should say that we've filed the claim seeking $130

16  million as our administrative claim.  Since we've done some

17  more refined analysis, after having engaged in a little bit

18  of discovery and having talked back and forth with the

19  defendants, we've now since refined that claim to the outside

20  of the claim is I believe $115 million.  Ninety-two to one

21  fifteen.  Excuse me.

22         THE COURT:  Okay.  Now, I take it against the

23  Adelphia alleged infringers, at least, you're not looking for

24  injunctive relief?

25         MR. GRINSTEIN:  We are not looking for injunctive

1    relief, Your Honor.  And I should say --

2              THE COURT:  You're looking for injunctive relief

3    against the other defendants in your other lawsuits?

4              MR. GRINSTEIN:  No, Your Honor.

5              I should also mention that we are continuing to

6    investigate infringement.  There may well be other aspects of

7    the debtors' products that infringe our patents.  We're

8    continuing to investigate that.  The stuff that we've stated

9    now is very preliminary in nature, so there may be other

10   services that the debtors do that we reserve our right to

11   allegations infringement against.

12             I stand somewhat corrected.  My colleague reminds me

13   we are looking for injunctive relief in other venues, for

14   example, against Time Warner.  If your question related to

15   any possible connection between Adelphia and anyone else

16   where there's injunctive relief, in the eastern district of

17   Texas we are looking for injunctive relief, but not in this

18   action.

19             THE COURT:  Where is that, in Plano?

20             MR. GRINSTEIN:  Excuse me?

21             THE COURT:  In Plano, Texas?

22             MR. GRINSTEIN:  No, the case is pending in Marshall,

23   Texas.

24             THE COURT:  Marshall?

25             MR. GRINSTEIN:  Marshall before Judge Ward.

1      THE COURT:  All right.  Now, do you have a view or

2  position on the advantages or disadvantages of coordinating

3  this litigation with the actions in the other jurisdictions

4  where similar or identical issues are being raised?

5      MR. GRINSTEIN:  I have not discussed that with the

6  other side.  I think if, you know, Your Honor wanted to

7  coordinate with Judge Ward and reach some sort of mutual

8  claim construction with Judge Ward on one of the aspects of

9  the patent cases to go through a procedure known as a

10  "Markman procedure" where the Court construes the claims of

11  patent.  That claim construction probably would be applicable

12  both to Time Warner and to Adelphia to a certain extent, so I

13  think it might be a good idea for you to coordinate with the

14  eastern district of Texas with respect to issues like that.

15  Frankly, we have not discussed that with the other side.

16      THE COURT:  Another option that's not infrequently

17  done in MDL litigation is to coordinate pretrial proceedings,

18  discovery and the like, and then to send the action back to

19  the district in which the underlying claim is pending.  Have

20  you thought about that?  Do you have a view on the

21  desirability or undesirability of that?

22      MR. GRINSTEIN:  I think that would be desirable,

23  Your Honor.  Candidly, the eastern district of Texas is a

24  very sophisticated patent venue.  I won't say most of the

25  patent cases that are getting filed today are filed in that